GREENBERG TRAURIG, LLP
Rebecca G. Zisek, NJ Bar No. 017612012
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
zisekr@gtlaw.com
Tel: (973) 360-7900
Fax: (973) 301-8410

Lisa M. Simonetti (admitted *pro hac vice*)
1840 Century Park East, Suite 1900
Los Angeles, California 90067
simonettil@gtlaw.com
Tel: (310) 586-7700
Fax: (310) 586-7800

*Attorneys for Defendants*
*Navient Corporation and Navient Solutions, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRIAN MANETTA, SERGIO PEREIRA, ESTHER SYGAL-PEREIRA, MATTHEW MARKOSIAN, NAIMISH BAXI, HARVEY MINANO, SYDNEY PECK, MAHMUD IBRAHIM, and GEORGE AMORES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NAVIENT CORPORATION, NAVIENT SOLUTIONS, LLC f/k/a NAVIENT SOLUTIONS, INC. f/k/a SALLIE MAE, INC., and SLM CORPORATION,<br><br>Defendants | Civil Action No. 2:20-cv-07712-SDW-LDW<br><br>**DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE CLASS AND OTHER ALLEGATIONS** |

1

## **TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................1

II.     THE ALLEGATIONS.............................................................................4

      A.   The Plaintiffs And Their Student Loans ...............................4
      B.   The Unrelated Loan Servicing Allegations........................11
      C.   The Unrelated Actions........................................................12

III.    ARGUMENT..........................................................................................13

      A.   Plaintiffs Clearly Fail To State Any Claim Whatsoever....................13

            1.   Plaintiffs Simply Do Not Allege Any Misrepresentation, And The Fraud And State Consumer Protection Claims Therefore Fail.........................................................................14

            2.   Plaintiffs' Claim For Breach Of Fiduciary Duty Fails, As A Matter Of Law.........................................................19

      B.   In The Alternative, The Court Should Strike Allegations. ................22

            1.   The Unrelated Loan Servicing Allegations Fail. .....................22

            2.   The Allegations Regarding The Unrelated Actions Are Irrelevant And Admittedly Intended To Prejudice NSL...........24

            3.   The Class Allegations Should Be Stricken Because, Based On The Face Of The Complaint, No Class Could Be Certified. ..............................................................25

IV.     CONCLUSION......................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abulkhair v. Citibank & Assocs.*,
    434 F. App'x 58 (3d Cir. 2011) .......................................................................19

*Advanced Carrera v. Bayer Corp.*,
    727 F.3d 300 (3d Cir. 2013) ..........................................................................25

*Allee v. Medrano*,
    416 U.S. 802 (1974)........................................................................................22

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)........................................................................................26

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009)....................................................................................13

*Baby Neal for and by Kanter v. Casey*,
    43 F.3d 48 (3d Cir. 1994) ...............................................................................23

*Barron Partners, LP v. Lab123, Inc.*,
    593 F. Supp. 2d 667 (S.D.N.Y. 2009) ...........................................................21

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................13

*Binder v. Weststar Mortg., Inc.*,
    C.A. No. 14-7073, 2016 U.S. Dist. LEXIS 90620 (E.D. Pa. July
    13, 2016) ........................................................................................................20

*Brown v. Nationscredit Fin. Servs. Corp.*,
    32 So. 3d 661 (Fla. 1st DCA 2010) ...............................................................28

*Chae v. SLM Corp.*,
    593 F.3d 936 (9th Cir. 2010) .........................................................................17

*Christidis v. First Penn. Mortg. Trust*,
    717 F.2d 96 (3d Cir. 1983) .............................................................................14

*Clark v. McDonald's Corp.*,
    213 F.R.D. 198 (D.N.J. 2003).........................................................................29

*Commonwealth of Pennsylvania v. Navient Corp., et al.*,
    No. 3:17-cv-01814 (M.D. Pa.).......................................................................12

*Crowhorn v. Nationwide Mut. Ins. Co.*,
Civ.A.00C-06-010WLW, 2002 WL 1767529 (Del. Super. Ct. July
10, 2002) ..........................................................................................................15

*Daniel, et al., v. Navient Solutions, LLC*,
No. 8:17-cv-0250 (M.D. Fl.)..............................................................................11

*Davis v. Fed. Election Comm'n*,
554 U.S. 724 (2008)...........................................................................................22

*Demyanenko-Todd, et al., v. Navient Corp., et al.*,
No. 3:17-cv-00772 (M.D. Pa.).............................................................................12

*Dillworth v. Amerant Bank, N.A. (In re Bal Harbour Quarzo, LLC)*,
Nos. 18-11793-SMG, 20-01072-SMG, 2020 Bankr. LEXIS 2820
(Bankr. S.D. Fla. Oct. 8, 2020) ..........................................................................19

*Donnelly v. Option One Mortg. Corp.*,
C.A. No. 11-7019 (ES), 2013 U.S. Dist. LEXIS 92663 (D.N.J. July
1, 2013) .............................................................................................................15

*Edmonson v. Lincoln Nat. Life Ins. Co.*,
725 F.3d 406 (3d Cir. 2013) ......................................................................22, 26

*Everage v. Ford Motor Co.*,
No. 04-CV-549-KKC, 2005 U.S. Dist. LEXIS 49715 (E.D. Ky.
Sep. 14, 2005) ...................................................................................................24

*In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*,
No. CIV.A. 03-4558, 2012 WL 379944 (D.N.J. Feb. 6, 2012).........................28

*Frank H. Cobb, Inc. v. Cooper Cos.*,
89 Civ. 5323 (MGC), 89 Civ. 5892 (MGC), 1992 U.S. Dist.
LEXIS 3491 (S.D.N.Y. Mar. 20, 1992)..............................................................16

*Frederico v. Home Depot*,
507 F.3d 188 (3d Cir. 2007) ..............................................................................16

*Gandy v. Trans World Computer Tech. Grp.*,
787 So. 2d 116 (Fla. 2d DCA 2001)..................................................................14

*Gen. Tel. Co. of the Southwest v. Falcon*,
457 U.S. 147 (1982)...........................................................................................25

*Hardin v. Am. Elec. Power*,
188 F.R.D. 509 (S.D. Ind. 1999) .......................................................................23

*Hayes v. Wal–Mart Stores, Inc.*,
725 F.3d 349 (3d Cir. 2013) ..............................................................................26

*Heller Fin. Inc. v. Midwhey Powder Co.*,
    883 F.2d 1286 (7th Cir. 1989) ........................................................................23

*Hyland v. Navient Corp.*,
    No. 1:18-cv-09031, 2019 U.S. Dist. LEXIS 113038 (S.D.N.Y.
    2019) .................................................................................................12, 16, 20, 21

*Hyland, et al., v. Navient Corp., et al.*,
    No. 1:18-cv-09031 (S.D.N.Y.) .......................................................................11

*Jurista v. Amerinox Processing, Inc.*,
    492 B.R. 707 (D.N.J. 2013) .............................................................................19

*Kilgore v. Ocwen Loan Servicing, LLC*,
    89 F. Supp. 3d 526 (E.D.N.Y. 2015) ...............................................................17

*Landman & Funk PC v. Skinder-Strauss Assocs.*,
    640 F.3d 72 (3d Cir. 2011) ..............................................................................25

*Legatski v. Bethany Forest Assoc.*,
    No. 03C-10-011-RFS, 2006 WL 1229689 (Del. Super. Ct. Apr. 28,
    2006) ................................................................................................................19

*Marcus v. BMW of N. Am. LLC*,
    687 F.3d 583 (3d Cir. 2012) ............................................................................29

*Maurizio v. Goldsmith*,
    230 F.3d 518 (2d Cir. 2000) ............................................................................15

*In re Merck & Co., Sec. Derivative & Erisa Litig.*,
    C.A. No. 05-2369 (SRC), 2006 WL 2050577 (D.N.J. July 11,
    2006) ................................................................................................................21

*Mfrs. Hanover Trust Co. v. Yanakas*,
    7 F.3d 310 (2d Cir. 1993) ................................................................................20

*Miller v. Dyadic Int'l*,
    No. 07-80948-CIV-DIMITROULEAS, 2009 U.S. Dist. LEXIS
    151788 (S.D. Fla. Sep. 28, 2009) ....................................................................16

*Mladenov v. Wegmans Food Markets, Inc.*,
    124 F. Supp. 3d 360 (D.N.J. 2015) ..................................................................25

*Moreno v. Citibank, N.A.*,
    No. C 09-5339 CW, 2010 WL 1038222 (N.D. Cal. Mar. 19, 2010) .................20

*In Re Navient Corp. Secs. Litig.*,
    No. 1:17-cv-08373 (D.N.J) ..............................................................................12

*Pennsylvania v. Navient Corp.*,
    967 F.3d 273 (3d Cir. 2020) ..............................................................18

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am.*
    *Sec., LLC*,
    592 F. Supp. 2d 608 (S.D.N.Y. 2009) ...............................................14

*People of the State of California v. Navient Corp., et al.*,
    No. CGC-18-567732 (Cal. Super. Ct. San Fran. Cnty.) ...................12

*People of the State of Illinois v. Navient Corp., et al.*,
    No. 2017 CH 00761 (Cir. Ct. Cook Cnty. Ch. Div.) .........................12

*Reilly v. Ceridian Corp.*,
    664 F.3d 38 (3d Cir. 2011) ................................................................23

*River Road Devel. Corp. v. Carlson Corp.-Northeast*,
    C.A. No. 89-7037, 1990 WL 69085 (E.D. Pa. May 23, 1990)..........24

*Senior Health Ins. Co. v. Beechwood Re Ltd.*,
    345 F. Supp. 3d 515 (S.D.N.Y. 2018) ...............................................19

*State of Mississippi v. Navient Corp., et al.*,
    No. 25CH1:18-cv-00982 (Miss. Ch. Ct. Hinds Cnty) .......................12

*State of Washington v. Navient Corp., et al.*,
    No. 17-2-01115-1 SEA (King Cnty. Super. Ct.) ................................12

*Synthes, Inc. v. Emerge Medical, Inc.*,
    C.A. No. 11-1566, 2012 U.S. Dist. LEXIS 140251 (E.D. Pa. Sept.
    28, 2012) ............................................................................................22

*Taylor Woodrow Homes Fla., Inc. v. 4/46 Corp.*,
    850 So. 2d 536 (Fla. Dist. Ct. App. 2003).........................................20

*Toca v. Tutco*,
    LLC, 430 F. Supp. 3d 1313 (S.D. Fla. 2020) ....................................15

*Tomassini v. FCA US LLC*,
    No. 3:14-CV-1226 (MAD/ML), 2020 U.S. Dist. LEXIS 70683
    (N.D.N.Y. Apr. 22, 2020)..................................................................28

*Travis v. Navient Corp.*,
    460 F. Supp. 3d 269 (E.D.N.Y. 2020)...............................................15

*Travis, et al., v. Navient Corp., et al.*,
    No. 2:17-cv-04885 (E.D.N.Y.) ..........................................................12

*In re Unisys Corp. Retiree Med. Benefits Litig.*,
  No. 969, 2003 U.S. Dist. LEXIS 1577 (E.D. Pa. Feb. 4, 2003) .........................29

*Vichi v. Koninklijke Philips Elecs, N.V.*,
  85 A.3d 725 (Del. Ch. 2014) .............................................................................14

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011).......................................................................................26

*Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*,
  725 F.3d 1213 (10th Cir. 2013)..........................................................................26

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ......................................................................26, 29

## Statutes and Interpretations

6 Del. C. § 2511  ....................................................................................................2

6 Del. C. § 2512 ...................................................................................................14

6 Del. C. § 2513(a)...............................................................................................14

10 Del. C. § 8106 .................................................................................................28

20 U.S.C. § 1082(a)(1).........................................................................................18

20 U.S.C. § 1087a ................................................................................................18

20 U.S.C. § 1087e ................................................................................................18

Fla. Stat. § 95.11(3)(f)..........................................................................................28

Fla. Stat. § 501.201 ................................................................................................2

Fla. Stat. § 501.204(1)..........................................................................................14

Federal Preemption and State Regulation of the Department of
  Education's Federal Student Loan Programs and Federal Student
  Loan Servicers,
  83 Fed. Ref. 10619, 10621, 2018 WL 1240656 (Mar. 12, 2018)......................18

Higher Education Act, Pub. L. No. 89-329, 79 Stat. 1219 (1965) ...........................3

N.J. Stat. § 2A:14-1..............................................................................................28

N.J. Stat. § 56:8-1...................................................................................................2

N.J. Stat. § 56:8-2.................................................................................................14

N.Y. Gen. Bus. Law § 349...............................................................2, 12, 14, 15, 28

**Other Authorities**

34 C.F.R. § 685.200 ...............................................................................18

34 C.F.R. § 685.201 ...............................................................................18

34 C.F.R. § 685.202 ...............................................................................18

34 C.F.R. § 685.204-205 ........................................................................18

34 C.F.R. § 685.208 ...............................................................................18

34 C.F.R. § 685.211 ...............................................................................18

34 C.F.R. § 685.220 ...............................................................................18

Fed. R. Civ. P. 8(a)(2) ............................................................................13

Fed. R. Civ. P. 9(b) ...................................................................... 3, 15, 16

Fed. R. Civ. P. 12(b)(6) .............................................................................3

Fed. R. Civ. P. 12(f) .................................................... 3, 21, 22, 23, 25

Fed. R. Civ. P. 23(a) ...............................................................................26

Fed. R. Civ. P. 23(b) ...............................................................................26

Fed. R. Civ. P. 23(b)(3) .................................................................... 26, 27

Fed. R. Civ. P. 23(c) ...............................................................................25

Fed. R. Civ. P. 23(d)(1)(D) .....................................................................25

Defendants Navient Corporation ("Navient Corp.") and Navient Solutions, LLC ("NSL"), respectfully submit this memorandum of law in support of the Motion to Dismiss or, in the Alternative, to Strike Class and other Allegations of Plaintiffs' Complaint (Dkt No. 1).  In support thereof, NSL states as follows:[1]

## I.    __INTRODUCTION__

NSL is a servicer of private and federally owned or guaranteed student loans.  In their Class Action Complaint (Dkt. 1, the "Complaint"), plaintiffs Brian Manetta ("Manetta"), Sergio Pereira ("Pereira"), Esther Sygal-Pereira ("Sygal-Pereira"), Matthew Markosian ("Markosian"), Naimish Baxi ("Baxi"), Harvey Minano ("Minano"), Sydney Peck ("Peck"), Mahmud Ibrahim ("Ibrahim"), and George Amores ("Amores") (collectively, "Plaintiffs") allege that, with respect to their loans, NSL systematically:  (1) misapplies payments towards interest instead of principal; (2) misdirects payments towards loans with lower interest rates; and/or (3) improperly imposes capitalized interest.  According to Plaintiffs, NSL engages in this conduct so as to collect greater amounts of interest on their student loans, thus increasing its profits.

Beyond these supposed issues with their own loans, Plaintiffs allege that NSL's servicing of student loans otherwise is inappropriate. For instance, Plaintiffs

---

[1] Navient Corp. is a holding company and the parent company of NSL.  Navient Corp. does not engage in loan servicing activity, but for purposes of the Motion, joins in the arguments made by NSL.

allege that: NSL uses a confusing repayment system and online Help Center; promotes the use of cosigners and then hinders their ability to be released from the repayment obligation by not disclosing the requirements; and has established a loyalty incentive program, Upromise, that only allows reward payments to go towards interest. However, Plaintiffs do not identify any borrower impacted by these supposed practices, including themselves, nor do they allege any resulting harm. Additionally, Plaintiffs include in the Complaint a lengthy discussion of other lawsuits filed against NSL.  Those matters, Plaintiffs concede, are unrelated to the claims at issue here.

Against this background, Plaintiffs assert claims for:  (1) common law fraud; (2) violation of the New Jersey Consumer Fraud Act, N.J. STAT. §§ 56:8-1, *et seq.* ("NJCFA"); (3) violation of the Delaware Consumer Fraud Act, DEL. CODE §§ 2511, *et seq.* ("DCFA"); (4) violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.* ("FDUTPA")*; (5)* violation of the New York General Business Law, N.Y. Gen. Bus Law §§ 349, *et seq.* ("NY GBL"); and (6) breach of fiduciary duty.   Plaintiffs purport to pursue these claims for themselves and for a nationwide class, defined as follows:

> **Nationwide Class**:   All individuals in the United States and its territories who have ever had any loans with [NSL] and/or had any loans (private or federal) serviced by [NSL] at any time.

Plaintiffs further propose "state subclasses" for student loan borrowers residing in

2

Delaware, Florida, New Jersey, and New York, and pray for, among other things, an "award for compensatory, punitive, and other damages" and "an order enjoining [NSL] from improperly servicing" student loans.

Put simply, Plaintiffs' own claims are frivolous, and the Court should dismiss them without leave to amend pursuant to Federal Rule of Civil Procedure 12(b)(6). For instance, while the Complaint asserts a claim for fraud, and the consumer protection claims sound in fraud, Plaintiffs fail to allege *any* misrepresentation made by NSL with respect to the servicing of their loans, much less with the specificity required by Rule 9(b) -- nor could they, given the express terms of their respective promissory notes and the regulations promulgated under the Higher Education Act, Pub. L. No. 89-329, 79 Stat. 1219 (1965) (the "HEA")), which govern the servicing of federal student loans. Plaintiffs, at best, offer vague, isolated, and conclusory examples of supposed issues with their accounts, some of which occurred over ten years ago (raising obvious statute of limitations issues). Moreover, as a matter of settled law, NSL, a loan servicer, does not owe a fiduciary duty to Plaintiffs. The Complaint therefore fails in its entirety.

However, to the extent that any claims survive dismissal (which they plainly should not), the Court should strike the following under Rule 12(f) without leave to amend: (1) the allegations of improper servicing that have not impacted Plaintiffs as immaterial; (2) the allegations regarding the unrelated lawsuits, which are

irrelevant and clearly designed to prejudice NSL; and (3) all of the class allegations, which, on their face, cannot possibly meet the requirements of Rule 23.

## II.    THE ALLEGATIONS

### A.    The Plaintiffs And Their Student Loans

**Manetta**:  Manetta is a resident of New Jersey and "practicing attorney" who "took out loans between 1998 to 2006 to pay for both his undergraduate and graduate studies[.]" (Complaint at ¶ 37.)   These loans totaled approximately $71,000.  (*Id*.)   Manetta "has never deferred payments and has made regular continuous payments since 2006/2007," but still owes approximately $43,000. (*Id*.)

Manetta alleges payment misallocation. For instance, in 2007, he made various payments toward his loans, including:  (1) "[o]n July 20, 2007, [NSL] debited $204.06, and applied $193.80 to interest and $10.26 to principal"; and (2) "[o]n August 6, 2007, [NSL] debited $204.06, and applied $91.77 to interest and $112.29 to principal."  (*Id*. at ¶¶ 99-100.)  Notwithstanding the August 6, 2007 payment, which applied more to principal, Manetta contends that NSL "inconsistently and excessively [allocated his payments] towards interest" before principal. (*Id*.)  Meanwhile, pursuant to the plain terms of his promissory notes, payments are applied first to charges and collection costs, then to accrued interest

and finally to principal.  (*See, e.g.,* Request for Judicial Notice[2] ("RJN"), Exhibit 1 at 7 and 22.)

**Pereira**:  Pereira is a resident of Florida and "practicing physician" who "took out loans from 2006 to 2009 to pay for his medical school studies, totaling approximately $262,000."   (Complaint at ¶ 38.)   Given the "high minimum payments required," Pereira "defer[ed] his payments for a period of time" and, during other times, "made both regular and advance payments towards repaying his loans."   (*Id*.)   But, by 2017, Pereira's balance had increased to "over $433,000," and he refinanced with another lender, leaving a balance of approximately $46,000 serviced by NSL.  (*Id*.)

Pereira alleges that NSL failed properly to apply pre-payments. Pereira alleges that, in 2017, he made payments towards four loans -- *e.g.,* "1-05 Global Health Stafford:  $1,811.28" -- which were "enough to cover the minimum purported payment towards interest and all remaining principal on these loans, [but] none of the loans' principal balances were reduced."   (*Id*. at ¶¶ 123-124).

---

[2] The general rule on a motion to dismiss is that the Court may only consider the allegations in the complaint, exhibits attached to the complaint and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).  "However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Id.; A.P. v. Medina*, No. 17-13794 (SDW) (LDW), 2018 WL 3546195, at *2 (D.N.J. July 24, 2018). "Allowable documents include undisputedly authentic documents if a plaintiff's claims are based upon these documents." *Medina*, 2018 WL 3546195, at *2; *Geyer v. Am. Advisors Grp.*, No. CV177336SDWLDW, 2018 WL 466240, at *2 (D.N.J. Jan. 18, 2018) (same).

However, Pereira's promissory notes state that, if he "do[es] not specify which loan(s) I am prepaying, [NSL] will determine how to apply the prepayment in accordance with the [HEA]."  (RJN, Exhibit 2 at 2.)  Pereira also alleges that, in 2010 and 2016, the interest on some of his loans was capitalized.  (Complaint at ¶¶ 131-132.)   Pereira asserts that the capitalization is "unexplainable," but his promissory notes provide:  "If I fail to make required payments of interest before the beginning or resumption of principal repayment, or during a period of deferment or forbearance, I agree that the lender may capitalize such interest as provided under the [HEA]." (*See* RJN, Exhibit 2 at pages 2 and 5) (*Id*. at 20, 30, 46 and 60   (stating "my lender may capitalize that interest as provided under the [HEA]" and "[t]he principal balance of my loan(s) will increase each time my lender capitalizes unpaid interest.")  Finally, the promissory note for Pereira's private loan contains an arbitration provision, with a class-action waiver.  (RJN, Exhibit 2 at 90 and 102.)[3]

**Sygal-Pereira**:   Sygal-Pereira is a resident of Florida and "a sales and accounts manager for a large consulting firm" who "took out loans in 2006 to pay for her graduate studies," totaling approximately $18,000.  (*Id*. at ¶ 39.)  Sygal-

---

[3] It is not clear whether any of the Plaintiffs assert a claim with respect to private loans. NSL's counsel asked that Plaintiffs' counsel confirm that all such claims would be submitted to arbitration, but did not receive a response.  Defendants expressly reserve all rights with respect to arbitration, including to make a motion to compel.

Pereira "made regular payments" until she "repaid the entirety of her loans in October 2019." (*Id*.)  Sygal-Pereira makes no allegation of wrongdoing in NSL's servicing of her loan.

**Markosian**:   Markosian is a resident of New York and "a practicing attorney" who "took out loans to pay for law school," which he attended from 2003 to 2006.   (*Id*. at ¶ 40.)   He does not allege the amount of his loans.   (*Id*.) "Markosian has never deferred his loans and has been making regular payments," but still owes "approximately $8,400.00." (*Id*.)

Markosian alleges payment misallocation. Markosian alleges that, in 2008 and 2009, he made various payments towards his loans, including:   (1) ["o]n November 26, 2008, [NSL] debited $26.46 and applied 100% of the amount to interest"; and (2) "[o]n or before February 19, 2009, although the minimum payment . . . was $26.46, [Markosian] made an overpayment of $44.30, which [NSL] applied $24.08 to interest and $20.22 to principal."  (*Id*. at ¶¶ 102-103.) Markosian avers that it is "inexplicable for [NSL] to have applied more than the minimum monthly payment . . . to interest on this loan during this time period" (*id*. at ¶ 103), which NSL did not do in either instance.   For payments where the interest did exceed the minimum, Markosian's promissory note simply provides that payments will be allocated to charges, costs, interest and then last to principal. (*See* RJN, Exhibit 3 at 5.)  It also states that "[t]he minimum payment must equal

7

at least the amount of interest that accrues between scheduled payments." (*Id*.)

**Baxi**:  Baxi is a New Jersey resident and "a practicing physician" who "took out loans in 2000 to pay for his undergraduate studies" in an unspecified amount, receiving his degree in 2005.  (Complaint at ¶ 41.)  He then went on to medical school, residency and a fellowship, which he completed in 2014.  Baxi "made some payments towards his loans in 2011" and "has been making regular payments since 2013." (*Id*.)

Baxi alleges that NSL "inconsistently and excessively" allocated payments to interest, and then cites several payments, including: (1) "[o]n July 20, 2014 . . . NSL debited $29.40, and applied $12.19 to interest and $17.21 to principal"; and (2) "[o]n August 20, 2014 . . . [NSL] debited $12.75, and applied $12.50 to interest and $0.25 to principal."  In addition, Baxi alleges that, on two occasions in 2014, NSL "unilaterally allocated greater portions [of his payments] towards . . . lower interest rate loans."  (*Id*. at ¶¶ 116-118.)  Finally, Baxi alleges that, "on March 21, 2012," NSL applied improper capitalized interest on a loan.  (*Id*. at ¶ 134.)  Again, Baxi's promissory notes provide that payments will be allocated to costs, interest and then principal and, further, if no instruction is provided, NSL will determine which loan(s) to pay under the HEA. The notes also address capitalization.  (*See* RJN, Exhibit 4 at 2, 3, 4 and 5.)

**Minano**:  Minano is a New Jersey resident and "physical therapist" who

"took out student loans beginning in August 2014, totaling approximately $130,000." (Complaint at ¶ 42.) "Minano made payments from September 2015 to December 2015 and has been making regular payments since February 2018." (*Id.*)  Minano makes no allegation of wrongdoing in NSL's servicing of his loans.

**Peck**:  Peck is a resident of New York and "a practicing attorney" who "took out loans in 2005 and 2006 to pay for her law school studies . . . in the amount of approximately $110,000.00" (*Id.* at ¶ 43.)  "In 2018, Peck refinanced a portion of her loans," and NSL still services loans with an outstanding balance of "approximately $6,000.00."  (*Id.*)

With respect to supposed payment misallocation, Peck alleges, for instance, that:  (1) "[o]n "January 1, 2008, NSL debited $99.79, and applied $46.70 to interest and $53.09 to principal" (*id.* at ¶ 106); and (2) on "March 31, 2008, [Peck] made an overpayment of $194.36.  Although the minimum payment . . . was no greater than $99.79," which "[NSL] applied $92.26 to principal . . . and $102.10 to interest."  (*Id.* at ¶ 106.)  Setting aside that NSL applied more to principal on his January 1, 2008 payment, Peck's promissory notes set forth the payment allocation (*i.e.*, costs, interest, principal), and his private loan is subject to arbitration.  (RJN, Exhibit 5 at 31.)

**Ibrahim**:  Ibrahim is a resident of New Jersey and "a practicing physician" who "took out loans between 2000 to 2008 to pay for both his undergraduate and

medical school studies[.]" (Complaint at ¶ 44.) Ibrahim alleges that he entered into deferment and forbearance "on a few occasions" and then, "[i]n June [of] 2019" he "refinanced a portion of his loans with another lender" and "still owes approximately $67,300.00." (*Id.*)

Ibrahim alleges payment misallocation, including on "January 27, 2017," when he made "an overpayment of $690.96 [and NSL] applied $365.16 to principal and misallocated $325.80 to interest." (*Id.* at ¶¶ 96-98.) Ibrahim also alleges that NSL "unilaterally" applied payments toward his lower interest loans, including on "May 14, 2014," when he made a "payment totaling $940.60," which NSL allocated as follows: "2-01 Sallie Mae Medical School - Stafford: $61.38 to principal, $45.17 to interest. 2-02 Sallie Mae Medical School - Stafford: $304.80 to principal, $229.25 to interest. Loan 5818 (Bar Study): $15.22 to principal, $284.78 to interest." (*Id.* at ¶¶ 119-121.) Finally, Ibrahim alleges that NSL "misapplied capitalized interest" in 2008, 2012, and 2018. (*Id.* at ¶ 130.) Ibrahim's promissory notes, again, contain the provisions governing payment allocation and capitalization. (RJN, Exhibit 6 at 14.)

**Amores**: Amores is a resident of New York and an "English teacher" who "consolidated his student loans [totaling approximately $42,200.00] . . . in 2005" and has been "making regular payments since[.]" (Complaint at ¶ 45.) Amores nonetheless still owes approximately $23,400.00. (*Id.*)

With respect to misconduct, Amores asserts only that his "loan was capitalized three times in the span of one month, on June 30, 2018, July 28, 2018 and July 30, 2018." (*Id*. at ¶ 133.)  Amores's promissory note describes how interest is to be capitalized. (RJN, Exhibit 7 at 5, 6 and 7.)

## B.   The Unrelated Loan Servicing Allegations

In addition to the allegations regarding their own loans, Plaintiffs allege that NSL:  (1) uses a confusing repayment system and online Help Center and customer service that "is structured to inhibit the payment of principal and to prolong the life of indebtedness"; (Complaint at ¶¶ 136-143); (2) conceals information by not providing borrowers with amortization schedules (*id*. at ¶¶ 144-149); (3) provides monthly statements that are devoid of certain details, making them deceptive and misleading (*id*. at ¶¶ 150-164); (4) promotes the use of cosigners and then hinders their ability to be released from the repayment obligation by not disclosing the requirements (*id*. at ¶¶ 169-190); (5) promotes a loyalty incentive program, Upromise, that only allows for reward payments to go towards interest (*id*. at ¶¶ 191-197); and (6) provides an "Office of the Consumer Advocate" -- a unit intended to "bolster" responsiveness  -- which according to Plaintiffs is only just as helpful, or less helpful to borrowers, than the regular customer service department (*id*. at ¶¶ 198-204).  Plaintiffs do not identity any borrowers impacted by these supposed issues, including themselves, much less any resulting harm.

### C.   The Unrelated Actions

As noted, Plaintiffs devote nearly twenty paragraphs of their Complaint (*id*. at ¶¶ 19-36) to discussing other lawsuits brought against NSL, including:

- *Daniel, et al., v. Navient Solutions, LLC*, No. 8:17-cv-0250 (M.D. Fl.) and *Hyland, et al., v. Navient Corp., et al*., No. 1:18-cv-09031 (S.D.N.Y.), involving allegations that NSL failed to provide adequate information about borrowers' eligibility for the federal Public Service Loan Forgiveness program.[4]

- *Demyanenko-Todd, et al., v. Navient Corp., et al*., No. 3:17-cv-00772 (M.D. Pa.), and *Travis, et al., v. Navient Corp., et al*., No. 2:17-cv-04885 (E.D.N.Y.), where plaintiffs allege that NSL "steered" borrowers into forbearance rather than supposedly more advantageous income-driven payment plans.

- Various pending State Attorney General and Consumer Financial Protection Bureau actions, which also focus primarily on the alleged practice of "steering" borrowers into forbearance. (*See, e.g.,* Complaint at ¶¶ 22-25 and FNs 11-15.)[5]

---

[4] While Plaintiffs point to *Daniel* as an example of supposed misconduct by NSL, they fail to note the result.  NSL defeated class certification and secured summary judgment against each of the named plaintiffs.  *Daniel*, Dkt. 156 (dismissing claims for breach of contract, breach of fiduciary duty, negligence, unjust enrichment, and violations of various state consumer protection acts).  Similarly, in *Hyland*, the court granted NSL's motion to dismiss on fourteen claims brought under various state laws, leaving only a single claim -- for violation of NY GBL § 349.  *Hyland v. Navient Corp.*, No. 1:18-cv-09031, 2019 U.S. Dist. LEXIS 113038, at *12-13 (S.D.N.Y. 2019).   That claim when then resolved by a settlement approved on October 9, 2020.  *Hyland, at* Dkt. 182.

[5] *Commonwealth of Pennsylvania v. Navient Corp., et al*., No. 3:17-cv-01814 (M.D. Pa.); *People of the State of California v. Navient Corp., et al*., No. CGC-18-567732 (Cal. Super. Ct. San Fran. Cnty.); *People of the State of Illinois v. Navient Corp*., et al., No. 2017 CH 00761 (Cir. Ct. Cook Cnty. Ch. Div.); *State of Washington v. Navient Corp., et al*., No. 17-2-01115-1 SEA (King Cnty. Super.

- *In Re Navient Corp. Secs. Litig.*, No. 1:17-cv-08373 (D.N.J), in which plaintiffs allege that "[NSL] made false and misleading statements about . . . lawsuits referenced herein brought . . . by the CFPB and several State Attorneys General." (Complaint at ¶ 33.)

In the Complaint, Plaintiffs concede that these actions are "wholly distinguishable from the instant action." (*Id.* at ¶ 35.) Plaintiffs nevertheless assert that they "share a common theme, namely, that [NSL] is a particularly bad actor in the student loan servicing space, and [it has] created systematic methods -- from the top down -- to defraud . . . borrowers from every conceivable angle." (*Id.* at ¶¶ 34-35.) Plaintiffs state that the unrelated actions are not "evidence of wrongdoing . . . *per se,*" but the allegations "lead[] to the inescapable conclusion that [NSL], at the very least, [is] doing something wrong." (*Id.* at ¶ 36.)

## III. <u>ARGUMENT</u>

### A. **Plaintiffs Clearly Fail To State Any Claim Whatsoever.**

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Where "the

_____

Ct.); *State of Mississippi v. Navient Corp.*, et al., No. 25CH1:18-cv-00982 (Miss. Ch. Ct. Hinds Cnty).

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'"  *Ashcroft*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).  Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* at 1949 (citation omitted).  As explained below, Plaintiffs do not come close to meeting these pleading standards, and they do not even make a legitimate attempt.  Indeed, the claims are frivolous, and the Court should grant the Motion without leave to amend.

1. **Plaintiffs Simply Do Not Allege Any Misrepresentation, And The Fraud And State Consumer Protection Claims Therefore Fail.**

It is fundamental that a claim for fraud requires allegations of:  (1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) plaintiff's reliance on the representation.  *Christidis v. First Penn. Mortg. Trust*, 717 F.2d 96, 99 (3d Cir. 1983) (applying New Jersey law).[6]  Meanwhile, claims under the NJCFA, DCFA,

---

[6] *Accord Vichi v. Koninklijke Philips Elecs, N.V.*, 85 A.3d 725, 773 (Del. Ch. 2014) (stating these elements under Delaware law);  *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 592 F. Supp. 2d 608, 623 (S.D.N.Y. 2009) (same, New York law);  *Gandy v. Trans World Computer Tech. Grp.*, 787 So. 2d 116, 118 (Fla. 2d DCA 2001) (same, Florida law.

FDUTPA and NY GBL section 349 also sound in fraud. *See, e.g.*, N.J.S.A.56:8-2 (defining an "unlawful practice" as, among other things, "deception, fraud, false pretense, false promise, misrepresentation"); 6 Del. C. § 2512. Section 2513(a) (similarly defining "unlawful practice"); § 501.204(1), Fla. Stat. (providing a civil cause of action for "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce"); *Toca v. Tutco*, LLC, 430 F. Supp. 3d 1313, 1328 (S.D. Fla. 2020) (citation omitted) (FDUTPA allows for a plaintiff to recover if he proves he was injured "by an objectively deceptive act or statement"); NY GBL § 349 (prohibiting "deceptive acts" directed at consumers, which are "misleading in a material way" and result in injury); *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (stating elements of NY GBL claim).

Additionally, on a fraud claim, as well as claims under the NJCFA, DCFA, and FDUTPA, the heightened pleading requirements of Rule 9(b) must be satisfied.[7] *See* Fed. Rule Civ. Pro. 9(b) (the circumstances constituting fraud must be stated with particularity); *Donnelly v. Option One Mortg. Corp.*, C.A. No. 11-7019 (ES), 2013 U.S. Dist. LEXIS 92663, at *7 and *20 (D.N.J. July 1, 2013) (Rule 9(b) applies to the NJCFA and common law fraud); *Crowhorn v. Nationwide*

---

[7] Claims under section 349 of the NY GBL are not subject to Rule 9(b). *See Travis v. Navient Corp.*, 460 F. Supp. 3d 269, 285 (E.D.N.Y. 2020).

*Mut. Ins. Co.*, Civ.A.00C-06-010WLW, 2002 WL 1767529, *9 (Del. Super. Ct. July 10, 2002) (Delaware's version of Rule 9(b) or "particularity requirement" applies to private DCFA claims); *Toca*, 430 F. Supp. 3d at 1328 (noting that "FDUTPA claims are subject to the federal rules' "heightened" pleading standard under Rule 9(b)").  To satisfy this standard, a plaintiff must allege the date, time, and place of the alleged misrepresentation or otherwise "inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).  Therefore, courts routinely reject conclusory examples that fail to specify how a statement or omission is misleading. *Id.*; *Frank H. Cobb, Inc. v. Cooper Cos.,* 89 Civ. 5323 (MGC), 89 Civ. 5892 (MGC), 1992 U.S. Dist. LEXIS 3491, at *22 (S.D.N.Y. Mar. 20, 1992) ("plaintiffs' nebulous allegation does not meet the pleading requirements for securities fraud imposed by rule 9(b).  Exactly how the statement in question is misleading . . . is not apparent."); *Miller v. Dyadic Int'l*, No. 07-80948-CIV-DIMITROULEAS, 2009 U.S. Dist. LEXIS 151788, at *24 (S.D. Fla. Sep. 28, 2009) (dismissing fraud claim because plaintiffs "have not specified with particularity" why a statement was misleading).

Notwithstanding these well-established standards, Plaintiffs fail to identify *any* misrepresentation made by NSL with respect to the servicing of their accounts, whether the application of payments, capitalization or otherwise.  Plaintiffs simply

provide conclusions, spanning many years -- *e.g.*, that NSL misapplied payments to interest or imposed improper capitalized interest (and, notably, some of these conclusions also are contradictory (*see id*. at ¶¶ 99-100 (Manetta, alleging a payment of "$204.06" in 2007, that NSL "applied $91.77 to interest and $112.29 to principal")). This does not suffice to even show a misrepresentation, and blatantly ignores the requirements of Rule 9(b). *See Hyland*, 2019 U.S. Dist. LEXIS at 113038, *32 (dismissing complaint alleging "that, in an unspecified number of [instances] over a range of years, [NSL] made certain representations to the named plaintiffs. . . . In [some] cases, it gives no date range at all, and simply alleges [repeated conduct.]  Such general allegations are insufficient to afford [NSL] 'fair notice' of the factual basis for the plaintiffs' claims sounding in fraud."); *Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 536 (E.D.N.Y. 2015) (dismissing NY GBL claim and holding that, "where a plaintiff only makes conclusory allegations about misrepresentations affecting consumers generally, a Section 349 claim must be dismissed").

Further, given the plain terms of the promissory notes, Plaintiffs *cannot* identify any misrepresentations.  For instance, with respect to their payments -- at bottom -- Ibrahim, Manetta, Baxi, Peck and Markosian merely allege that NSL "misapplied" them to principal last (Complaint at ¶¶ 95-107). This is explicitly *in accord* with their respective notes' terms.  (RJN, Exhibits 1, 3, 4, 5 and 6.)

Likewise, Pereira alleges that he deferred payments on his loan (Complaint at ¶ 38) and that NSL then capitalized the interest (*id*. at ¶¶ 131-132), which the note *expressly allows*.  (*See* RJN, Exhibit 2 at 2, 9, 13, 17, 26, 35, 39, 43, 52 and 56.)

Finally, Plaintiffs do not acknowledge or take into account the complex regulatory scheme that governs the servicing of federally owned or guaranteed student loans. *See Chae v. SLM Corp.*, 593 F.3d 936, 945 (9th Cir. 2010) (noting that Congress "instruct[ed]" the U.S. Department of Education [("ED"] to "[e]stablish a set of rules that will apply across the board.").  Through a public notice and comment process, detailed and extensive regulations have been promulgated prescribing every aspect of federal student loan servicing, including a borrower's eligibility for a loan (34 C.F.R. § 685.200), the application process to obtain a loan (§ 685.201), charges to borrowers, *including interest and capitalization* (§ 685.202), repayment plans (§ 685.208), deferment and forbearance, *including capitalization relating to those events* (§§ 685.204-205), repayment provisions including *payment application and the handling of prepayments or overpayments* (§ 685.211) and consolidation (§ 685.220).

Furthermore, ED has broad and exclusive authority to prescribe servicer requirements. 20 U.S.C. §§ 1082(a)(1), 1087a, 1087e. Accordingly, the HEA contains a preemption provision, which prohibits using state law to vary these requirements or to impose new or additional requirements on servicers. *See*

*Federal Preemption and State Regulation of the Department of Education's Federal Student Loan Programs and Federal Student Loan Servicers*, 83 Fed. Ref. 10619, 10621, 2018 WL 1240656 (Mar. 12, 2018) (express preemption provision in the HEA precludes efforts to apply existing state consumer protection laws to federal student loan servicers.); *Pennsylvania v. Navient Corp*., 967 F.3d 273, 287 (3d Cir. 2020) (omission or failure to disclose claims are preempted by HEA). Given the HEA regulations, which are incorporated into the federal student loan notes, Plaintiffs cannot identify *any* basis for challenging the servicing of their loans. They also cannot do so through their state-law claims, as a matter of law, based on HEA preemption.

### 2. Plaintiffs' Claim For Breach Of Fiduciary Duty Fails, As A Matter Of Law.

Breach of fiduciary duty claims generally require proof of four elements: the existence of a fiduciary relationship (such as attorney-client, physician-patient, or insurer-insured); breach of the fiduciary duty; causation, both actual and proximate; and damages. *See, e.g., Jurista v. Amerinox Processing, Inc*., 492 B.R. 707, 759 (D.N.J. 2013).[8]

---

[8] *Legatski v. Bethany Forest Assoc.,* No. 03C-10-011-RFS, 2006 WL 1229689, at *3 (Del. Super. Ct. Apr. 28, 2006) (the elements of breach of fiduciary duty in Delaware are: (i) that a fiduciary duty exists, that a fiduciary breached that duty, and damages resulted.); *Dillworth v. Amerant Bank, N.A. (In re Bal Harbour Quarzo, LLC),* Nos. 18-11793-SMG, 20-01072-SMG, 2020 Bankr. LEXIS 2820, at *23-24 (Bankr. S.D. Fla. Oct. 8, 2020) (same elements under Florida law); *Senior*

Plaintiffs claim that NSL owed "a fiduciary duty to borrowers to properly service their student loans."  (Complaint at ¶ 298.)  However, in the context of a loan servicer/borrower relationship, courts repeatedly have held that servicers do not owe a fiduciary duty.  *See, e.g.*, *Abulkhair v. Citibank & Assocs.*, 434 F. App'x 58, 63 (3d Cir. 2011) (plaintiff cannot "state a claim for breach of fiduciary duty based solely on ... allegations ... which reflect nothing more than a debtor-creditor relationship"); *Binder v. Weststar Mortg., Inc.*, C.A. No. 14-7073, 2016 U.S. Dist. LEXIS 90620, *65 (E.D. Pa. July 13, 2016) (servicers do not owe borrowers any fiduciary duties; *Moreno v. Citibank, N.A.*, No. C 09-5339 CW, 2010 WL 1038222, at * 3 (N.D. Cal. Mar. 19, 2010) ("loan servicers do not owe a fiduciary duty to borrowers"); *see also Taylor Woodrow Homes Fla., Inc. v. 4/46 Corp.*, 850 So. 2d 536, 541 (Fla. Dist. Ct. App. 2003) (A "fiduciary duty does not arise and allegations of superior knowledge of a party's financial condition are generally insufficient to transform the creditor-debtor relationship into a fiduciary relationship."); see *Hyland*, 2019 U.S. Dist. LEXIS 113038, at *29 ("The general rule is that a lender does not owe tort duties to a borrower.") (citing *Mfrs. Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 318 (2d Cir. 1993)).  In short, NSL's relationship with student loan borrowers, such as Plaintiffs, is that of an arm's-length loan

---

*Health Ins. Co. v. Beechwood Re Ltd.*, 345 F. Supp. 3d 515, 523 (S.D.N.Y. 2018) (same under New York law).

servicer, not a fiduciary counselor.  *Id.*

Plaintiffs nevertheless assert a claim that they "placed special trust and confidence in [NSL] based on their representations that their student loans would be serviced properly."  (Complaint at ¶ 296.)   But statements disseminated to borrowers across the country -- such as statements on a website (*see* Complaint at ¶ 77, 82 and 202) -- do not create a fiduciary relationship.  *See, e.g., Hyland*, 2019 U.S. Dist. LEXIS 113038, at *30 (noting that "plaintiffs base their breach of fiduciary duty claim on allegations that [NSL] made representations on its public-facing website about the quality of its customer service.  These representations do not establish that [NSL] has undertaken a fiduciary duty to act or give advice for the benefit of its borrowers."); *see also Barron Partners, LP v. Lab123, Inc.*, 593 F. Supp. 2d 667, 671 (S.D.N.Y. 2009) ("[I]f such widely-disseminated and readily available statements were sufficient to give rise to a fiduciary relationship, the exception would swallow the rule."); *In re Merck & Co., Sec. Derivative & Erisa Litig.*, C.A. No. 05-2369 (SRC), 2006 WL 2050577, at *13-14 (D.N.J. July 11, 2006) (plaintiffs could not impose fiduciary duties based on "public statements, press releases, and other dissemination of information").

Moreover, NSL is merely a student loan servicer, and would not benefit from the payment of principal, interest or fees, which belong to ED (or other owners of student loans).  Indeed, Plaintiffs do not explain how interest payments

conferred any benefit on NSL as their loan servicer, or how NSL is somehow holding such amounts. *See Hyland*, 2019 U.S. Dist. LEXIS 113038, at *37 (noting the same deficiency). Plaintiffs therefore have failed to state a claim for breach of fiduciary duty.

**B.      In The Alternative, The Court Should Strike Allegations.**

Rule 12(f) provides, in pertinent part, that a court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). The purpose of a motion to strike is "to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Synthes, Inc. v. Emerge Medical, Inc*., C.A. No. 11-1566, 2012 U.S. Dist. LEXIS 140251, at *10 (E.D. Pa. Sept. 28, 2012) (internal citation omitted).

**1.      The Unrelated Loan Servicing Allegations Fail.**

To have standing to sue: (1) the plaintiff must suffer an injury-in-fact that is concrete and particularized and actual or imminent, as opposed to conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of -- the injury has to be fairly traceable to the challenged action of the defendant; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Edmonson v. Lincoln Nat. Life Ins. Co*., 725 F.3d 406, 415 (3d Cir. 2013) (citations omitted). *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) ("the standing inquiry remains

focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed").

Accordingly, a named plaintiff cannot represent a proposed class against a defendant if he himself lacks standing to sue that defendant in his own right. *Allee v. Medrano*, 416 U.S. 802, 829 (1974). "Where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice." *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994).

In the Complaint, Plaintiffs purport to challenge ten categories of supposed servicing misconduct.  For four of the categories, Plaintiffs allege examples relating to their accounts (and their claims fail, as discussed above). But for the remainder of the categories, there are no allegations that Plaintiffs were impacted by the conduct at all -- for instance, enrollment in the Upromise program or an attempt to obtain information or service through the Office of Consumer Advocate.[9]  Hence, obviously, there also are no allegations of harm resulting from such conduct as required, making the 13-plus pages of allegations immaterial,

---

[9] *See* Complaint at ¶¶ 136-143 (confusing online Help Center and customer service), ¶¶ 144-149 (not providing amortization schedules), ¶¶ 150-164 (monthly statements devoid of certain details), ¶¶ 169-190 (hinders release of cosigners), ¶¶ 191-197 (Upromise), ¶¶ 198-204 ("Office of the Consumer Advocate" is similar to regular customer service department).

confusing, and improperly burdensome. (Complaint at pages 33-46); Fed.R.Civ.P. 12(f); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (dismissing case for lack of standing because, in part, plaintiffs did not sufficiently link the facts to an injury to them, making their claim "hypothetical," and meaning no harm was sufficiently alleged); *Heller Fin. Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (where a motion to strike "remove[s] unnecessary clutter from the case, [it] serve[s] to expedite, not delay"); *accord Hardin v. Am. Elec. Power*, 188 F.R.D. 509, 511 (S.D. Ind. 1999) ("when the pleading is redundant or the statements are immaterial, the court has the power to strike the offending parts. . . . Prejudice occurs when the challenged pleading or allegation confuses the issues or is so lengthy and complex that it places an undue burden on the responding party.") (citations and grammar marks omitted). The Court should strike these allegations.

### 2.   The Allegations Regarding The Unrelated Actions Are Irrelevant And Admittedly Intended To Prejudice NSL.

In the Complaint, Plaintiffs openly admit that the allegations of the unrelated actions are irrelevant to their claims, and they obviously were intended to prejudice.   Indeed, Plaintiffs concede that the unrelated actions are "wholly distinguishable" from their case, but nonetheless urge the "inescapable conclusion that [NSL], at the very least, [is] doing something wrong," and should be viewed as a "particularly bad actor in the student loan servicing space."  (Complaint at ¶¶ 35-36.)  These allegations plainly serve no legitimate purpose, and should be stricken.

*See River Road Devel. Corp. v. Carlson Corp.-Northeast*, C.A. No. 89-7037, 1990 WL 69085 at *3 (E.D. Pa. May 23, 1990) (allegations should be stricken if they have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case); *Everage v. Ford Motor Co.*, No. 04-CV-549-KKC, 2005 U.S. Dist. LEXIS 49715, at *15 (E.D. Ky. Sep. 14, 2005) (adopting magistrate's recommendation to strike allegations "designed to improperly elicit sympathy, to curry favor, or to cast aspersions on the defendants.").

### 3.   The Class Allegations Should Be Stricken Because, Based On The Face Of The Complaint, No Class Could Be Certified.

The United States Supreme Court has held that class certification issues are sometimes "plain enough from the pleadings" that discovery and evidence are not necessary.  *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982). When the conclusion on certification can be reached at the outset of a case, a court should not force a defendant to engage in costly discovery.  Fed. R. Civ. P. 23(c) (court must determine whether a case may be maintained as a class action as soon as is practicable after the case is filed.); Fed.R.Civ.P. 23(d)(1)(D) (permitting courts to "require that the pleadings be amended to eliminate allegations about representation of absent persons[.]").   Accordingly, district courts have "the authority to strike class allegations at the pleading stage under Fed.R.Civ.P. 12(f) if

the complaint demonstrates that a class action cannot be maintained. *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 368 (D.N.J. 2015) (citation omitted); *accord Advanced Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013); *Landman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 n.30 (3d Cir. 2011).

To determine whether class certification is appropriate, a trial court must engage in a "rigorous analysis" to ensure that all of the requirements of Rule 23 are met. *Hayes v. Wal–Mart Stores, Inc.*, 725 F.3d 349, 353 (3d Cir. 2013). Rule 23(a) requires a plaintiff to establish numerosity, commonality, typicality and adequacy of representation; these requirements "limit the class claims to those fairly encompassed by the named plaintiff's claims."[10] *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (quotations omitted). The requirements of Rule 23(b) also must be met. *See* Fed. R. Civ. P. 23(b)(3) (requiring a court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to

---

[10] Under 23(a), there must be "questions of law or fact common to the class." The claim must depend on a "common contention" that is "capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551 ("What matters . . . is not the raising of common 'questions' . . . but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.") (emphasis in original).

other available methods for fairly and efficiently adjudicating the controversy").[11]

The party seeking certification has the burden of establishing all of the criteria. *Id.*

Here, Plaintiffs' class allegations fail utterly. As an initial matter, the proposed class is astonishingly broad: "*All* individuals in the United States and its territories who have *ever* had any loans with [NSL] and/or had *any* loans (private or federal) serviced by [NSL] *at any time*." (Complaint at ¶ 205.) By Plaintiffs' own admission, this definition would cover "millions" of borrowers, including an overwhelming majority with no alleged servicing issue on their student loans. (*Id.* at ¶ 212.) Indeed, starting with a population of every student loan borrower serviced by NSL over an unspecified time period (but presumably at least ten years, given Plaintiffs' allegations), the Court would have to undertake a vast and excruciatingly fact-intensive analysis, including: (1) whether a loan is private (and, thus, subject to arbitration) or federally owned or guaranteed (where the

---

[11] Although the predominance requirement overlaps in some ways with the commonality requirement, the predominance criterion is "far more demanding." *See Wallace B. Roderick Revocable Living Trust v. XTO Energy*, Inc., 725 F.3d 1213, 1220 (10th Cir. 2013) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997)). A class should not be decertified "if the main issues in a case require the separate adjudication of each class member's individual claim or defense . . . [W]hen individual rather than common issues predominate, the economy and efficiency of class action treatment are lost and the need for judicial supervision and the risk of confusion are magnified." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (citation omitted); *XTO Energy, Inc.*, 725 F.3d at 1220. When even a single essential element of a proposed class claim must be resolved on an individual basis, predominance is defeated. *Zinser*, 253 F.3d at 1189.

HEA servicing regulations apply); (2) the terms of the applicable promissory notes; and (3) in reference to the HEA regulations and the promissory notes, a review of *every* payment for "misapplication" of amounts to interest, *every* pre-payment across multiple loans for "misapplication", and *every* instance of capitalization with the attendant pre-conditions (*e.g.*, deferment or forbearance). Even if such an undertaking possibly could square with the requirements of Rule 23, it is difficult to conceive in what measure the results, even on Plaintiffs' own loans, could substantiate the asserted claims. (*See, e.g.,* Complaint at ¶¶ 99-100 ("On July 20, 2007, [NSL] debited $204.06 [from Manetta's account], and applied $193.80 to interest and $10.26 to principal"; and (2) "[o]n August 6, 2007, [NSL] debited $204.06, and applied $91.77 to interest and $112.29 to principal"); *id.* at ¶¶ 39, 42 (Sygal-Pereira and Minano, not alleging any servicing issue whatsoever); *id.* at ¶¶ 44, 130 (Ibrahim acknowledging deferment and forbearance, but challenging capitalization)).

Moreover, as noted, many of the issues alleged by Plaintiffs occurred *over a decade* ago. Plaintiffs must then explain, for each issue, why the statutes of limitation do not bar the claims, assuming application of doctrines of tolling.[12]

---

[12] *See, e.g.,* N.J.S.A. 2A:14-1 (6-year statute of limitations for NJCFA); 10 Del. C. § 8106 (3-year statute of limitations for DCFA); *Brown v. Nationscredit Fin. Servs. Corp.*, 32 So. 3d 661, 662 n.1 (Fla. 1st DCA 2010) ("The statute of limitations for a FDUTPA claim is four years pursuant to section 95.11(3)(f), Florida Statutes, as it is based on a statutory liability."); *Tomassini v. FCA US LLC*, No. 3:14-CV-1226

*See, e.g.*, *In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*, No. CIV.A. 03-4558, 2012 WL 379944, at \*34-37 (D.N.J. Feb. 6, 2012) ("the massive claim- and jurisdiction-specific classes proposed by [p]laintiffs are rife with issues that will require individualized determinations" including, among other things, "statute of limitations" where it appears "a large number of … claims would be time- barred" "or alternatively, that many putative class members will require individualized inquiries into issues of equitable tolling."); *In re Unisys Corp. Retiree Med. Benefits Litig.*, No. 969, 2003 U.S. Dist. LEXIS 1577, at \*24 (E.D. Pa. Feb. 4, 2003) ("the [c]ourt finds that the individual issues presented by [p]laintiffs' breach of fiduciary duty claims and [defendant's] statute of limitations defense pervade the entire action and preclude continuing as a class action.").

In short, these borrower-by-borrower, transaction-by-transaction inquiries are overwhelmingly complex, cannot be squared with the requirements of commonality and predominance, and create an insurmountable hurdle to class certification here.  *Marcus v. BMW of N. Am. LLC*, 687 F.3d 583, 593 (3d Cir. 2012) ("If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate.");

---

(MAD/ML), 2020 U.S. Dist. LEXIS 70683, at \*25 (N.D.N.Y. Apr. 22, 2020) ("The statute of limitations for [a Section 349] claims is three years, and accrues when plaintiff becomes injured by the prohibited deceptive act or practice.") (citation omitted).

*Zinser*, 253 F.3d at 1192 ("If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'").  Because the mini trials described above are wholly unmanageable (and destroy any economy and efficiency of class action treatment), Plaintiffs' class allegations should be stricken.  *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 216 (D.N.J. 2003) (striking class allegations).

## IV.   CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice or, in the alternative, strike allegations in the Complaint without leave to amend.

Dated:  December 14, 2020                     **GREENBERG TRAURIG, LLP**


By:  */s/ Lisa M. Simonetti*
Lisa M. Simonetti
simonettil@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Tel:  310-586-7700
Fax:  310-586-7800

Rebecca G. Zisek
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
Tel: (973) 360-7900
Fax: (973) 301-8410

*Attorneys for Defendants Navient*
*Corporation and Navient Solutions,*
*LLC*