**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| |
|---|
| BRIAN MANETTA, SERGIO PEREIRA, ESTHER SYGAL-PEREIRA, MATTHEW MARKOSIAN, NAIMISH BAXI, HARVEY MINANO, SYDNEY PECK, MAHMUD IBRAHIM, and GEORGE AMORES, individually and on behalf of all others similarly situated, |
| Plaintiffs, |
| v. |
| NAVIENT CORPORATION, NAVIENT SOLUTIONS, LLC f/k/a NAVIENT SOLUTIONS, INC. f/k/a SALLIE MAE, INC., and SLM CORPORATION, |
| Defendants. |

Civil Action No. 2:20-cv-07712-SDW-LDW

---

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE CLASS AND OTHER ALLEGATIONS**

---

**KRANJAC TRIPODI & PARTNERS LLP**
Xavier M. Bailliard, Esq.
James Van Splinter, Esq.
Joseph Tripodi, Esq.
30 Wall Street, 12th Floor
New York, New York 10005
Tel: (646) 216-2400
Fax: (646) 216-2373
xbailliard@ktpllp.com
jvansplinter@ktpllp.com
jtripodi@ktpllp.com
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

LEGAL ARGUMENT .........................................................................................9

I.     PLAINTIFFS HAVE SUFFICIENTLY ALLEGED VALID FRAUD CLAIMS.............9

II.    PLAINTIFFS HAVE ASSERTED VALID CONSUMER FRAUD CLAIMS................13

       A.    The New Jersey Consumer Fraud Act ..................................................14

       B.    New York General Business Law § 349(a) ..........................................15

       C.    The Delaware Consumer Fraud Act .....................................................16

       D.    The Florida Deceptive and Unfair Trade Practices Act..........................16

III.   PLAINTIFFS ASSERT A VALID BREACH OF FIDUCIARY DUTY CLAIM ............17

IV.    PLAINTIFFS' CLAIMS ARE NOT PREEMPTED ...........................................19

V.     NO CLAIMS OR ALLEGATIONS SHOULD BE STRICKEN .....................................20

       A.    The Class Claims Should Not be Stricken............................................20

       B.    The Allegations Regarding Other Actions Are Relevant and Are Admissible As
             Evidence of Intent and Motive .............................................................30

CONCLUSION....................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*6803 Blvd. E. LLC v. DIRECTV, Inc.*,
    2012 WL 3133680 (D.N.J. Jul. 31, 2012) ..............................................................................21

*Advanced Carrera v. Bayer Corp.*,
    727 F.3d 300 (3d Cir. 2013)...............................................................................................23

*In re Allergan Biocell Textured Breast Implant Prod. Liab. Litig.*,
    2021 WL 1050910 (D.N.J. Mar. 19, 2021)....................................................................... *passim*

*Ayers v. Quillen*,
    2004 WL 1965866 (Del. Sup. Ct. Mar. 26, 2004) ...................................................................16

*Baby Neal for & by Kanter v. Casey*,
    43 F.3d 48, 58 (3d Cir. 1994) .............................................................................................26

*Barnes v. American Tobacco Co.*,
    161 F.3d 127 (3d Cir. 1998)........................................................................................24, 26

*Berman v. Gurwicz*,
    178 N.J. Super. 611 (1981) .................................................................................................10

*Brown v. Hambric*,
    168 Misc. 2d 502 (N.Y. City Ct. 1995) ..............................................................................15

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) .............................................................................................11

*Burroughs v. PHH Mortgage Corp.*,
    2016 WL 1389934 (D.N.J. Apr. 7, 2016) ...........................................................................18

*Byrd v. Aaron's, Inc.*,
    784 F.3d 154 (3d Cir. 2015)...............................................................................................22

*Capital Bank v. MVB, Inc.*,
    644 So. 2d 515 (Fla. 3d DCA 1994) ...................................................................................18

*Chae v. Sallie Mae*,
    593 F.3d 936 (9th Cir. 2010) .............................................................................................20

*Chenensky v. New York Life Ins. Co.*,
    2011 WL 1795305 (S.D.N.Y. Apr. 27, 2011).......................................................................29

ii

*Christidis v. First Penn. Mortg. Trust*,
  717 F.2d 96 (3d Cir. 1983) ..................................................................11

*Clark v. McDonald's Corp.*,
  213 F.R.D. 198 (D.N.J. 2003) ...............................................................23

*Coleman v. CubeSmart*,
  328 F.Supp.3d 1349 (S.D. Fla. 2018) ...................................................17

*In re Community Bank of Northern Va.*,
  622 F.3d 275 (3d Cir. 2010) .................................................................29

*Cox v. Sears Roebuck & Co.*,
  138 N.J. 2 (1994) .................................................................................14

*D&R Communs., LLC v. Garett*,
  2011 WL 3329957 (D.N.J. Aug. 2, 2011) .............................................13

*Derby & Co., Inc. v. Seaview Petroleum Co.*,
  756 F. Supp. 868 (E.D. Pa. 1991) ........................................................10

*Derrick v. Glen Mills Sch.*,
  2019 WL 7019633 (E.D. Pa. Dec. 19, 2019) ........................................28

*Dolphin LLC v. WCI Cmtys., Inc.*,
  715 F.3d 1243 (11th Cir. 2013) ............................................................17

*Eames v. Nationwide Mut. Ins. Co.*,
  412 F.Supp.2d 431 (D. Del. 2006) ........................................................16

*Edwards v. Green Tree Servicing, LLC*,
  2015 WL 6777463 (N.D. Fla. Oct. 22, 2015) .......................................18

*Ehrart v. Synthes (USA)*,
  2007 WL 4591276 (D.N.J. Dec 28, 2007) ............................................21

*Farley v. Gamestop Corp.*,
  2013 WL 4042434 (D.N.J. Aug. 7, 2013) .............................................13

*In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (II)*,
  2012 WL 379944 (D.N.J. Feb. 6, 2012) ................................................23

*Frederico v. Home Depot*,
  507 F.3d 188 (3d Cir. 2007) ............................................................11, 14

*Gen. Tel. Co. of the Southwest v. Falcon*,
  457 U.S. 147 (1982) ..............................................................................22

iii

*In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995)...............................................................................25, 26

*Gillis v. Respond Power, LLC*,
  677 F. App'x 752 (3d Cir. 2017) ..................................................................29

*Goldman v. RadioShack Corp.*,
  2003 WL 21250571 (E.D. Pa. Apr. 16, 2003) ...........................................29

*Hayes v. Wal-Mart Stores, Inc.*,
  725 F.3d 349 (3d Cir. 2013).......................................................................20, 23

*In re Hydrogen Peroxide Antitrust Litig.*,
  552 F.3d 305 (3d Cir. 2008) .......................................................................21

*IUOEL 68 v. Merck & Co., Inc.*,
  192 N.J. 372 (2007) .....................................................................................15

*Jenkins v. Raymark Indus., Inc.*,
  782 F.2d 468 (5th Cir.1986) ........................................................................25

*Jurista v. Amerinox Processing, Inc.*,
  492 B.R. 707 (D.N.J. 2013) ........................................................................11

*Kalow & Springnut, LLP v. Commence Corp.*,
  2009 WL 44748 (D.N.J. Jan. 6, 2009) .....................................................14, 15

*Koch v. Acker, Merrall & Condit Co.*,
  18 N.Y.3d 940 (2012) ..................................................................................15

*Krell v. Prudential Ins. Co.*,
  148 F.3d 283 (3d. Cir. 1998)........................................................................25

*Landsman & Funk PC v. Skinder-Strauss Assocs.*,
  640 F.3d 72 (3d Cir. 2011); *opinion restated in part*, 2012 WL 2052685 (3d
  Cir. Apr. 17, 2012)......................................................................................21, 23

*Lawson-Ross v. Great Lakes Higher Educ. Corp.*,
  955 F.3d 908 (11th Cir. 2020) ..................................................................19, 20

*Lum v. Bank of Am.*,
  361 F.3d 217 (3d Cir. 2004)........................................................................11

*Luppino v. Mercedes-Benz USA, LLC*,
  2013 WL 6047556 (D.N.J. Nov. 12, 2013) ...............................................21

*Marcus v. BMW of N. Am. LLC*,
  687 F.3d 583 (3d Cir. 2012)........................................................................23, 24

*McPeak v. S-L Distribution Co.*,
    2014 WL 4388562 (D.N.J. Sept. 5, 2014) .............................................................22

*Mladenov v. Wegmans Food Markets, Inc.*,
    124 F. Supp. 3d 360 (D.N.J. 2015) .......................................................................22

*Monsanto Co. v. Rohm & Haas Co.*,
    456 F.2d 592 (3d Cir. 1972)...................................................................................10

*Moser v. DeSetta*,
    527 Pa. 157, 589 A.2d 679 (1991) ........................................................................10

*Moss v. Walgreen Co.*,
    765 F.Supp.2d 1363 (S.D. Fla. 2011) ...................................................................17

*MSKP Oak Grove, LLC v. Venuto*,
    875 F. Supp. 2d 426 (D.N.J. 2012) ........................................................................11

*In re Nat'l Football League Players Concussion Injury Litig.*,
    821 F.3d 410 (3d. Cir. 2016)............................................................................26, 27

*Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994)................................................................................24, 26

*Nelson v. Great Lakes Educ. Loan Servs. Inc.*,
    928 F.3d 639 (7th Cir. 2019) .................................................................................19

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d. Cir. 2001).............................................................................24, 25

*Nigro v. Pennsylvania Higher Education Assistance Agency*,
    2020 WL 5369980 (M.D. Pa. Sept. 8, 2020) ...................................................19, 20

*Orlander v. Staples, Inc.*,
    802 F.3d 289 (2d Cir. 2015)...................................................................................15

*Pelman ex rel. Pelman v. McDonald's Corp.*,
    396 F.3d 508 (2d Cir. 2005) ..................................................................................16

*Pennsylvania v. Navient Corp.*,
    967 F.3d 273 (3d Cir. 2020)...............................................................................19, 20

*Rollins, Inc. v. Butland*,
    951 So. 2d 860 (Fla. 2d DCA 2006) ......................................................................17

*In re Ry. Indus. Empl. No-Poach Antitrust Litig.*,
    395 F. Supp. 3d 464 (W.D. Pa. 2019) ..............................................................24, 28

*In re Sch. Asbestos Litig.*,
  789 F.2d 996 (3d Cir.1986)..................................................................................25

*Sevin v. Kelshaw*,
  611 A.2d 1232 (1992) .........................................................................................10

*Smith v. Pizza Hut, Inc.*,
  2011 WL 2791331 (D.Co. Jul. 14, 2011) ............................................................29

*Stephenson v. Capano Dev., Inc.*,
  462 A.2d 1069 (Del. 1983) .................................................................................16

*Stewart v. Abraham*,
  275 F.3d 220 (3d Cir. 2001)................................................................................24

*Stockroom, Inc. v. Dydacomp Dev. Corp.*,
  941 F. Supp.2d 537 (D.N.J. 2013) ......................................................................13

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011)..........................................................................21, 28

*Sun Chem. Corp. v. Fike Corp.*,
  243 N.J. 319 (2020) ...........................................................................................15

*Thiedemann v. Mercedes–Benz USA, LLC*,
  183 N.J. 234 (2005) ...........................................................................................15

*Tobin v. Paparone Const. Co.*,
  137 N.J. Super. 518 (Super. Ct., Law Div. 1975) ...............................................10

*Travis v. Navient Corp.*,
  460 F. Supp. 3d 269 (E.D.N.Y. 2020) ...........................................................16, 20

*United Jersey Bank v. Kensey*,
  306 N.J. Super. 540 (App. Div. 1997) ...........................................................18, 19

*Varacallo v. Massachusetts Mut. Life Inc. Co.*,
  332 N.J. Super. 31 (2000) ..................................................................................10

*Wal-Mart Stores v. Duke*,
  131 S. Ct. 2541 (2011).......................................................................................22

*In re Warfarin Sodium Antitrust Litig.*,
  212 F.R.D. 231 (D. Del. 2002) ...........................................................................28

*Washington v. William H. Porter, Inc.*,
  2017 WL 3098210 (Del. Sup. Ct. 2017)..............................................................16

*Young v. Joyce*,
    351 A.2d 857 (Del. 1975) ........................................................................16

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ...............................................................23

**Statutes**

Del. Code Ann. § 2511, *et seq.* .....................................................................16

Del. Code Ann. § 2513(a) ...............................................................................16

Fla. Stat. Ann. § 501.201, *et seq.* ..................................................................17

Fla. Stat. § 501.204(1) .....................................................................................16

20 U.S.C. § 1001 *et seq.* ...........................................................................19, 20

N.J.S.A. § 56:8-1, *et seq.* ..........................................................................14, 15

N.J.S.A. § 56:8-2 .............................................................................................14

N.Y Gen. Bus. Law § 349(a) ..........................................................................15

15 U.S.C. § 78(j) ..............................................................................................25

**Other Authorities**

Fed. R. Evid. 404(b) ........................................................................................31

Fed. R. Civ. P. 9(b) ....................................................................................*passim*

Fed. R. Civ. P. 23 ...............................................................................21, 22, 24

Fed. R. Civ. P. 23(a) ...................................................................................24-26

Fed. R. Civ. P. 23(a)(4) ...................................................................................27

Fed. R. Civ. P. 23(b) ..................................................................................24, 28

Fed. R. Civ. P. 23(b)(3) ..............................................................................22, 28

Fed. R. Civ. P. 23(a) ..................................................................................25, 26

Fed. R. Civ. P. 23(a)(2) .............................................................................25, 26

Fed. R. Civ. P. 23(a)(3) ...................................................................................25

1 Newberg on Class Actions § 3:29 (5th ed.) ................................................26

## PRELIMINARY STATEMENT

*"Compound interest is the most powerful force in the universe." – Albert Einstein (attributed)*

Defendants Navient Corporation and Navient Solutions, LLC f/k/a Navient Solutions, Inc. f/k/a Sallie Mae Inc. (collectively, "Defendants" or "Navient") have systematically and knowingly abused this powerful force to their great – and completely unjust – enrichment.  Navient is the largest student loan servicer in the United States, "servicing" millions of loans.  As alleged extensively in the fact-laden Class Action Complaint (the "CAC" or "Complaint"), Navient, *inter alia* intentionally misallocates payments intended to principal instead to interest, misdirects payments intended for higher-interest loans to lower interest loans, and improperly capitalizes interest at random.  It purposefully and artfully conceals all of this from the borrowers.  In so doing, Navient wrongfully prevents the paydown of principal on the student loans and reaps the wrongful reward of untold millions – likely billions – in unnecessary, improper, and fraudulently-induced interest payments.

Navient is crafty.  With such an enormous body of millions of debtors, "servicing", as it does, *billions* of dollars in student loan debt – and with the power of compound interest – it need "only" fleece any given debtor by a relatively small amount any given month; thus (Navient hoped) evading notice and, even if noticed, making enforcement uneconomical for any given debtor.  To address wrongs such as the one perpetrated by Navient, over a large, identifiable class of victims, is of course precisely why there are class action lawsuits.

Navient cannot credibly claim that the extremely detailed Complaint does not allege actionable claims for, among other things, fraud and consumer fraud.  It cannot credibly argue that its malfeasance, which was knowingly and systemically wrought on a large and identifiable

class, should not properly be addressed via class action – certainly not at the pleading stage. Its motion to dismiss or strike class allegations should be denied.

**FACTS**

Defendants service the loans of more than 12 million borrowers, totaling more than $300 billion in federal and private student loans. Compl. ¶¶ 7, 49-62. In that capacity, Defendants manage borrowers' accounts, assist borrowers to learn about, enroll in, and remain in alternative repayment plans, and communicate directly with borrowers. *Id.* ¶ 8. Plaintiffs are individuals who currently have, or had, student loans serviced by Navient. *Id.* ¶¶ 37-45.

Defendants have developed a repayment system intended, by design, to maximize a borrower's indebtedness through a fraudulent scheme that inflates interest and thwarts repayment of principal to increase their own interest income. *Id.* ¶¶ 9-13, 86-204. As a result, although borrowers have been making payments for over a decade (and sometimes decades), the amounts they currently owe Defendants have barely been reduced from their original loan amounts and, in some instances, have actually increased. *Id.* ¶ 17. This is the case for Plaintiffs, and all other Navient borrowers. *See id.* ¶¶ 37-45.

Defendants' scheme is implemented via the following misconduct, each consisting of separate fraudulent misrepresentations and/or omissions by Defendants. *Id.* ¶¶ 86-204.

**I.    DEFENDANTS    SYSTEMATICALLY    MISALLOCATE    PAYMENTS DISPROPORTIONATELY TO INTEREST INSTEAD OF PRINCIPAL.**

Defendants routinely misallocate payments – allocating more towards interest (and less towards principal) than they should, thereby causing borrowers to overpay interest and extend their indebtedness. *Id.* ¶¶ 86-93. At other times, Defendants apply payments toward principal erratically – at times increasing the principal amount from automatic payments, other times decreasing them, which, in turn, unpredictably changes the amount of outstanding principal. *Id.*

2

¶ 94.  This is the case for Plaintiffs, and all Navient borrowers.  *Id.* ¶¶ 95-107.  For example:

- In 2014 Plaintiff Baxi made regular monthly payments that Defendants allocated inconsistently and excessively towards interest rather than principal. *Id.* ¶ 95.

- In 2016 and 2017, Plaintiff Ibrahim made payments towards various loans that Defendants also allocated inconsistently and excessively towards interest, thereby improperly keeping the principal amount owed higher than it should have been.  *Id.* ¶¶ 96-98.

- In 2007, Plaintiff Manetta made payments towards various loans that Defendants also allocated inconsistently and excessively towards interest.  *Id.* ¶¶ 99-101.

- In 2008 and 2009, Plaintiff Markosian made payments towards various loans that Defendants also allocated inconsistently and excessively towards interest.  *Id.* ¶¶ 102-104.

- In 2008 and 2018, Plaintiff Peck made payments towards various loans that Defendants also allocated inconsistently and excessively towards interest.  *Id.* ¶¶ 105-107.

In short, Plaintiffs are repeatedly penalized by Defendants' actions and loan repayment system, as the misapplication of payments to both loan principal and interest impedes the repayment of principal and enhances the accrual of interest on the student loans. *Id.* ¶ 108. While these misallocations to interest seem minor when viewed on an individual basis, when committed repeatedly over the life of a loan, these minor misallocations lead to significantly and artificially inflated remaining balances. *Id.* ¶ 109.  More, the misallocations are purposely done in small amounts and in connection with automatically debited monthly payments – which generally remain static.  As such, most borrowers see the same and/or similar monthly debit amount –but not the actual allocations between principal and interest – and think nothing of it. *Id.* ¶ 110.

## II.   DEFENDANTS SYSTEMATICALLY ALLOCATE MONTHLY PAYMENTS TO LOANS WITH LOWER INTEREST RATES.

Borrowers normally have various different loans through Defendants, with different principal amounts and different interest rates, with loans at higher rates accruing interest at higher amounts. *Id.* ¶¶ 111-113.  Defendants systematically and unilaterally allocate Plaintiffs'

monthly payments to loans with lower interest rates, as opposed to loans with higher interest rates. *Id.* ¶¶ 114-115.  For example:

- On April 20, 2014 and July 20, 2014, Defendants misallocated greater portion of two separate $675.13 payments that Baxi made towards loans he had at lower interest rates (rather than those with higher interest rates). *Id.* ¶¶ 116-118.

- On May 14, 2014 and October 14, 2014, Defendants misallocated greater portions of a $940.60 payment and $976.03 payment that Ibrahim made towards loans he had at lower interest rates. *Id.* ¶¶ 119-121.

## III.   DEFENDANTS SYSTEMATICALLY CHARGE ARTIFICIALLY INFLATED MINIMUM INTEREST PAYMENTS.

Defendants also improperly charge inflated minimum interest payments.  *Id.* ¶¶ 112, 125. As such, Plaintiffs were not only deceived into making larger minimum payments, but those excess payments did nothing to lower their principal balances.  *Id.* For example:

- On June 27, 2017, although Pereira made significant payments towards various loans that were more than enough to cover the minimum purported payment towards interest and all remaining principal on these loans, none of the loans' principal balances were reduced. *Id.* ¶¶ 123-124.

## IV.   DEFENDANTS DELIBERATELY MISAPPLY CAPITALIZED INTEREST.

While Plaintiffs' loans were in repayment (not in deferment), Defendants repeatedly incorrectly capitalized interest at both abnormal times and frequencies, which improperly inflated the outstanding balances on Plaintiffs' loans. *Id.* ¶¶ 126-129, 135.  For example:

- Defendants improperly capitalized various of Plaintiff Ibrahim's loans on both December 22, 2018 and December 24, 2018, some of which had also all been capitalized on both February 1, 2012 and February 11, 2012 and/or on both June 30, 2012 and July 1, 2012. *Id.* ¶ 130.

- Defendants improperly capitalized two of Plaintiff Pereira's loans on both September 24, 2010 and October 3, 2010, and another two loans on both March 19 and 31, 2010, as well as June 30, 2010 and July 1, 2010. *Id.* ¶ 131.

- Although one of Plaintiff Pereira's loans was normally capitalized quarterly, on August 13, 2010, the loan was capitalized only 44 days after the prior capitalization. *Id.* ¶ 132.

- On July 1, 2016, Defendants capitalized interest on numerous of Plaintiff Pereira's loans.

However, the transactions are unexplainable as there are no debits to interest or credits to principal. *Id.*

- Defendants improperly capitalized one of Plaintiff Amores's loans three times in the span of one month, on June 30, 2018, July 28, 2018 and July 30, 2018. *Id.* ¶ 133.

- Although one of Plaintiff Baxi's loans was normally capitalized annually, on March 21, 2012, the loan was capitalized only 91 days after the prior capitalization. *Id.* ¶ 134.

## V.   DEFENDANTS PROMOTE (I) THE USE OF COSIGNERS, BUT DELIBERATELY HINDER THEIR RELEASE AND (II) AN INCENTIVE PROGRAM THAT PROVIDES NO BENEFIT TO THE BORROWER.

Defendants promote the use of cosigners to students when applying for a loan. *Id.* ¶¶ 169-173.  To induce a borrower to use a cosigner, Defendants misrepresent to students and cosigners that a cosigner can be easily released; however, that is not the case. *Id.* ¶¶ 174-190.  For example, Navient represents that a student can get a cosigner released after making 12 consecutive on-time principal and interest payments and meeting its "credit underwriting criteria."  *Id.* ¶ 180.  However, Navient deliberately makes it very difficult to do so by various means. *Id.* ¶¶ 180-188.

Defendants also enticed borrowers to apply for loans by promoting a Upromise incentive program that it represented would provide borrowers significant savings. *Id.* ¶¶ 191-195.  However, Defendants operated the Upromise incentive program in a manner that did anything but save their members money. *Id.* ¶ 196. For example, for credits going towards student loans, Defendants structured the timing of the credits to be applied towards interest payments only – despite their representations touting lowering a student's debt balance if they enroll.  *Id.* ¶ 197.

## VI.   DEFENDANTS CONCEAL THEIR FRAUDULENT SERVICING OF LOANS FROM BORROWERS.

In order to further their fraudulent servicing of Plaintiffs' loans, Defendants have employed deliberate measures to prevent Plaintiffs from obtaining any meaningful information regarding their loans, thus preventing them from discovering Defendants' repeated (i) misallocation of payments disproportionately to interest, (ii) misallocation of payments to loans

with lower interest rates, (iii) charges of artificially inflated minimum interest payments, and (iv) improper capitalization of payments. *Id.* ¶¶ 136-168, 198-204.

### A.   Defendants' Repayment System and Customer Service is Designed to Hinder Repayment and Impede the Discovery of Errors.

Every aspect of Defendants' repayment system is structured to inhibit the payment of principal and to prolong the life of indebtedness and increase costs to the borrower. *Id.* ¶¶ 136, 143. The loan applications and Promissory Notes are devoid of specifics, including actual interest rates and term durations. *Id.* ¶ 137.  More, customer representatives do not have access to the Promissory Notes in their system, which further delays unearthing issues.  *Id.*  For example:

- Navient's online portal Help Center allows borrowers to submit inquiries through its <u>Email Us</u> section; however, Borrowers' questions and Navient's responses follow disparate paths of emails, separate website pages, and documents with different information and tracking numbers, and none that are easily reconcilable with the other. *Id.* ¶ 138.

- Navigating to the <u>Email Us</u> section is tedious and often leads to the website timing out and logging the user off.  In addition, once the user clicks on the <u>Email Navient with Your Question</u> link, the user must type her question in a box to submit to Navient.  Once submitted, Navient sends the user an email confirmation with a seven-digit reference number, but there is no record of the actual question in this confirmation.  If/when Navient responds to a question, the seven-digit reference number is not included in the body of the response and, the original question is often not included in the response.  As such, a borrower is unable to obtain a clear record of what question is being responded to and if a follow up question is needed (and/or how a follow up question could even be submitted to properly refer to the original question).  *Id.* ¶¶ 139-141.

- If a user has a follow up question, there is no way to respond directly within the same query chain.  Instead, the user must create a new query altogether. This is intentionally inefficient as a dilatory tactic by Navient. *Id.* ¶ 142.

### B.   Defendants Conceal and Misrepresent Information Regarding Plaintiffs' Loans.

Defendants also deliberately fail to provide borrowers with critical information pertaining to their loans.  *Id.* ¶¶ 144-146, 149.  Indeed, Navient (i) does not provide amortization schedules to borrowers regardless of whether the loans have a fixed or variable interest rate, and (ii)

provides promissory notes that are silent on the actual duration of the loan and instead offer maximum periods. *Id.* ¶ 147. This leaves the student loan borrower at the mercy of Navient when it comes to calculating the minimum monthly payments and projecting the total cost of the loan if the borrower were to make extra payments. *Id.* ¶ 148. Without an amortization schedule, it is practically impossible for a borrower to understand what their overall balance should be – and/or whether the minimum monthly payments charged by Navient is accurate. *Id.*

> ### C.      Defendants' Monthly Statements are Deceptive and Misleading.

Navient also deliberately withholds the breakdown of payment allocations toward principal and interest on its monthly statements in order to conceal or, at least, delay discovery of any errors or misapplication of payments by borrowers. *Id.* ¶¶ 150, 168. More specifically, Defendants provide monthly statements that are impossible to discern (much less correct) any misallocation of payments. *Id.* ¶¶ 151-167. For example:

- The Account History section on Navient's website is the only way for a borrower to determine how payments have been allocated by Navient. However, Navient requires a borrower to navigate through a multi-step process and can only be discovered after a series of selections, making it impossible for a borrower to determine the principal, interest or fees breakdown from their monthly statements or through the By Transaction screen on Navient's Account History page of its online portal. *Id.* ¶¶ 154-155.

- Navient does not allow its smartphone application to permit user authentication using Face ID, Touch ID or any other similar security authentication software designed to streamline secure access. *Id.* ¶¶ 156-157.

- On its monthly statements, Navient puts the Unpaid Interest and Unpaid Fees in the same category column in order to conceal late and/or other fees charged. *Id.* ¶¶ 158-159.

- Over the life of Plaintiffs' loans, Navient will make changes to repayment terms. However, Navient fails to provide any actual information regarding reasons for those changes, making it impossible for a borrower to know if the change was proper. *Id.* ¶¶ 160-162.

- Navient also provides instructions to submit extra payments, but then fails to honor them despite the borrower's diligent adherence to those instructions. *Id.* ¶¶ 163-164.

- Defendants apply payments inconsistently and in contradiction with even their own language in their promissory notes. Extra payments made by Plaintiffs in between automatic monthly debits – that are applied by Navient towards principal <u>and</u> interest, and are <u>in excess</u> of the upcoming automatic monthly debit amounts – has little or no impact on reducing the amount of interest paid the next month or even the following monthly amount due. *Id.* ¶¶ 165-167.

> **D.      Navient's Office of the Customer Advocate Serves No Purpose and Is Merely an Imitation of Its Customer Service.**

Navient touts its responsiveness to its borrowers, which Navient claims is bolstered by its creation of an Office of the Customer Advocate. *Id.* ¶ 198.  However, Navient makes gaining access to the Office of the Customer Advocate difficult and fruitless, leading borrowers to submit to the improper servicing of their loans.  *Id.* ¶¶ 199-204.  For example:

- Navient controls the wait times of callers to its customer service phone system, and it has the ability to speed up wait times and, presumably, to also throttle and increase wait times through its automated system.  *Id.* ¶ 200.

- When a borrower calls the general customer service number 888-272-5543, the caller is routed through a long, automated system often littered with advertisements, stock notices, and automatic hang-ups. More, a search on Defendants' website or online portal for the Office of the Customer Advocate does not yield any results for the Office of the Customer Advocate or contact information.  *Id.* ¶¶ 201-202.

In summary, Defendants have engaged and continue to engage in repeated and continuous misrepresentations and/or omissions, as set forth above, including:

- Misallocating payments disproportionately to interest rather than principal;

- Charging inflated minimum monthly payments and applying the excess payment to interest only;

- Applying single loan payments across multiple loans, so as to spread a payment out over multiple loans' principals and interests, rather than one loan's principal and interest;

- Applying single loan payments across multiple loans, so as to spread a payment out over loans with the lower interest rate first, so that more debt accrues on the higher interest loans;

- Capitalizing interest at irregular frequencies and improper times;

- Employing an antiquated, confusing, and misleading online payment system to provide information in order to prevent Plaintiffs from being able to understand their loan payments and applications;

- Employing misleading monthly billing statements with inaccurate, deceptive, and confusing information;

- Refusing to release cosigners even when release-eligibility criteria should have been met;

- Refusing to provide accurate historical transactional information on student loans to Plaintiffs; and

- Failing to provide Plaintiffs with a clear, reliable, and consistent way to apply automated online payments and extra payments to specific loans.

*See id.* ¶¶ 86-204, 219, 232, 254, 269, 284.

As a result of all of these misrepresentations and/or omissions, Plaintiffs and all Navient borrowers have suffered substantial losses, including paying inflated principal, interest, and costs associated with their student loans.   Due to Defendants' repeated misrepresentations, concealment, and/or omissions regarding the servicing of Plaintiffs' student loans, Plaintiffs have asserted the following claims: Fraud, Violation of New Jersey Consumer Fraud Act, Violation of Delaware Consumer Fraud Act, Violation of Florida Deceptive and Unfair Trade Practices Act, Violation of New York Consumer Protection from Deceptive Acts and Practices, and Breach of Fiduciary Duty.  *Id.* ¶¶ 219-300.  Plaintiffs assert these claims individually and on behalf of all others similarly situated.   *Id.*   Plaintiffs identify a **Nationwide Class** consisting of "All individuals in the United States and its territories who have ever had any loans with Defendants and/or had any loans (private or federal) serviced by Defendants at any time" and four **State Subclasses** (New Jersey, Florida, Delaware, and New York). *Id.* ¶¶ 205-209.

## LEGAL ARGUMENT

## I.  PLAINTIFFS HAVE SUFFICIENTLY ALLEGED VALID FRAUD CLAIMS.

The elements of a common-law fraud claim are: (1) a material misrepresentation and/or

omission of fact; (2) knowing the misrepresentation to be false or the omission to be material, and intending the other party to rely on it; and (3) the other party relies upon the misrepresentation or omission to its detriment.  *Varacallo v. Massachusetts Mut. Life Inc. Co*., 332 N.J. Super. 31, 43 (2000). In addition, when a person undertakes to make representations, he must state every material fact within his knowledge which may qualify the representations he has made.  *Tobin v. Paparone Const. Co*., 137 N.J. Super. 518, 524-25 (Super. Ct., Law Div. 1975).  Silence in such cases constitutes an affirmative representation.  *Id.*   This is because failure to disclose information where there is a duty to do so constitutes misrepresentation.  *Monsanto Co. v. Rohm & Haas Co.*, 456 F.2d 592, 599 (3d Cir. 1972); *Berman v. Gurwicz*, 178 N.J. Super. 611 (1981)("Silence in the face of an obligation to speak may be fraud.").  More, concealment of a material fact can amount to actionable fraud if the defendant intentionally concealed a material fact to deceive the plaintiff.  *See Moser v. DeSetta*, 527 Pa. 157, 589 A.2d 679, 682 (1991); *Sevin v. Kelshaw*, 611 A.2d 1232, 1237–1238 (1992) ("[A]ctive concealment of defects *known to be material* to the purchaser is legally equivalent to an affirmative misrepresentation.") (emphasis in original); *see also Derby & Co., Inc. v. Seaview Petroleum Co*., 756 F. Supp. 868, 876 (E.D. Pa. 1991) ("[t]he failure to disclose a material fact amounts to a misrepresentation where disclosure would correct a mistake as to a basic assumption and non-disclosure amounts to a failure to act in good faith ....").

In the context of a motion to dismiss, fraud claims are subject to the pleading requirements of "Rule 9(b).  Rule 9(b) provides that "the circumstances constituting fraud or mistake shall be stated with particularity."  FRCP 9(b).  However, "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." *[Id.]* "To satisfy the standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject

precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).  The purpose of Rule 9(b) is to put a defendant on notice as to the "precise misconduct with which [it is] charged." *Lum v. Bank of Am.,* 361 F.3d 217, 223-224 (3d Cir. 2004).  Thus, Rule 9(b) is not strictly constrained to a checklist of "who, what, when, and where" so long as the plaintiff alleges "the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegations." *Frederico*, 507 F.3d at 200 (emphasis added); *see also Jurista v. Amerinox Processing, Inc*., 492 B.R. 707, 745 (D.N.J. 2013) ("The Third Circuit has also indicated, however, that focusing too much on the 'particularity language' of Rule 9(b) is 'too narrow an approach and fails to account for the general simplicity and flexibility contemplated by the rules'") (*quoting Christidis v. First Penn. Mortg. Trust*, 717 F.2d 96, 100 (3d Cir. 1983)); *MSKP Oak Grove, LLC v. Venuto*, 875 F. Supp. 2d 426, 434 (D.N.J. 2012) (stating "courts should be conscious of the fact that application of these more stringent pleading standards may allow 'sophisticated defrauders' to 'successfully conceal the details of their fraud') (*quoting In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1418 (3d Cir. 1997)).   Here, the Complaint meets Rule 9(b), because it adequately gives notice to Defendants of their specific misconduct of fraud and deceptive practices.

Indeed, the Complaint sets forth numerous misrepresentations in Plaintiffs' transaction statements and account records and omissions by Defendants via their misapplication of payments, improper capitalization of interest, and the like.  More, the Complaint sets forth how Defendants made deliberate attempts to conceal those acts by making it difficult, if not impossible, for Plaintiffs to access critical loan information or obtain any meaningful information related to their loans.  First, Plaintiffs set forth in detail how Defendants systematically misallocate payments more towards interest than to principal in order to ensure

that the principal amounts due remain artificially higher than they should, thus increasing the amount of interest that accrues.  *See* Compl. ¶¶ 93-94, 108-109.  In support of these detailed allegations, Plaintiffs list specific examples of such misapplied payments (providing specific dates, type of loans and loan programs, and the amounts of the misapplied payments), which are set forth Plaintiffs' account statements.  *Id.* at ¶¶ 95-107.  Plaintiffs further allege how these misallocations are purposely executed in very small amounts (and oftentimes with automatic payments) in order to affirmatively conceal these misallocations on their statements.  *Id.* ¶ 110.[1]

Second, Plaintiffs also allege in detail how Defendants systematically allocate monthly payments to loans with lower interest rates as opposed to loans with higher interest rates, in order to ensure that the higher interest balances, which accrue interest at greater levels than the lower interest rate loans, remain unpaid longer.  *Id.* ¶¶ 113-115.  And, again, Plaintiffs provide specific examples of these misallocations (again providing specific dates, type of loans and loan programs, and the amounts of the misallocations).  *Id.* ¶¶ 116-120.  More, Plaintiffs allege how Defendants also charge inflated minimum interest payments, and provide specific examples of those concealed acts.  *Id.* ¶¶ 122-124.  And, if that were not enough, Plaintiffs further allege how Defendants deliberately misapply capitalized interest, and provide examples from Plaintiffs' account records.  *Id.* ¶¶ 126-134.

After setting forth all of these improper and fraudulent servicing practices of Defendants and detailing specific misrepresentations regarding misallocations in Plaintiffs' account statements and records, Plaintiffs allege how Defendants successfully concealed these

---

[1] Defendants spill much ink on the misguided notion that because the promissory notes allow them to allocate payments towards interest and to capitalize interest, Plaintiffs have somehow failed to allege any fraud.  *See* Def. Br. at 17-18.  This argument misses the mark.  The fact that the promissory notes permit Defendants to allocate payments or capitalize interest does not, in and of itself, provide Defendants *carte blanche* to do so improperly and with impunity, which is what Plaintiffs allege here.

misapplications and improper servicing by offering bogus customer service, customer advocates, and misleading account statements. *Id.* ¶¶ 136-168. Plaintiffs allege, in detail, Defendants' deliberate efforts to affirmatively conceal and failure to disclose material information related to Plaintiffs' loans. *Id.* Indeed, as alleged, these ineffective services and disclosures – that are purportedly offered to assist Plaintiffs in understanding how/why their loans and payments are serviced – do the exact opposite, as they are designed by Defendants to conceal their fraudulent acts and therefore withhold disclosure related to their improper servicing of loans. These alleged affirmative acts and omissions are more than sufficient to allege a claim for fraud under Rule 9(b). *See Farley v. Gamestop Corp.*, 2013 WL 4042434, at *3 (D.N.J. Aug. 7, 2013) (Rule 9(b) met for fraud claim where plaintiffs alleged that the defendant omitted to inform plaintiffs that the DLC was not included in their video game purchase and that plaintiffs "purchased their pre-owned video games from [d]efendants between May 1, 2010 and November 10, 2010 and alleged purchasing the DLC for their video games at a later, unspecified time"); *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp.2d 537, 546 (D.N.J. 2013) (Rule 9(b) met where plaintiff alleged that the defendant concealed material facts about a software product with the date of original software installation, the losses caused by the software, and general allegations that the defendant's agents "were aware of the faulty programming and/or test functions and concealed the problem"); *D&R Communs., LLC v. Garett*, 2011 WL 3329957, at *7 (D.N.J. Aug. 2, 2011) (Rule 9(b) met where plaintiff "sufficiently alleges the date, time and place of the fraud – all of which occurred at the signing of the contract" and the plaintiff "also alleges the content of [the defendant's] misrepresentation – he concealed his intention not to comply with the contract").

II.   **PLAINTIFFS HAVE ASSERTED VALID CONSUMER FRAUD CLAIMS.**

Rather than directly address any of the state consumer protection statutes set forth in the

Complaint, Navient instead asserts, in conclusory fashion, that they "sound in fraud" and that, since (Navient posits) Plaintiffs have not alleged common-law fraud with particularity[2], all of their statutory claims arising under the New Jersey, New York, Delaware, and Florida consumer fraud statutes similarly fail.  *See* Def. Br. at 15-16.  Of course, this is wrong not only because Plaintiffs have adequately alleged common-law fraud, but also because these consumer protection statutes do not have the same requisite elements as common-law fraud.

    A.    <u>The New Jersey Consumer Fraud Act.</u>

In order to state a claim under the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.* ("NJCFA"), "a plaintiff must allege that the defendant engaged in an unlawful practice that caused an ascertainable loss to the plaintiff." *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir.2007) (*citing Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 647 A.2d 454, 462–65 (1994)). Conduct prohibited by the NJCFA (and hence "unlawful") includes:

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby ....

N.J. Stat. Ann. § 56:8-2.  Thus, to state a claim under the NJCFA, Plaintiffs must allege facts to demonstrate: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss. *IUOEL 68*, 192 N.J. at 389, 929 A.2d 1076 (internal citations omitted); *see also Kalow & Springnut, LLP v. Commence Corp.*, 2009 WL 44748, at *3 (D.N.J. Jan. 6, 2009) ("To state a claim under the NJCFA, a Plaintiff must allege: (1) [U]nlawful conduct by the defendants; (2) an ascertainable loss on the part of the

---

[2] Plaintiffs have so alleged – *see* Argument Section I, above.

plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiffs' ascertainable loss."). "[The NJCFA] essentially replaces reliance, an element of proof traditional to any fraud claim, with the requirement that plaintiff prove ascertainable loss." *See Thiedemann v. Mercedes–Benz USA, LLC*, 183 N.J. 234, 246 (2005). The New Jersey Supreme Court has instructed that, "[l]ike most remedial legislation, the [CFA] should be construed liberally in favor of consumers." *See Sun Chem. Corp. v. Fike Corp.*, 243 N.J. 319, 330 (2020).

### B.   New York General Business Law § 349(a).

New York General Business Law § 349(a) ("GBL § 349") "is a broad, remedial statute . . . directed toward giving consumers a powerful remedy." *Brown v. Hambric*, 168 Misc. 2d 502, 509 (N.Y. City Ct. 1995). Specifically, and to that end, GBL § 349 makes it unlawful to engage in "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] state . . . ." To successfully assert a claim under this section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (*quoting Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940 (2012)). "GBL § 349 extends well beyond common-law fraud to cover a broad range of deceptive practices, . . . and because a private action under § 349 does not require proof of the same essential elements (such as reliance) as common-law fraud, an action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b) . . . . " *Travis v. Navient Corp.*, 460 F. Supp. 3d 269, 286 (E.D.N.Y. 2020); *quoting Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005).

### C.   The Delaware Consumer Fraud Act.

The Delaware Consumer Fraud Act, Del. Code Ann. § 2511, *et seq*. ("DCFA") provides:

> [A]ny deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.

*See* Del. Code Ann. § 2513(a).  "[The DCFA] depart[s] from the common law in the following ways: (1) a negligent misrepresentation is sufficient to violate the statute, (2) a violation of the statute is committed regardless of actual reliance by the plaintiff, and (3) the plaintiff need not show "intent [by the defendant] to induce action or inaction by the plaintiff."  *See Eames v. Nationwide Mut. Ins. Co.*, 412 F.Supp.2d 431, 437 (D. Del. 2006); *citing Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983).  Because the DCA is intended "to protect consumers . . . from unfair or deceptive . . . practices", it "is to be liberally construed."  *See Washington v. William H. Porter, Inc.*, 2017 WL 3098210 at *5 (Del. Sup. Ct. 2017); *Ayers v. Quillen*, 2004 WL 1965866 at *4 (Del. Sup. Ct. Mar. 26, 2004) (*quoting Young v. Joyce*, 351 A.2d 857, 859 (Del. 1975)).

### D.   The Florida Deceptive and Unfair Trade Practices Act.

The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq*. ("FDUTPA") declares unlawful "unfair or deceptive acts or practices" committed "in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).  A FDUTPA claim has three elements: (1) a deceptive act or unfair practice (i.e., a practice that is "likely to deceive a consumer acting reasonably in the same circumstances"); (2) causation; and (3) actual damages. *See Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013) (*citing Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)); *see also Moss v. Walgreen Co.*, 765 F.Supp.2d 1363, 1367 (S.D. Fla. 2011).  "A plaintiff need not show actual reliance on the

representation or omission at issue.  So the burden is unlike (and less than) the burden a claimant pursuing a fraud claim must meet."  *See Coleman v. CubeSmart*, 328 F.Supp.3d 1349, 1361 (S.D. Fla. 2018) (internal quotations omitted) (noting that in determining whether a representation is likely to mislead consumers acting reasonably, courts consider the "net impression created").

***

Here, for all of the reasons Plaintiffs have sufficiently alleged common-law fraud, they have all the more alleged valid causes of action under each of these consumer protection statutes. Put simply, Plaintiffs have adequately alleged that Navient engaged in deceptive consumer-oriented acts which caused them harm.  And, as set forth above, they have alleged these elements with more – far more – than the requisite amount of specificity required under Rule 9(b).

## III.    PLAINTIFFS ASSERT A VALID BREACH OF FIDUCIARY DUTY CLAIM.

Plaintiffs' Complaint alleges a claim for breach of fiduciary duty.  The Complaint alleges that Navient holds itself out to borrowers and touts itself as offering numerous resources to assist Plaintiffs with the repayment of loans via its Customer Service, Help Center, and Customer Advocate and that "Plaintiffs placed special trust and confidence in Defendants based on their representations that their student loans would be serviced properly." Compl. ¶¶ 136-143, 198-204, 296.  Notwithstanding, Navient improperly serviced their loans by, among other things, misallocating Plaintiffs' payments, charging inflated minimum interest payments, and misapplying capitalized interest.  *Id.* ¶¶ 93-107, 115-120, 122-124, 129-134.  They also engaged in a deliberate scheme to hinder Plaintiffs' ability to discover the improper servicing by concealing information and making it essentially impossible to obtain information and/or

meaningful assistance when contacting its purported Customer Service and Customer Advocate, or accessing its Help Center.  *Id.* ¶¶ 136-142, 144-149, 150-167, 198-204.

Navient argues that Plaintiffs' fiduciary duty claim should be dismissed because Navient did not have a fiduciary relationship with any of Plaintiffs.  *See* Def. Br. at 19-20. Navient cites to cases setting forth the general principle that lenders are generally not fiduciaries to debtors. *Id.* Navient ignores, however, an exception to this general rule wherein a fiduciary relationship can exist in circumstances where a lender knows or has reason to know that its borrowers place trust, confidence, and reliance on the information provided by the lender to its borrowers.  Indeed, fiduciary relationships may be implied in law based on "the specific factual situation surrounding the transaction and the relationship of the parties." *Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. 3d DCA 1994); *see also Edwards v. Green Tree Servicing*, *LLC,* 2015 WL 6777463, at *8 (N.D. Fla. Oct. 22, 2015) ("A fiduciary relationship may arise under special circumstances where the bank knows or has reason to know that the customer is placing trust and confidence in the bank and is relying on the bank so to counsel and inform [the customer]."); *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 551 (App. Div. 1997) (duty arises where "either one or each of the parties, in entering ... [the] transaction, expressly reposes ... a trust and confidence in the other ... or [because of the] circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence ... is necessarily implied."); *Burroughs v. PHH Mortgage Corp.*, 2016 WL 1389934, at *4, FN 3 (D.N.J. Apr. 7, 2016) (finding fiduciary duty claim filed by borrower against lender).  More, whether special circumstances exist that gave rise to a fiduciary relationship is a factual question and should not be resolved on a motion to dismiss. *See, e.g., United Jersey Bank v. Kensey*, 306 N.J. Super. at 553 ("Fiduciary relationships implied in law are premised upon the specific factual situation surrounding the

transaction and the relationship of the parties.")(internal citations omitted). Plaintiffs have alleged facts that Defendants were not merely a creditor on Plaintiffs' loans, but that they held themselves out as providers of numerous types of student loan services, borrower assistance related to repaying their loans, and counseling borrowers on every aspect of the student loan life cycle. As such, Plaintiffs state a valid claim for breach of fiduciary duty.

## IV.   **PLAINTIFFS' CLAIMS ARE NOT PREEMPTED.**

In passing, Navient posits that Plaintiffs' claims are purportedly preempted by the Higher Education Act of 1965, 20 U.S.C. § 1001 *et seq*. ("HEA"). *See* Def. Br. at 18-19. However, as Navient well knows, the Third Circuit has recently and squarely spoken on this issue in *Pennsylvania v. Navient Corp.*, 967 F.3d 273 (3d Cir. 2020). In that case, the Third Circuit ruled that the HEA preempts state law *only* to the extent that the state law sets disclosure requirements and does not preempt state law governing affirmative misconduct. *See id.* at 287; *see also Nigro v. Pennsylvania Higher Education Assistance Agency*, 2020 WL 5369980 at *9 (M.D. Pa. Sept. 8, 2020). In so ruling, the Third Circuit expressly relied on the sound reasoning of the Eleventh Circuit in *Lawson-Ross v. Great Lakes Higher Educ. Corp.*, 955 F.3d 908 (11th Cir. 2020), and of the Seventh Circuit in *Nelson v. Great Lakes Educ. Loan Servs. Inc.*, 928 F.3d 639 (7th Cir. 2019). Specifically, relying on and citing to *Lawson-Ross*, the Third Circuit held that the HEA only expressly preempts state law that sets "disclosure requirements," and that "[v]iewed in its statutory context . . . the term 'disclosure requirements' refers to [the HEA's] requirements that certain information be communicated to borrowers during certain stages of the loan, as laid out in § 1083 of the statute. **Thus, the domain § 1098g**[3] **preempts is the type of**

---

[3] The preemption provision in the HEA.

disclosures to borrowers that § 1083 requires." *See Navient*, 967 F.3d at 289 (*quoting Lawson-Ross*, 955 F.3d at 918) (emphasis added).[4]

After *Navient*, and facing claims by a borrower against a federal student loan servicer extremely similar to those raised here, the Middle District of Pennsylvania recently and properly ruled that state law claims arising from the "misapplication of [student loan] payments; improper increases in the amount of . . . principal, improper increases in monthly payments, and improper forbearances," were not preempted by the HEA because they involved claims of affirmative misconduct.[5] *See Nigro*, 2020 WL 5369980 at *9. This is the exact case here, and Plaintiffs' claims are therefore not preempted.

## V.   NO CLAIMS OR ALLEGATIONS SHOULD BE STRICKEN.

### A.   The Class Claims Should Not be Stricken.

As Navient itself acknowledges, the determination of class certification requires a "rigorous analysis" to ensure that all of the requirements of FRCP 23 are met. *See* Def. Br. at 26, *citing Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 353 (3d Cir. 2013). This is because "[t]he requirements set out in Rule 23 are not mere pleading rules." *In re Allergan Biocell Textured Breast Implant Prod. Liab. Litig.*, 2021 WL 1050910 at *6 (D.N.J. Mar. 19, 2021) (*quoting In re*

---

[4] The Third Circuit further ruled that the doctrine of conflict preemption does not apply where, as here, the statute applies for express – if limited – preemption of certain state laws. *See Navient*, 967 F.3d at 293 (Courts "need not infer congressional intent to preempt state laws by the [HEA] . . . . [W]hen Congress has explicitly addressed preemption in a statute, an implication arises that it did not intend to preempt other areas of state law.").

[5] Astoundingly, while ignoring the central holding of the Third Circuit in *Navient*, which is controlling here and plainly demonstrates that Plaintiffs' claims are not preempted by the HEA (and ignoring entirely *Lawson-Ross* and *Nelson* cases upon which the Third Circuit expressly and unambiguously relied), Navient engages in a lengthy discussion of the Ninth Circuit's prior ruling in *Chae v. Sallie Mae*, 593 F.3d 936 (9th Cir. 2010). *See* Def. Br. at 18. In *Navient*, the Third Circuit discussed – and expressly rejected – the Ninth Circuit's reasoning in *Chae*. *See Navient*, 967 F.3d at 293.

*Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008)).  Rather – generally after class discovery – "a court may delve beyond the pleadings to determine whether the requirements for class certification are satisfied," and "conduct a preliminary inquiry into the merits."  *See id.*; *quoting Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 306 (3d Cir. 2011).

With these principles in mind, the Third Circuit has warned that class certification decisions should not be made at the pleading stage except in "rare" circumstances "where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met."  *See Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93, fn 30 (3d Cir. 2011); *opinion restated in part*, 2012 WL 2052685 (3d Cir. Apr. 17, 2012).  Indeed, this Court has recognized that striking class allegations at the pleading stage is a "drastic remedy" and "legion cases have affirmed that motions to strike should be used sparingly, generally are not favored, and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues."  *See Ehrart v. Synthes (USA)*, 2007 WL 4591276 at *3 (D.N.J. Dec 28, 2007) (internal quotations omitted); *see also In re Allergan Biocell Textured Breast Implant Prod. Liab. Litig.*, 2021 WL 1050910 at *46 (D.N.J. Mar. 19, 2021) ("[I]n this District, dismissal of class allegations at the pleading stage is done rarely and . . . the better course is to deny [a motion to strike class pleadings] because the shape and form of a class action evolves only through the process of discovery.") (internal quotations omitted); *Luppino v. Mercedes-Benz USA, LLC*, 2013 WL 6047556 at *3 (D.N.J. Nov. 12, 2013) ("Generally courts do not consider whether a proposed class meets the Fed. R. Civ. P. 23 class requirements until after plaintiffs move for class certification"), *quoting 6803 Blvd. E. LLC v. DIRECTV, Inc.*, 2012 WL 3133680 at *2 (D.N.J. Jul. 31, 2012); *McPeak v. S-L Distribution Co.*, 2014 WL 4388562, at *4 ("an early

21

motion to strike should be denied so that the court can probe behind the pleadings before coming to rest on the certification question, after discovery has taken place.").

Indeed, of all of the cases cited by Navient, only one, *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 368 (D.N.J. 2015) *remotely* represents the "rare" case where a class claim may be stricken at the pleading stage. In *Mladenov*, the class allegations were stricken (after Plaintiff was presented with an opportunity on order to show cause to demonstrate otherwise) because the class members – purchasers of baked goods – could not be identified in any reliable way, and thus plaintiffs could not meet the "ascertainability" requirement of FRCP 23(b)(3). This issue, of course is not present here, where the class members consist of individuals whose student loans are or have been serviced through Navient and they can easily be identified, *inter alia*, through Navient's own records. *See, e.g.*, *Byrd v. Aaron's, Inc.*, 784 F.3d 154, 163 (3d Cir. 2015). Thus, *Mladenov* represents a rare – and inapposite – outlier case.

None of the other cases cited by Defendants represent a situation where a plaintiff's class allegation was stricken on the pleadings, thus demonstrating just how rare and drastic the relief sought by Navient truly is. *See Wal-Mart Stores v. Duke*, 131 S. Ct. 2541 (2011) (reversing Court of Appeal's affirmation of District Court's class certification made on plaintiff's motion for class certification after class discovery and presentation of evidence, including expert testimony); *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 159-160 (1982) (remanding for further proceedings because, in *certifying* class on the pleadings without discovery, District Court failed to "evaluate carefully the legitimacy of" plaintiff's class allegations, because "the class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising plaintiff's cause of action.'") (internal quotations omitted); *Advanced Carrera v. Bayer Corp.*, 727 F.3d 300, 312 (3d Cir. 2013) (vacating order certifying class on plaintiff's

motion for class certification, and remanding for further class discovery on ascertainability requirement); *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 353 (3d Cir. 2013) (same); *Landsman & Funk PC*, 640 F.3d at n.30 ( "[w]e note at the outset our agreement with plaintiff Landsman that this case is not among the rare few where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met."); *Marcus v. BMW of N. Am. LLC*, 687 F.3d 583, 593 (3d Cir. 2012) (reversing District Court's decision to certify sub-class on plaintiff's motion for class certification after class discovery and remanding for further fact-finding by District Court); *In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (II)*, 2012 WL 379944 at **1, 34-37 (D.N.J. Feb. 6, 2012) (ruling on renewed motion for class certification after "extensive discovery" and multiple summary judgment opinions); *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 216, 226 (D.N.J. 2003) (striking proposed *defendant* subclass because named plaintiff had no causes of action against alleged subclass members, but refusing to strike *plaintiff* class at the pleading stage); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) (finding no abuse of discretion where District Court denied class certification on plaintiff's motion for class certification).

Thus, based on the very case law cited by Navient – not to mention the vast weight of case law in this District, this Circuit, and elsewhere – at minimum, Plaintiffs should be permitted to engage in class discovery, and the propriety of Plaintiffs' proposed class (and any subclasses) under FRCP 23 should be addressed at the class certification stage.

### 1. Plaintiffs Have Adequately Pleaded Class Claims.

In all events, and certainly at the pleading stage, Plaintiffs have sufficiently articulated a proper class (and subclasses) under FRCP 23, or at minimum have demonstrated that they will be able to do so through class discovery.  In order to certify a proposed class action, a party must

satisfy the four requirements found in FRCP 23(a): (i) numerosity; (ii) commonality, (iii) typicality, and (iv) adequacy of representation, and at least one of the requirements of FRCP 23(b). Each of these requirements is met here.[6]

### i.      Numerosity.

The numerosity requirement of Rule 23(a)(1) is satisfied when a named plaintiff demonstrates that the putative class includes more than forty individuals. *See Stewart v. Abraham*, 275 F.3d 220, 26-27 (3d Cir. 2001). Given the breathtaking scope of Navient's consumer fraud here, this element is easily met. *See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182 (3d. Cir. 2001) ("It is clear the size of putative class satisfies this criterion. There are hundreds of thousands of class members and joinder would be impracticable.").

### ii.      Commonality/Typicality.

The commonality requirement of Rule 23(a)(2) is satisfied if the plaintiff "share[s] at least one question of fact or law with the grievances of the prospective class." *Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). The typicality requirement of Rule 23(a)(3) requires that the representative plaintiffs must show that their claims are "typical" of the claims asserted by the other potential class members. *See Marcus*, 687 F.3d at 598. "The concepts of commonality and typicality are broadly defined and tend to merge, because they focus on similar aspects of the alleged claims." *Newton*, 259 F.3d at 182. The Third Circuit has:

> . . . set a low threshold for satisfying both requirements. *See Barnes v. American Tobacco Co.*, 161 F.3d 127 at 141 (3d Cir. 1998) (noting claims based on common course of conduct satisfy typicality); *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir.1986) (highlighting that the " 'threshold of commonality is not high'") (*quoting*

---

[6] At the motion to strike stage, the burden on plaintiffs is less than that at the certification stage. *See In re Allegeran*, 2021 WL 1050910 at *49, *quoting In re Ry. Indus. Empl. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 514 (W.D. Pa. 2019).

> *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir.1986)). That is, "Rule 23(a)
> does not require that class members share every factual and legal predicate to meet the
> commonality and typicality standards." *In re General Motors Corp. Pick-Up Truck Fuel
> Tank Products Liab. Litig.*, 55 F.3d 768 at 817 (3d Cir. 1995). "'[N]either of these
> requirements mandates that all putative class members share identical claims.'" *Krell v.
> Prudential Ins. Co.*, 148 F.3d 283 at 311 (3d. Cir. 1998) (*quoting Neal*, 43 F.3d at 56).

*Id*. at 182-183.  Both of these related criteria are met here.

### a.  Commonality

Commonality does not require an identity of claims or facts among class members.  *See Newton*, 259 F.3d at 183; *citing Prudential*, 148 F.3d at 310 (internal citations omitted).  Rather, as noted, "the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  *Id*. (in class action against broker dealer, ruling that "plaintiffs' claims raise several common issues including: 1) did defendants intentionally execute the plaintiffs' orders at the NBBO (National Best Bid and Offer system) price without examining other alternatives; 2) did defendants fail to disclose their practice in violation of their duty to their customers; 3) were defendants technologically capable of providing superior prices to those offered on the NBBO; and 4) did defendants' conduct violate § 10(b) of the Securities Exchange Act of 1934") (internal quotations omitted).

Here, the Complaint sets forth no fewer than eight common questions of law and fact which the named Plaintiffs have in common with the identified Classes, and Navient fails to seriously contest any of them.  *See* Compl., ¶ 215(a)-(h).  Thus, the commonality requirement of FRCP 23(a)(2) is easily met.

### b.  Typicality

"The typicality criterion is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the

claims of the absentees." *Neal*, 43 F.3d at 57 (internal citations omitted).  That said, "[t]he Third Circuit has set a low threshold for satisfying the typicality requirement holding that if the claims of the named plaintiffs and class members involve the same conduct by the defendant, typicality is established."  *See In re Allergan*, 2021 WL 10500910 at *48 (internal quotations omitted).  In fact, a "Court will not consider the potential factual differences among individual Plaintiffs, which could otherwise defeat class certification."  *Id*. at *47.  This is because typicality does not require completely identical facts and legal theories of the class representatives as compared to the absent class members. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 817-18 (3d Cir. 1995) ("Rule 23(a) does not require that class members share every factual and legal predicate to meet the commonality and typicality standards."). "Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *In re Nat'l Football League Players Concussion Injury Litig*., 821 F.3d at 428 (internal quotations omitted); *see also Barnes v. Am. Tobacco Co*., 161 F.3d 127, 141 (3d Cir. 1998) (the typicality "requirement does not mandate that all putative class members share identical claims."). Indeed, "'cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims.'" *In re Nat'l Football League Players Concussion Injury Litig*., 821 F.3d at 428 (quoting *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994)); *see also* 1 Newberg on Class Actions § 3:29 (5th ed.) ("[T]he plaintiffs' claims need not be identical to those of the class; typicality will be satisfied so long as the named representatives claims share the same essential characteristics as the  claims of the class at large.").

The Complaint pleads that each class representative has claims typical of the Class's claims. Each class representative had loans serviced by Defendants, that each had their loans serviced fraudulently in the same manner (e.g., misallocation of payments, improper capitalization, and obfuscation of discovery of those errors), resulting in the same harm [ascertainable loss] (i.e., artificially increased principal balances and interest). The claims all stem from the same deceptive course of conduct by Defendants and seek the same remedies (i.e., reimbursement of economic losses sustained as a result of the fraudulent servicing of their loans). Thus, Plaintiffs are typical of the class members, and the class allegations should proceed to discovery. *See In re Nat'l Football League Players Concussion Injury Litig*., 821 F.3d at 428.

### iii.    Adequacy.

Navient does not – and cannot – argue that the named Plaintiffs and counsel cannot "fairly and adequately protect the interests of the class" as is required under FRCP 23(a)(4). There are no "intraclass conflicts" which would undercut the class representatives from representing the Class and Plaintiffs' counsel are experienced litigators with many decades of combined experience litigating complex commercial cases in this District and elsewhere.

### iv.    Rule 23(b) Considerations.

Class certification under FRCP 23(b)(3) is appropriate when the court "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[7] In their brief, Defendants appear to argue

---

[7] Plainly, the "superiority" requirement is met (or at the very least discovery will likely demonstrate that it is met). Defendants have engaged in a scheme to skim from consumers amounts which may be small as to any individual transaction or consumer but which are vast in the aggregate, to Defendants' wrongful gain. *See, e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 251 (D. Del. 2002) ("The superiority requirement asks the court to balance, in

that Plaintiffs cannot meet the "predominance" requirement; i.e., that individual considerations will outweigh common issues concerning class (or subclass) members. However, the Complaint makes clear that there exists many common issues in this case arising out of Defendants' conduct, including: (a) whether Defendants improperly allocated payments; (b) whether Defendants improperly capitalized interest; (c) whether Defendants deliberately made it difficult, if not impossible, for the borrowers to discover their improper servicing via its complicated and nebulous website, useless customer advocates, and misleading statements; (d) whether Defendants deliberately concealed their improper servicing of the loans; and (e) whether Defendants engaged in acts that violated each of the state consumer fraud and deceptive trade practices acts alleged in the Complaint. These questions, which plainly predominate over any individualized ones, will be subject to common discovery and proof.[8] *See In re Allergan*, 2021 WL 1050910 at *49 (On a motion to strike class allegations, "'[t]he court must determine only whether plaintiffs satisfied their burden to set forth factual allegations to advance a prima facie showing of predominance or that at least it is likely that discovery will reveal evidence" so that critical elements of Plaintiffs' claims may be proven on a class-wide basis.'") (*quoting In re Ry. Indus.*, 395 F. Supp. 3d at 514; *see also Derrick v. Glen Mills Sch.*, 2019 WL 7019633 at *9 (E.D. Pa. Dec. 19, 2019) ("Without the benefit of at least some limited discovery . . . any determination regarding predominance would be premature"); *Goldman v. RadioShack Corp.*,

_____

terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication . . . . The factors set out in Rule 23(b)(3) help the court assess whether a class action is superior to other available methods of adjudication. In the case of consumers, the class members here have little interest in individually controlling the prosecution or defense of separate actions . . . because each consumer has a very small claim in relation to the cost of prosecuting a lawsuit.") (internal citations and quotations omitted).

[8] Differences in state laws, of course can and will be addressed through the commonly-used practice of subclassing. *See Sullivan v. DB Invest., Inc.*, 667 F.3d 273, 301-02 (3d Cir. 2011) ("We have never required the presentation of identical or uniform issues or claims as a prerequisite to certification of a class.").

2003 WL 21250571 at *1 (E.D. Pa. Apr. 16, 2003) (postponing "class certification because further discovery is needed regarding the predominance test . . . ."); *Smith v. Pizza Hut, Inc.*, 2011 WL 2791331 ay *6 (D. Colo. Jul. 14, 2011) ("[T]he predominance of individual questions is only relevant at the post-discovery stage of the collective action certification."); *Chenensky v. New York Life Ins. Co.*, 2011 WL 1795305 at *4-5 (S.D.N.Y. Apr. 27, 2011) (declining to consider predominance requirement before class discovery because any conclusion would be "based on assumptions of fact rather than findings of fact" and the plaintiffs may redraw "class boundaries that obviate the need for individual proof" after discovery.).

Defendants' purported concerns about statutes of limitations and other affirmative defenses it potentially may raise in this litigation do not defeat predominance; certainly not at the pleading stage.[9]   *See In re Allergan*, 2021 WL 1050910 at *48 ("Plaintiffs contend Allergan's potential affirmative defenses [including statutes of limitations for various jurisdictions and purported releases entered by potential class members] do not provide a basis to strike the class allegations because (1) discovery is necessary to determine whether and how the affirmative defenses affect class treatment; (2) affirmative defenses themselves do not preclude class certification . . . The Court agrees.");  *see also In re Community Bank of Northern Va.*, 622 F.3d 275, 293 FN 13 (3d Cir. 2010) (affirmative defenses do not preclude class certification).

---

[9] It bears noting that, although Defendants argue of daunting statute of limitations issues, they have not moved to dismiss any of Plaintiffs' claims on statute of limitations grounds.  Similarly, Defendants make oblique reference to purported form arbitration provisions in some of the loan documents, but did not move to compel arbitration and do not articulate how those purported provisions cannot be addressed on a class basis.  *See In re Allergan*, 2021 WL 1050910 at *49 ("Plaintiffs allege that the Court need not decide prior to discover whether challenging the releases through the mechanism of a class action would be impermissible, because (1) the release is a form document, so that the challenges likely do not entail consumer-specific evidence, and (2) relevant extrinsic evidence unlikely involves meaningful variation among the majority of the class members.  The Court agrees."); *see also Gillis v. Respond Power, LLC*, 677 F. App'x 752, 756 (3d Cir. 2017) ("[F]ederal courts have recognized that claims involving the interpretation of standard form contracts are particularly well suited for class treatment . . . .").

In short, Plaintiffs should be afforded the opportunity to obtain factual evidence through discovery that will confirm the predominance of common issues. At the class certification stage following discovery, Plaintiffs will demonstrate that any individual issues that may exist, including any statute of limitations issues, can be addressed using common case management tools and a class action trial plan.

**B.    The Allegations Regarding Other Actions Are Relevant and Are Admissible As Evidence of Intent and Motive.**

Defendants argue that the allegations regarding other actions involving Navient's countless and various acts of fraud should be stricken because they are irrelevant.  However, those actions are, in fact, relevant to Plaintiffs' claims here, as they evidence a repeated and concerted plan and scheme by Defendants to defraud its borrowers in every possible way imaginable.  While the manner in which Defendants defrauded Plaintiffs in this case may be different than in the other alleged matters, it is undeniable that the allegations and claims in the other matters all arise from the deceptive and improper servicing of the same types of loans of the same types of borrowers as those here.  More, the existence and allegations of other prior bad acts of Defendants is entirely admissible as evidence of motive and intent – which here, is to defraud their millions of borrowers by artificially increasing and prolonging their debt.  *See* Fed. R. Evid. 404(b) (permitting evidence of prior bad acts to demonstrate "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.").  As such, the allegations of other cases involving Defendants' deceptive practices should not be stricken.

## CONCLUSION

Accordingly, Defendants' motion to dismiss or, in the alternative, to strike should be denied in its entirety.

Dated: April 5, 2021                    **KRANJAC TRIPODI & PARTNERS LLP**


By: s/ Xavier M. Bailliard
      Xavier M. Bailliard, Esq.
      James Van Splinter, Esq.
      Joseph Tripodi, Esq.
      30 Wall Street, 12th Floor
      New York, NY 10005
      Tel: (646) 216-2400
      Fax: (646) 216-2373
      Email:    xbailliard@ktpllp.com
                 jvansplinter@ktpllp.com
                 jtripodi@ktpllp.com

      *Attorneys for Plaintiffs*