GREENBERG TRAURIG, LLP
Rebecca G. Zisek, NJ Bar No. 017612012
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
zisekr@gtlaw.com
Tel: (973) 360-7900
Fax: (973) 301-8410

Lisa M. Simonetti (admitted *pro hac vice*)
1840 Century Park East, Suite 1900
Los Angeles, California 90067
simonettil@gtlaw.com
Tel: (310) 586-7700
Fax: (310) 586-7800

*Attorneys for Defendants Navient Corporation
and Navient Solutions, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRIAN MANETTA, SERGIO PEREIRA, ESTHER SYGAL-PEREIRA, MATTHEW MARKOSIAN, NAIMISH BAXI, HARVEY MINANO, SYDNEY PECK, MAHMUD IBRAHIM, and GEORGE AMORES, individually and on behalf of all others similarly situated, | Civil Action No. 2:20-cv-07712-SDW-LDW **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE CLASS AND OTHER ALLEGATIONS** |
| Plaintiffs, | |
| v. | |
| NAVIENT CORPORATION, NAVIENT SOLUTIONS, LLC f/k/a NAVIENT SOLUTIONS, INC. f/k/a SALLIE MAE, INC., and SLM CORPORATION, | |
| Defendants | |

## **<u>TABLE OF CONTENTS</u>**

I.      INTRODUCTION ........................................................................... 1

II.     ARGUMENT.................................................................................. 4

     A.    Plaintiffs Fail To State Any Claim. ..................................... 4

     B.    In The Alternative, The Court Should Strike Allegations..................10

          1.    On Its Face, The Complaint Demonstrates That No Class Could Be Certified. ...............................................................10

          2.    The Unrelated Loan Servicing Allegations Should Be Stricken.................................................................................12

          3.    The Allegations Regarding The Unrelated Legal Actions Against NSL Are Irrelevant And Admittedly Intended To Prejudice NSL........................................................................13

III.    CONCLUSION .........................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ............................................................................1, 2, 3

*Barron Partners, LP v. Lab123, Inc.*,
   593 F. Supp. 2d 667 (S.D.N.Y. 2009) ................................................................8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................................1

*Capital Bank v. MVB*,
   644 So. 2d 515 (Fla. 3rd DCA 1994) ................................................................8

*EPEC Polymers, Inc. v. NL Indus.*,
   No. 12-cv-3842, 2013 U.S. Dist. LEXIS 74642 (D.N.J. May 24,
   2013) ......................................................................................................................9

*Everage v. Ford Motor Co.*,
   No. 04-cv-549, 2005 U.S. Dist. LEXIS 49715 (E.D. Ky. Sep. 14,
   2005) ....................................................................................................................13

*Giles v. Phelan, Hallinan & Schmieg, L.L.P.*,
   901 F. Supp. 2d 509 (D.N.J. 2012)..................................................................12

*Holborn Corp. v. Sawgrass Mut. Ins. Co.*,
   304 F. Supp. 3d 392 (S.D.N.Y. 2018) ..............................................................9

*Hyland v. Navient Corp.*,
   No. 1:18-cv-09031, 2019 U.S. Dist. LEXIS 113038 (S.D.N.Y. July
   8, 2019)..............................................................................................................8, 9

*Jurista v. Amerinox Processing, Inc.*,
   492 B.R. 707 (D.N.J. 2013) ................................................................................8

*Knit With v. Knitting Fever, Inc.*,
   625 Fed. Appx. 27 (3rd Cir. 2015) ..................................................................10

*Mann v. Boatright*,
   477 F.3d 1140 (10th Cir. 2007)........................................................................10

*Martinez v. Equifax Inc.*,
   15-cv-2100, 2016 U.S. Dist. LEXIS 5859 (D.N.J. Jan. 19, 2016)....................12

*McCoy v. Health Net, Inc.*,
    569 F. Supp. 2d 448 (D.N.J. 2008)...................................................................10

*McPeak v. S-L Distrib. Co.*,
    No. 12-cv-348, 2014 U.S. Dist. LEXIS 123728 (D.N.J. Sep. 5,
    2014) ...................................................................................................................10

*In re Merck & Co., Sec. Derivative & Erisa Litig.*,
    C.A. No. 05-2369 (SRC), 2006 WL 2050577 (D.N.J. July 11,
    2006) .....................................................................................................................8

*Pennsylvania v. Navient Corp.*,
    967 F.3d 273 (3d Cir. 2020).................................................................................6

*United Jersey Bank v. Kensey*,
    306 N.J. Super. 540 (Sup. Ct. App. 1997) ..........................................................9

*In re Westinghouse Sec. Litig.*,
    90 F.3d 696 (3rd Cir. 1996) ...............................................................................10

## Other Authorities

34 C.F.R. § 685.202 ....................................................................................................5

34 C.F.R. §§ 685.204-205 ...........................................................................................6

34 C.F.R. § 685.211 ....................................................................................................6

Fed. R. Civ. P. 8(a)(2).................................................................................................3

Fed. R. Civ. P. 9(b) .....................................................................................................7

Fed. R. Civ. P. 23.....................................................................................................3, 4

Fed. R. Evid. 404 ......................................................................................................13

## I.   <u>INTRODUCTION</u>

In the Opposition, Plaintiffs state that NSL "cannot credibly claim that the extremely detailed Complaint does not allege actionable claims[.]"[1] (Opp. at p. 1.) However, length does not equal substance or, more importantly, the "sufficient factual" allegations necessary to state claims for relief that are "*plausible on [their] face.*" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")

Here, notwithstanding the many pages devoted to the Complaint (66) and now the Opposition (30), Plaintiffs have not pled that factual content – *i.e.*, *how* or *on what basis* NSL engaged in any improper servicing of *their* loans. If Plaintiffs had viable claims, this should be straightforward – for instance, an allegation that NSL breached a provision of the governing promissory note or made a specific misrepresentation. But Plaintiffs merely provide "examples" of interest capitalizations or payment allocations (some of which date back to 2007, outside the applicable statute of limitations), without explaining *why* such transactions supposedly were improper. While Plaintiffs argue that these "examples" fulfill the pleading requirements, (Opp. at p. 12), they do not. The "examples" do not

---

[1] Unless stated otherwise, terms are used herein as defined in the Motion.

demonstrate "*how*" NSL misallocated payments or misapplied capitalized interest. They are unexamined conclusions *"that"* NSL did so.

Indeed, there are significant flaws in Plaintiffs' theory of liability. Plaintiffs hardly acknowledge the terms of the Promissory Notes or the regulations promulgated under the HEA, which govern the servicing of the loans at issue. Plaintiffs simply purport not to "understand … whether the [payment amounts] charged by [NSL] [were] accurate." (Opp. at p. 7 (asserting that, on at least one occasion, it was somehow "impossible for a borrower to know if the charge was proper.")) Meanwhile, Plaintiffs repeatedly characterize capitalizations as "random" or "irregular" and payment allocations as "disproportionate[]" and "unexplainable," such that their loans have "barely been reduced from their original loan amounts" (Opp. at pp. 2-5 and 8.) Yet the Promissory Notes make clear that capitalization occurs under various, distinct circumstances and that, unless otherwise directed by the borrower, payments will be allocated pursuant to the HEA.

In sum, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense" and, in addressing the sufficiency of a complaint, conclusory allegations or legal conclusions couched as factual allegations "are not entitled to the assumption of truth." *Ashcroft,* 556 U.S. at 678-80. Here, because

the "pleaded facts do not permit the court to infer more than the mere possibility of misconduct, [Plaintiffs fail to] show [they are] entitled to relief," and the Court should dismiss the instant claims. *Ashcroft*, 129 S. Ct. at 1949-50 (quoting Rule 8(a)(2)).

Alternatively, the Court should strike Plaintiffs' class allegations and other allegations unrelated to the claims asserted in the Complaint. Plaintiffs emphasize in the Opposition that motions to strike class allegations are not often granted. NSL agrees, but this is one of the rare instances where a pleading, on its face, clearly fails to meet Rule 23's requirements.

As explained in the Motion, Plaintiffs propose a class defined as: "*All individuals in the United States and its territories who have ever had any loans with [NSL] and/or had any loans (private or federal) serviced by [NSL] at any time*." (Complaint at ¶ 205.)  By Plaintiffs' own admission, this definition would cover "millions" of borrowers, including an overwhelming majority with no alleged servicing issue on their student loans.  (*Id*. at ¶ 212.)  In connection with a certification request, and starting with a population of every student loan borrower serviced by NSL over an unspecified time period (but presumably at least ten years, given Plaintiffs' allegations), the Court would have to undertake a vast and excruciatingly fact-intensive analysis of NSL's servicing of these borrowers' loans. Based on Plaintiffs' own description, their claims arise from numerous, alleged

issues: "repeated and continuous misrepresentations and/or omissions" including "misallocating payments disproportionately to interest," "charging inflated minimum monthly payments and applying the excess payment to interest only," "applying single loan payments across multiple loans," "capitalizing interest at irregular frequencies and improper times," "employing [an] antiquated, confusing, and misleading online payment system" and "billing statements" to "prevent Plaintiffs from being able to understand their loan payments," "[r]efusing to release cosigners," "[r]efusing to provide accurate historical transactional information," and "[f]ailing to provide Plaintiffs with a clear, reliable and consistent way to apply" their payments. (Opp. at pp. 8-9.)  The impropriety under Rule 23 of evaluating millions of loan accounts for such highly individualized facts is obvious.  Accordingly, the Court should strike the class allegations (along with the further inappropriate allegations having no connection to Plaintiffs' loans and those intended to disparage NSL).

## II.   **ARGUMENT**

### A.   **Plaintiffs Fail To State Any Claim.**

In the Opposition, Plaintiffs argue the existence of a "fraudulent scheme" by NSL to "inflate[] interest and [otherwise] thwart[] repayment of principal[.]" (Opp. at p. 2.)  Based on this alleged scheme, Plaintiffs bring claims for fraud, violation of the NJCFA, DCFA, FDUTPA and NY GBL and breach of fiduciary duty. (Opp.

at pp. 1, 9 and 12). However, these claims suffer from overall, fundamental defects.

As an initial matter, Plaintiffs contend that NSL somehow engaged in fraudulent conduct when servicing their loans, notwithstanding the clear terms of the Promissory Notes. (Opp. at p. 12, n.1). Plaintiffs argue that "[t]he fact that the [P]romissory [N]otes permit [NSL] to allocate payments or capitalized interest does not, in and of itself, provide Defendants *carte blanche* to do so improperly and with impunity[.]" (*Id.*) But this completely misses the point -- Plaintiffs bear the burden to show that some conduct *forming the basis of their claims* was improper. Plaintiffs have not carried that burden, particularly in light of the Promissory Notes. Instead, Plaintiffs aver that capitalization was "fraudulent" because it was "unexpected" or "unexplainable," but nothing more. (Opp. at p. 13.) Likewise, Plaintiffs allege that NSL violated their payment instructions, yet never identify how or when NSL failed to follow such instructions.[2]

Moreover, Plaintiffs do not consider the complex regulatory scheme under the HEA that governs the servicing of federally owned or guaranteed student loans. Detailed and extensive regulations have been promulgated prescribing every aspect of federal student loan servicing, including interest and capitalization (34 C.F.R. §

---

[2] Plaintiffs allege that NSL allows for the submission of "extra payments, but then fails to honor them despite the borrower's diligent adherence to those instructions." (Compl. at ¶¶ 163-64). Yet Plaintiffs do not allege a single instance in which this actually occurred.

685.202 and §§ 685.204-205), and repayment provisions, including payment application and the handling of prepayments or overpayments (§ 685.211).

Plaintiffs do not deny the applicability of, and do not allege that NSL failed to comply with, these regulations. Instead, Plaintiffs purport to invoke common law and state consumer protection statutes to challenge NSL's servicing of their loans. As set forth in the Motion, the HEA prohibits Plaintiffs from using state law to vary servicing requirements or to impose new or additional requirements on servicers. In their Opposition, Plaintiffs deny undertaking this effort (although the effort is clear) and accuse NSL of "ignoring" *Pennsylvania v. Navient Corp.*, 967 F.3d 273, 287 (3d Cir. 2020), in which the Third Circuit analyzed preemption under the HEA. (Opp. at pp. 19-20 and n. 5.) Plaintiffs are wrong; NSL actually cited the decision. (*See* Motion, p. 19).  But, again, Plaintiffs must allege that the conduct underlying the claims somehow is unlawful, which they have not done, and cannot do, in light of the HEA regulations.

In addition to these fatal defects, which permeate the Complaint, each of Plaintiffs' claims fails. On the fraud claims, Plaintiffs must allege that NSL made a "material misrepresentation and/or omission of fact[,] knowing the misrepresentation to be false or the omission to be material," and "intending [Plaintiffs] to rely on it […] to [their] detriment. (Opp. at pp. 9-10.)  However, Plaintiffs do not identify a *single* misrepresentation or omission, much less

materiality, reliance and harm (and obviously not with the specificity required by Rule 9(b)). Similarly, on the consumer protection claims, Plaintiffs must allege at least some type of unlawful conduct, deception or fraud, which they fail to do. For instance, Plaintiffs argue that NSL unlawfully and "unilaterally allocate[d]" payments (Opp. at p. 3), but this is a conclusion, not a factual allegation of misrepresentation or deception. Likewise, Plaintiffs reference six "examples" of capitalized interest, which they criticize as "abnormal" based on the timing. (Opp. at pp. 4-5.) But Plaintiffs do not identify supposedly "normal" timing or any misrepresentation by NSL regarding those capitalizations, nor could they. The Promissory Notes explain that capitalizations might occur at different times, depending on different circumstances, and pursuant to the HEA. (Motion, Exhibit 2 at pp. 2 and 5 ("If I fail to make required payments of interest before the beginning or resumption of principal repayment, or during a period of deferment or forbearance, I agree that the lender may capitalize such interest as provided under the [HEA]."); pp. 20, 30, 46 and 60 (stating "my lender may capitalize that interest as provided under the [HEA]" and "[t]he principal balance of my loan(s) will increase each time my lender capitalizes unpaid interest.") Otherwise, Plaintiffs simply take issue with NSL's servicing process, which does nothing to support claims for fraud or violation of consumer protection statutes. (*See, e.g.,* Opp. at pp. 6-7, 11 and 13 (stating that "bogus" "customer service representatives do not have

access to the Promissory Notes," NSL's website should allow for messaging "chain[s]), and monthly statements could include more detail").

Meanwhile, the breach of fiduciary duty claim also fails. The essential basis of the claim is the existence of a fiduciary relationship. *See Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 759 (D.N.J. 2013). Plaintiffs rely on NSL's online statements describing its student loan servicing capabilities in an effort to invoke the very narrow exception to the well-settled rule that loan servicers are not fiduciaries to borrowers. (*See* Opp. at p. 17.) However, numerous courts have held that, as a matter of law, statements made on a website and disseminated to borrowers across the country cannot establish a fiduciary relationship. *See, e.g., Hyland v. Navient Corp.*, No. 1:18-cv-09031, 2019 U.S. Dist. LEXIS 113038, *30 (S.D.N.Y. July 8, 2019); *Barron Partners, LP v. Lab123, Inc.*, 593 F. Supp. 2d 667, 671 (S.D.N.Y. 2009); *In re Merck & Co., Sec. Derivative & Erisa Litig.*, C.A. No. 05-2369 (SRC), 2006 WL 2050577, at *13-14 (D.N.J. July 11, 2006). The decisions cited by Plaintiffs to the contrary are inapposite. *See Capital Bank v. MVB*, 644 So. 2d 515, 520 (Fla. 3rd DCA 1994) (finding a fiduciary relationship between a bank and its customer because "[the bank's employee] expressly invited [plaintiff's] reliance by urging [plaintiff] to trust [the employee] and by reassuring [plaintiff] that [plaintiff] was part of the Capital Bank family," the bank "fostered [plaintiff's] perception that the bank was his financial advisor, by repeating that the

8

bank's plans would benefit his business" and "the bank clearly knew of [plaintiff's] reliance"); *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 557 (Sup. Ct. App. 1997) (no special circumstances existed that created a fiduciary duty between the lender and the plaintiff-borrower and distinguishing *Capital Bank* and other decisions as "extreme cases" that did not reflect the relationship that the law understands to exist between borrower and lender).[3]

Plaintiffs further argue that the Court cannot determine whether a special relationship has been alleged at the motion to dismiss stage, but that is not so. Courts have the authority to evaluate a plaintiff's allegations regarding a special relationship on a motion to dismiss. *See, e.g.*, *EPEC Polymers, Inc. v. NL Indus.*, No. 12-cv-3842, 2013 U.S. Dist. LEXIS 74642, *39 (D.N.J. May 24, 2013) (finding special relationship did not exist on facts alleged and granting motion to dismiss); *Holborn Corp. v. Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d 392, 404 (S.D.N.Y. 2018); *Hyland*, 2019 U.S. Dist. LEXIS 113038, *30 (same).

Accordingly, Plaintiffs fail to state any claim. Plaintiffs have submitted a very lengthy – in Plaintiffs' words, "extremely detailed" – Complaint. However, it is devoid of factual allegations of supposed wrongful conduct by NSL sufficient to

---

[3] In fact, the court noted: "These cases all involved egregious breaches of the lender's duty of good faith and fair dealing. In each of these cases, the bank actively encouraged the plaintiff to rely upon its advice and concealed its self-interest in promoting the transaction involved. In blunt terms, the banks acted no better than common swindlers." *Kensey*, 306 N.J. Super. at 557.

meet the *Ashcroft* standard. *See In re Westinghouse Sec. Litig.*, 90 F.3d 696, 703 (3rd Cir. 1996) (affirming dismissal of complaint as "unnecessarily complicated and verbose"); *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007) (affirming dismissal when it was impossible to "separate the wheat from the chaff"; "[i]t was not the district court's job to stitch together cognizable claims for relief from the wholly deficient pleading"); *Knit With v. Knitting Fever, Inc.*, 625 Fed. Appx. 27, 37 (3rd Cir. 2015) (finding that district court properly "declined to make the untenable leap that [d]efendant" was liable based on plaintiff's allegations).

**B.     In The Alternative, The Court Should Strike Allegations.**

**1.     On Its Face, The Complaint Demonstrates That No Class Could Be Certified.**

In the Opposition, Plaintiffs note that a motion to strike class allegations should be granted only in rare circumstances. (Opp. at p. 21.) NSL agrees. A motion to strike is a "drastic remedy," which should be used "sparingly," but the Complaint here clearly is deserving. *McPeak v. S-L Distrib. Co.*, No. 12-cv-348, 2014 U.S. Dist. LEXIS 123728, *8 (D.N.J. Sep. 5, 2014).

Very simply, on its face, the Complaint fails the requirements of predominance and commonality, and Plaintiffs cannot overcome this fatal flaw. While Plaintiffs flatly state that there are "common issues in this case arising out of Defendants' conduct" (Opp. at p. 28.), that is not enough. *See, e.g., McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 455 (D.N.J. 2008) ("Predominance,

however, requires more than the existence of common issues of law and fact. The common issues must be numerically and qualitatively substantial in relation to individual issues.")

Indeed, as even Plaintiffs concede, the proposed class would consist of *millions* of borrowers, as follows: (a) *all* individuals in the United States and its territories who have *ever* had any loans with NSL; and (b) *all* individuals in the United States and its territories who have *ever* had any loans—whether private or federal—serviced by NSL *at any time*. (Motion, p. 27.) On a request for class certification, the Court therefore would have to undertake a vast and complex inquiry into individualized facts, such as: (1) whether a loan is private (and, thus, subject to arbitration) or federally owned or guaranteed (where the HEA servicing regulations apply); (2) the terms of the applicable promissory notes; and (3) in reference to the HEA regulations and the promissory notes, a review of *every* payment for "misapplication" of amounts to interest, *every* pre-payment across multiple loans for "misapplication", and *every* instance of capitalization with the attendant pre-conditions (*e.g.*, deferment or forbearance). Further, many of the issues alleged by Plaintiffs occurred *over a decade* ago. Plaintiffs must then explain, for each issue, why the statutes of limitation do not bar the claims, assuming that doctrines of tolling apply.

11

All of this shows that Plaintiffs have pled an insurmountable obstacle to class certification. Based on the face of the Complaint, the Court can, and should, strike the class allegations. *See Martinez v. Equifax Inc.*, 15-cv-2100, 2016 U.S. Dist. LEXIS 5859, \*12 (D.N.J. Jan. 19, 2016) ("It is clear at this early stage of the litigation, as a matter of law, that this [c]ourt would never grant a motion for class certification involving this class definition. The class action allegations in the [c]omplaint will be struck.")

### 2. The Unrelated Loan Servicing Allegations Should Be Stricken.

Plaintiffs spend a significant portion of the Opposition discussing untethered instances of "deceptive and improper servicing." (Opp. at p. 30.) For instance, Plaintiffs raise allegations relating to the Upromise loyalty program, NSL's customer service phone system and the alleged promotion of the use of co-signers on student loans. None of these has anything to do with the premise underlying Plaintiffs' claims – *i.e.*, payment misallocation and improper capitalization. Further, and notably, Plaintiffs do not allege that they suffered harm from, and do not seek any claim based on, any of these instances of supposed servicing misconduct. Simply put, these extraneous allegations have no bearing, link, or possible relation to the claims at hand, and should be stricken. *See Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, 901 F. Supp. 2d 509, 529 (D.N.J. 2012) (granting motion to strike because plaintiff's complaint was "unnecessarily and confusingly

prolix and contains irrelevant material which frustrates the ability to adjudicate the … claim").

### 3.   The Allegations Regarding The Unrelated Legal Actions Against NSL Are Irrelevant And Admittedly Intended To Prejudice NSL.

Plaintiffs' attempt to cast NSL in a negative light through unrelated, distinguishable and irrelevant allegations in previous actions is also improper. In fact, by asking the Court to view NSL as a "particularly bad actor in the student loan servicing space" (Complaint at ¶¶ 35-36), Plaintiffs readily admit their objective – to prejudice NSL.

In the Opposition, Plaintiffs argue that these allegations are appropriate for purposes of establishing "motive and intent," (Opp. at p. 30), but this contention fails. NSL found no authority supporting the use of Federal Rule of Evidence 404 to overcome a motion to strike, and Plaintiffs offer none. Because Plaintiffs' allegations from prior lawsuits involving NSL provide no value in evaluating the instant claims, and are intended to prejudice NSL, they should be stricken. *See Everage v. Ford Motor Co.*, No. 04-cv-549, 2005 U.S. Dist. LEXIS 49715, at *15 (E.D. Ky. Sep. 14, 2005) (harassing and improper allegations should be stricken).

## III.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the Complaint with prejudice or, in the alternative, strike the class allegations and the other improper allegations in the Complaint without leave to amend.

Dated: May 20, 2021                          **GREENBERG TRAURIG, LLP**


By:  <u>*/s/ Lisa M. Simonetti*</u>
Lisa M. Simonetti
simonettil@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Tel:  310-586-7700
Fax:  310-586-7800

Rebecca G. Zisek
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
Tel: (973) 360-7900
Fax: (973) 301-8410

*Attorneys for Defendants*
*Navient Corporation and*
*Navient Solutions, LLC*