**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BRIAN MANETTA, et al., individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>v.<br><br>NAVIENT CORPORATION, et al.,<br><br>                Defendants. | Civil Action No: 20-7712(SDW)(LDW)<br><br>**OPINION**<br><br><br>July 8, 2021 |

**WIGENTON**, District Judge.

Before this Court is Defendant Navient Corporation and Navient Solutions, LLC f/k/a Navient Solutions, Inc. f/k/a Sallie Mae, Inc.'s (collectively, "Navient" or "Defendants") Motion to Dismiss Plaintiffs Brian Manetta, Sergio Pereira, Esther Sygal-Pereira, Matthew Markosian, Naimish Baxi, Harvey Minano, Sydney Peck, Mahmud Ibrahim, and George Amores' (collectively, "Plaintiffs") Class Action Complaint and to Strike portions of the Complaint pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(6) and 12(f). Jurisdiction is proper pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, the Motion is **GRANTED IN PART and DENIED IN PART.**

I.       **BACKGROUND AND PROCEDURAL HISTORY**

Defendant Navient Solutions, LLC, is a wholly owned subsidiary of Navient Corporation; both entities are Delaware corporations. (D.E. 1 ¶¶ 46-47; D.E. 13.) Navient Solutions, LLC is a

student loan servicer, who "services the loans of more than 12 million borrowers, including over 6 million customer accounts under a contract with the U.S. Department of Education, and more than $300 billion in federal and private student loans." (*Id.* ¶¶ 7, 66-72.) Plaintiffs are individuals residing in New Jersey (the "New Jersey Plaintiffs"),[1] Florida (the "Florida Plaintiffs"),[2] and New York (the "New York Plaintiffs"),[3] who took out loans to pay for undergraduate and/or graduate education and whose loans are or were being serviced by Defendants. (*Id.* ¶¶ 37-45.)

Plaintiffs allege that Defendants "have developed a repayment system intended, by design, to maximize a borrower's indebtedness through a scheme that inflates interest and thwarts repayment of principal to increase their own interest income . . ." (*Id.* ¶ 13.) To do so, Defendants allegedly "routinely engage in unfair, deceptive, and illegal practices by implementing a scheme to misallocate student loan payments toward interest" rather than toward paying off the loan principal, misdirect payments towards loans with lower interest rates, and improperly impose capitalized interest. (*Id.* ¶¶ 13-14, 93, 111-15, 126-29.) Plaintiffs provide specific examples as to each named plaintiff's accounts which include dates and amounts allegedly misapplied or improperly directed. (*See id.* ¶¶ 95-110, 116-121, 130-135.) In addition, in order to effectuate their repayment system, Plaintiffs contend that Defendants: intentionally misinform borrowers, conceal information regarding amortization; withhold "the breakdown of payment allocations toward principal and interest on its monthly statements in order to conceal or, at least delay, discovery of any errors or misapplication of payments;" fail to respond to borrower inquiries; impede the release of co-signers; "promote a bogus loyalty incentive program;" and mislead

---

[1] The named plaintiffs who reside in New Jersey are Manetta, Baxi, Minaro, and Ibrahim.

[2] The named plaintiffs who reside in Florida are Pereira & Sygal-Pereira.

[3] The named plaintiffs who reside in New York are Markosian, Peck, and Amores.

borrowers in order to "inhibit the payment of principal and to prolong the life of indebtedness." (*See id.* ¶¶ 136-204.)

On June 24, 2020, Plaintiffs filed a putative class action suit in this Court, asserting claims for: common law fraud (Count I); violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. §§ 56:8-1, *et seq.* (Count II); violation of the Delaware Consumer Fraud Act ("DCFA"), Del. Code §§ 2511, *et seq.* (Count III); violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201, *et seq.* (Count IV); violation of the New York General Business Law, N.Y. Gen. Bus. Law §§349 *et seq.* ("NY GBL") (Count V); and breach of fiduciary duty (Count VI). (D.E. 1.) Plaintiffs bring suit on behalf of themselves and state subclasses of plaintiffs located in Delaware, New Jersey, Florida, and New York who have "ever had any loans with Defendants and/or had any loans (private or federal) serviced by Defendants at any time." (D.E. 205-211.) Navient moved to dismiss on December 14, 2020, and after numerous extension requests by the parties, all briefing was timely filed. (D.E. 20, 29, 32.)

## II.  LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a Motion to Dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine

3

whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (discussing the *Iqbal* standard). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Rule 9(b). Plaintiffs "alleging fraud must state the circumstances of the alleged fraud[ulent act] with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Park v. M & T Bank Corp.*, Civ. No. 09–02921, 2010 WL 1032649, at *5 (D.N.J. Mar. 16, 2010) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004)).

### III. DISCUSSION[4]

---

[4] This Court's review is limited to the facts as alleged in the Complaint and "documents explicitly relied upon or incorporated by reference in . . . or integral to the Complaint." *Senn v. Hickey*, Civ. No. 03-4372, 2005 WL 3465657, at *2 (D.N.J. Dec. 19, 2005); *see also In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (noting that generally a court may only consider the contents of the complaint on a 12(b)(6) motion to dismiss, but may "consider certain narrowly defined types of material without converting the motion" to one for summary judgment; *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (limiting that material to "document[s] integral to or explicitly relied upon in the complaint") (internal citations omitted, emphasis in original). The issue currently before this Court is whether Plaintiffs have sufficiently pled that Defendants engaged in improper

A.

As an initial matter, because this Court sits in diversity, it must first determine which state law applies to the claims raised. To do so, this Court applies the choice-of-law rules of New Jersey to determine which state law controls. *See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941); *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013); *Shapiro v. Logitech, Inc.*, Civ. No. 17-673, 2019 WL 397989, at *6-7 (D.N.J. Jan. 31, 2019). "New Jersey has adopted the [two-part] 'most significant relationship' test set forth in the Restatement (Second) of Conflict of Laws." *Maniscalco*, 709 F.3d at 206 (citing *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 459-60 (N.J. 2008)). The first step of the inquiry is to determine whether an actual conflict exists. *See Camp Jaycee*, 962 A.2d at 460 (citing *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006)). "That is done by examining the substance of the potentially applicable laws to determine whether 'there is a distinction' between them." *Id.* "If there is not an actual conflict, the inquiry is over and, because New Jersey would apply its own law in such a case, a federal court sitting in diversity must do the same." *Lebegern*, 471 F.3d at 428.

The parties do not contend that there is a conflict between the laws of New Jersey and those of Delaware, Florida, or New York with regard to common law fraud and breach of fiduciary duty. (*See* D.E. 20-1 at 14-15, 19-20 (indicating that the elements of the relevant laws in all four states are the same); D.E. 29 at 9-13 (relying almost entirely on New Jersey court decisions when addressing common law fraud and fiduciary duty claims).) As a result, this Court will apply New

---

and/or fraudulent conduct to increase Plaintiffs' indebtedness. In making their allegations, Plaintiffs do not directly refer or attach their underlying loan documents to the Complaint, and those documents are not necessary to evaluate the sufficiency of Plaintiffs' claims at this stage of the litigation. Therefore, review of the extraneous materials attached to Defendants' motion to dismiss, which include *inter alia*, loan applications, promissory notes, and consolidation applications, is inappropriate at this time. (*See* D.E. 20-2 – 20-8.) This Court takes no position on the propriety of submitting those documents at summary judgment.

5

Jersey law to those claims. There is also no conflict between the consumer protection statutes of Delaware and New Jersey and this Court will apply New Jersey law to those claims as well. *See Harnish v. Widener Univ. Sch. of Law*, 931 F. Supp. 2d 641, 654 (D.N.J. 2013) (noting that "the NJCFA and the DCFA are 'virtually identical in their pleading requirements'" and holding that plaintiffs had pled a claim under both statutes) (citing *Brandywine Volkswagen, Ltd. v. State Dep't of Cmty. Affairs & Econ. Dev., Div. of Consumer Affairs*, 312 A.2d 632, 634 n.4 (Del. 1973)).

With regard to Plaintiffs' remaining statutory consumer protection claims, however, New Jersey law does conflict with the laws of Florida and New York. *See, e.g.*, *Miller v. Samsung Elec. Am., Inc.*, Civ. No. 14-4076, 2015 WL 3965608, at *5 (D.N.J. June 29, 2015) (noting that the NJCFA and the FDUTPA conflict as to the recovery of damages and attorneys' fees); *Cox v. Chrysler Grp., LLC*, Civ. No. 14-7573, 2015 WL 5771400, at *11 (D.N.J. Sept. 30, 2015) (finding a conflict between the NJCFA and the NYCPA because New York's law "is significantly broader, has a different statute of limitations and limits plaintiff's access to treble damages").

Because there is an actual conflict between the consumer protection laws of New York and Florida and the law of New Jersey, this Court must next determine which state has the "most significant relationship" to the claims at issue. Because these claims sound in fraud or misrepresentation, this Court "applies the conflict of laws analysis of Section 148." *Shapiro*, 2019 WL 397989 at *7 (citing Restatement (Second) of Conflict of Laws § 148 (1971)). The Restatement requires an analysis of the following six factors:

(a) the place, or places where the plaintiff acted in reliance upon the defendant's representations,
(b) the place where the plaintiff received the representations,
(c) the place where the defendant made the representations,
(d) the domicile, residence, nationality, place of incorporation and place of business of the parties,
(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

*Grandalski v. Quest Diagnostics, Inc.*, 767 F.3d 175, 181 (3d Cir. 2014) (quoting Restatement (Second) of Conflict of Laws § 148(2)). Here, three of the factors - (a), (b), and (f) - weigh in favor of Plaintiffs' respective states of residence (New York and Florida) because they received and relied upon Defendants' representations in those states and are expected to make payments on their accounts in those states. Factor (d) is neutral, or weighs slightly in favor of the law of Plaintiffs' respective states of residence, because "in case of pecuniary loss . . . [t]he domicile, residence and place of business of the plaintiff are more important than are similar contacts on the part of the defendant." *Maniscalo*, 709 F.3d at 208. Factor (e) is irrelevant and factor (c) would favor the application of Delaware law, as both Defendants are incorporated in that state. Weighing all factors, it is clear that the state where each plaintiff resides has the most significant relationship to Plaintiffs' statutory consumer protection claims and this Court will review each one accordingly.

B.

A. <u>Common Law Fraud (Count I)</u>

To bring a claim for common law fraud under New Jersey law, a party must show: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Citizens United Reciprocal Exch. v. Meer*, 321 F. Supp. 3d 479, 489 (D.N.J. 2018) (internal citations omitted); *see also Verify Smart Corp. v. Bank of Am., N.A.*, Civ. No. 17-4248, 2021 WL 2549335, at *12 (D.N.J. June 17, 2021).

Here, Plaintiffs allege that Defendants made a variety of misrepresentations to Plaintiffs regarding the allocation of their payments and the calculation and capitalization of interest, knowing they were false, in order to gain greater profits. Plaintiffs do so with particularity, providing specific examples of Defendants' mishandling of payments and interest as to each named plaintiff and including the date the wrongful conduct occurred as well as the amounts allegedly mishandled. (*See* D.E. 1 ¶¶ 95-110, 116-121, 130-135.) In addition to overt misrepresentations, Plaintiffs also plead that Defendants concealed and withheld information regarding amortization and payment allocations and failed to respond to borrower inquiries in an attempt to deceive consumer borrowers in order to "inhibit the payment of principal and to prolong the life of indebtedness." (*See id.* ¶¶ 136-204.) Plaintiffs further plead that they relied on those statements/omissions/concealment and were damaged because Defendants' actions resulted in Plaintiffs paying more in interest over the life of the loan than was contractually required. Therefore, Plaintiffs have sufficiently pled the elements for a claim of common law fraud under New Jersey law and Defendants' motion to dismiss as to Count One will be denied.

B. <u>State Consumer Protection Claims</u>

1. NJCFA (Count II) and DCFA (Count III)

To state a claim under the NJCFA, a plaintiff must sufficiently plead: "(1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 333 (D.N.J. 2014) (citing *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009). Unlawful conduct may consist of "affirmative acts, knowing omissions, and violation of regulations promulgated under N.J. Stat. Ann §§ 56:8-2, 56:8-4." *Id.*; *see also Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994). Because the NJCFA addresses fraudulent

conduct, Rule 9(b)'s heightened pleading standards apply. *Crozier v. Johnson & Johnson Consumer Companies, Inc.*, 901 F. Supp. 2d 494, 506 (D.N.J. 2012) (noting that a plaintiff must "allege the 'who, what, when, where, and how' of" a NJCFA claim) (internal citation omitted). Having satisfied the pleading requirements for common law fraud under New Jersey law, Plaintiffs have also sufficiently pled a claim under the NJCFA and DCFA and Defendants' motion to dismiss Counts Two and Three will be denied.

2. FDUTPA (Count IV)

The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."[5] *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016) (alteration in original) (citing Fla. Stat. § 501.204(1)). In order to bring a claim under the FDUTPA, a plaintiff must show: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Id*. at 983–84 (citing *City First Mortg. Corp. v. Barton,* 988 So. 2d 82, 86 (Fla. Dist. Ct. App. 2008)). "To satisfy the first element, the plaintiff must show that 'the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances.'" *Id.* (citing *State, Office of the Att'y Gen. v. Commerce Comm. Leasing, LLC,* 946 So. 2d 1253, 1258 (Fla. Dist. Ct. App. 2007)). "Under Florida law, an objective test is employed in determining whether the practice was likely to deceive a consumer acting reasonably. That is, '[a] party asserting a deceptive trade practice claim need not show

---

[5] The FDUTPA defines "[t]rade or commerce" as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. Ann. § 501.203(8). "As such language clearly indicates, the definition of 'trade or commerce' is quite broad." *Alvi Armani Med., Inc. v. Hennessey*, 629 F. Supp. 2d 1302, 1305 (S.D. Fla. 2008). The FDUTPA requires that its provisions "be construed liberally" in order to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2); *see also State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1324 (S.D. Fla. 2017).

9

actual reliance on the representation or omission at issue.'" *Id.* at 984 (citing *Davis v. Powertel, Inc.,* 776 So. 2d 971, 973 (Fla. Dist. Ct. App. 2000)). FDUTPA claims are subject to Rule 9(b)'s heightened pleading requirements. *See Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313, 1328 (S.D. Fla. 2020).

Here, as discussed above, Plaintiffs allege with particularity that Defendants made a variety of misrepresentations to Plaintiffs who are consumer borrowers knowing they were false in order to gain greater profits. (*See* D.E. 1 ¶¶ 95-110, 116-121, 130-135.) Plaintiffs further plead that they were damaged because those misrepresentations and/or omissions led to Plaintiffs paying more in interest over the life of the loan than was contractually required. Therefore, Plaintiffs have sufficiently pled the elements for a claim under the FDUTPA and Defendants' motion to dismiss Count Four will be denied.

3. NY GBL (Count V)

Section 349 of New York General Business Law prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. L. § 349(a). "To state a claim for deceptive practices under section 349, a plaintiff must show: (1) that the act, practice, or advertisement was consumer-oriented; (2) that the act, practice, or advertisement was misleading in a material respect; and (3) that the plaintiff was injured as a result of the deceptive act, practice, or advertisement." *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F. Supp. 2d 439, 444 (S.D.N.Y. 2005). The standard for whether an act or practice is misleading is objective, requiring a showing that a reasonable consumer would have been misled by the defendant's conduct. *Id.* Claims brought under Section 349 are "not subject to Rule 9(b) pleading requirements." *Id.* at 445. For the same reasons noted above, Plaintiffs have

sufficiently pled a claim under the NY GBL and Defendants' motion to dismiss Count Five will be denied.

C. Breach of Fiduciary Duty (Count VI)

Plaintiffs' remaining claim is for breach of fiduciary duty (Count VI). "In order to establish a claim for breach of fiduciary duty, a plaintiff must plead the following: (1) the defendant had a duty to the plaintiff, (2) the duty was breached, (3) injury to plaintiff occurred as a result of the breach, and (4) the defendant caused that injury." *Gen. Motors, LLC v. Ashton*, Civ. No. 20-12659, 2021 WL 2549498, at *9 (D.N.J. June 22, 2021); *see also Goodman v. Goldman, Sachs & Co.*, Civ. No. 10-1247, 2010 WL 5186180, at *10 (D.N.J. Dec. 14, 2010). As to the first element, loan servicers generally do not owe a fiduciary duty to borrowers. *See, e.g.*, *Abulkhair v. Citibank & Assocs.*, 434 Fed. App'x 58, 63 (3d Cir. 2011) (noting that "creditor-debtor relationships rarely give rise to a fiduciary relationship"); *Gonzalez v. U.S. Bank Nat. Ass'n*, Civ. No. 14-7855, 2015 WL 3648984, at *5 (D.N.J. June 11, 2015) (dismissing claim for breach of fiduciary duty against mortgager servicer, noting that "it is well-established that a bank does not owe a legal duty to a borrower" and rejecting plaintiff's claim that the defendants "had a 'duty of care and skill to Plaintiff in the servicing of Plaintiff's loan'"); *Galayda v. Wachovia Mortg. FSB*, Civ. No. 10-1065, 2010 WL 5392743, at *16 (D.N.J. Dec. 22, 2010) (recognizing that New Jersey courts have "universally embraced" the presumption "that there is no fiduciary duty between a borrower and a lender" and noting that it is "antithetical to the often adversarial and contentious nature of the borrower-lender relationship to impose a fiduciary duty on the lender"); *Greene v. Shellpoint Mortg. Serv'g*, Civ. No. 20-822, 2020 WL 5810057, at *3 (E.D. Pa. Sept. 30, 2020) (dismissing claim for breach of fiduciary duty because defendant loan servicers "do not owe borrowers any specific fiduciary duties based upon their servicer/borrower relationship"). Such a duty may be

created only where the servicer knows or has reason to know that the customer/borrower places special trust or confidence or reliance on information provided by the lender or borrower. *See, e.g.*, *United Jersey Bank v. Kensey*, 704 A.2d 38, 44 (N.J. Super. Ct. App. Div. 1997) (noting that a duty arises if "either one or each of the parties, in entering . . . [the] transaction, expressly responses . . . a trust and confidence in the other . . . or [because of the] circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence . . . is necessarily implied").

Plaintiffs' position that Navient "held themselves out as providers of numerous types of student loan services, borrower assistance related to repaying their loans, and counseling borrowers on every aspect of the student loan life cycle" is not enough to give rise to a special relationship of trust or confidence. (*See* D.E. 29 at 19; D.E. 1 ¶ 298 (alleging that Defendants owed "a fiduciary duty to borrowers to properly service their loans").) Nor is Plaintiffs' assertion that they "placed special trust and confidence in [Defendants] based on their representations that their student loans would be serviced properly," (D.E. 1 ¶ 296), enough to alter the arms-length business relationship between a loan servicer and a borrower. [6] Those representations, made to all borrowers by Defendants via their website or other materials, are insufficient to create a fiduciary relationship. *See, e.g.*, *In re Merck & Co., Sec. Derivative & ERISA Litig.*, Civ. No. 05-2369, 2006 WL 2050577, at *13-14 (D.N.J. July 11, 2006) (ruling that defendants' "public statements, press releases, and other dissemination of information" were not enough to impose a fiduciary duty); *Hyland v. Navient Corp.*, Civ. No. 18-9031, 2019 WL 2918238, at *11 (S.D.N.Y. July 8, 2019)

---

[6] This Court finds no support for Defendants' contention that Plaintiffs' claims are pre-empted by the Higher Education Act ("HEA"), 20 U.S.C. § 1001 *et seq,* (*see* D.E. 20-1 at 3, 18), because the HEA "expressly preempts only claims based on failures of disclosure, not claims based on affirmative misrepresentations." *Pennsylvania v. Navient*, 967 F.3d 273, 287 (3d Cir. 2020).

(dismissing plaintiffs' claim for breach of fiduciary duty where plaintiffs based their claim "on allegations that Navient made representations on its public-facing website about the quality of its customer service").

A. Motion to Strike

Federal Rule of Civil Procedure 12(f) permits a court to strike portions of pleadings that are "redundant," "immaterial," "impertinent," or "scandalous." Rule 12(f). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Synthes, Inc. v. Emerge Med., Inc.*, Civ. No. 11-1566, 2012 WL 4473228, at * 3 (E.D. Pa. Sept. 28, 2012) (internal citation omitted). Defendants first seek to strike paragraphs 19-36 of the Complaint, which identify and discuss unrelated lawsuits previously brought against Defendants in federal and state court. (*See* D.E. 1 ¶¶ 19-36.) Plaintiffs acknowledge that "these lines of cases are wholly distinguishable from the instant action" and concede that the existence of prior "claims against a litigant is not evidence of wrongdoing in any particular case." (D.E. ¶¶ 35-36.) This Court agrees. Plaintiffs allegations are immaterial to the matter at hand, and their inclusion in the Complaint serves no proper purpose. Therefore, those paragraphs shall be stricken.

Defendants also seek to strike Plaintiffs' class allegations. (D.E. 20-1 at 25-30.) With regard to class certification determinations, however, "in most cases," it is premature to strike class allegations prior to discovery. *See, e.g.*, *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 (3d Cir. 2011) (emphasizing the "importance of discovery as part of the class certification process"); *Weske v. Samsung Elecs. Am., Inc.*, 934 F. Supp. 2d 698, 707 (D.N.J. 2013) (recognizing that "[n]umerous cases in this District have emphatically denied requests to strike class allegations at the motion to dismiss stage as procedurally premature"). Given that no

discovery has taken place, it is too early for this Court to reach any determination as to the propriety of Plaintiffs' class allegations.  Therefore, this Court will deny Defendants' motion to strike Plaintiffs' class allegations at this time.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss and to Strike are **GRANTED in part and DENIED in part**.  An appropriate order follows.

                                                              /s/ Susan D. Wigenton
                                            **SUSAN D. WIGENTON, U.S.D.J.**

Orig:       Clerk
cc:         Leda D. Wettre, U.S.M.J.
              Parties