# KRANJAC TRIPODI & PARTNERS LLP

**ATTORNEYS AT LAW**

XAVIER M. BAILLIARD
PARTNER
(917) 534-6127
XBAILLIARD@KTPLLP.COM

April 20, 2022

<u>Via ECF</u>
Hon. Leda Dunn Wettre, U.S.M.J.
United States District Court, District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

   Re: <u>Manetta, et al. v. Navient Corporation, et al.
      Case No. 2:20-cv-07712-SWD-LDW</u>

Dear Judge Wettre:

  This firm represents Plaintiffs in the referenced matter. Pursuant to Your Honor's April 5, 2022 Order [ECF No. 61], we hereby submit this joint letter setting forth the parties' respective positions regarding the current status of discovery and outstanding discovery disputes. Plaintiffs' positions are set forth at pages 1-7 and Defendants' positions are set forth at pages 7-12.

## PLAINTIFFS' POSITIONS

### I. PLAINTIFFS' DISCOVERY OBLIGATIONS ARE COMPLETE.

  Plaintiffs have fulfilled all of their discovery obligations. They have provided full written responses and document production in response to Defendants' requests and the parties have scheduled mutually-agreeable dates for each Plaintiff deposition to take place in April and May 2022.

### II. PLAINTIFFS HAVE ATTEMPTED TO SUBSTANTIALY LIMIT THE SCOPE OF THEIR DISCOVERY DEMANDS; HOWEVER, DEFENDANTS HAVE NOT PRODUCED ANY MEANINGFUL DISCOVERY TO DATE.

  Defendants have not fulfilled their discovery obligations to date. On October 25, 2021, Plaintiffs served Defendants with Document Demands and Interrogatories. A copy of Plaintiffs' First Set of Requests for Documents is attached hereto as Exhibit A. The main thrust of Plaintiffs' demands seek information and documents relating to Defendants' servicing (including, but not limited to, the allocation of payments to varying loans and to principal and interest) of both federal and private loans of all student loan borrowers (as defined by the proposed class, i.e. "[a]ll individuals in the United States and its territories who have ever had

**KRANJAC TRIPODI & PARTNERS LLP**
ATTORNEYS AT LAW

April 20, 2022
Page 2 of 12

any loans with Defendants and/or had any loans (private or federal) serviced by Defendants at any time". *See* Complaint ("Compl."), ECF No. 1, ¶ 205.  Even before receiving formal responses, Plaintiffs engaged in meet-and-confers with Defendants and, via letter dated January 3, 2022, Plaintiffs significantly limited their requests in an effort to compromise.  First, Plaintiffs agreed to withdraw, without prejudice, Requests 19, 20, 21, 26, 30, 32, 33, 39, 52, 55, 56, 59, 60, 66, 72, 73, 76, 89, 90, 95, 98, 100, 101, 102, 103, and 104.  Second, Plaintiffs agreed to narrow Requests 8-18, 27, 41, 50, 51, 53, 57, 58, 97, and 105 in an effort to further tailor them to the specific claims asserted in the Complaint.  Specifically, Plaintiffs agreed to limit these Requests as follows:

> **Requests Nos. 8-18**:  These Requests shall be limited to all "computer programs" in lieu of all "computer codes, application codes, binary codes, programs, scripts, models, methods, and/or algorithms[.]"
>
> **Request No. 27**: This Request shall be limited to "call center and service training manuals, call scripts, and memoranda."
>
> **Request Nos. 41, 50, 51 and 53:** These Requests shall be limited to the requested materials "as relates to the allocation of regular and advance/extra payments to principal versus interest (whether past, current, or future), the allocation of regular and advance/extra payments to different types of loans, the allocation of regular and advance/extra payments to loans with higher versus lower interest rates, capitalization of interest, and late fees."
>
> **Request Nos. 57, 58 and 105**: These Requests shall be limited to items (a) and (b) identified therein.
>
> **Request No. 97:**  This Request shall be modified to: "All documents showing all data collected, archived, maintained, or used by Defendants relating to the servicing of student loans as respects loan repayment allocation."

One would think that this would result in Defendants providing good faith answers and objections to at least *some* of the Requests.  This did not happen however.  In this class action lawsuit concerning pervasive fraud regarding Defendants' servicing of both private and federal student loans as to a nationwide class, in their January 28, 2022 responses and document production, Defendants only agreed to produce the named Plaintiffs' account records relating to their federal loans, nothing more.

As such, on February 18, 2022, Plaintiffs provided a fulsome deficiency letter outlining the many deficiencies in Defendants' responses.  Defendants responded on March 11, 2022, but did not amend any responses and only provided a relatively small supplemental production.  Subsequently, on April 4, 2022, the parties engaged in a further exchange of letters and two additional conferences relating to discovery.  By way of its latest letter, dated April 8, 2022, Plaintiffs agreed, without prejudice, to significantly *further* limit the scope of their Requests.  Specifically, Plaintiffs also withdrew Requests 44, 48, 49, 58, 63, 64, 68, 69, 70, 71, and 79.

**K**RANJAC **T**RIPODI **& P**ARTNERS **LLP**
A**TTORNEYS AT** L**AW**

April 20, 2022
Page 3 of 12

      Plaintiffs also further limited the scope of Requests 40, 41, 43, 53, and 80 to the subject matter of the following claims, which are expressly set forth in the Complaint (and which survived Defendants' motion to dismiss):

    (1)    Defendants fraudulently service student loans by:

- (i) systematically misallocating payments disproportionately to interest instead of principal; (ii) systematically allocating monthly payments to loans with lower interest rates as opposed to loans with higher interest rates; (iii) systematically charging artificially inflated minimum interest payments; and (iv) deliberately misapplying capitalized interest;

    (2)    Defendants conceal their fraud in the following manner:

- (i) employing a repayment system and customer service designed to hinder repayment and impede discovery of errors; (ii) concealing information regarding Plaintiffs' loans; (iii) issuing monthly statements that are deceptive and misleading; (iv) promoting the use of cosigners, but deliberately hindering their release as promised; (v) promoting a "Loyalty Incentive Program," which did little or nothing to lower student loans; and (vi) offering a purported Office of the Customer Advocate, which is in fact an imitation of its customer service.

*See* Compl., ¶¶ 86-204.

      There is no question that Plaintiffs are entitled to discovery related to these allegations and claims. As this Court set forth in *Hite v. Peters,* No. Civ. A. 07–4492, 2009 WL 1748860, at *3 (D.N.J. Jun. 19, 2009), "parties may 'obtain discovery regarding any nonprivileged matter that is relevant to any party' claim or defense[.] ...'" *Hite,* 2009 WL 1748860, at *3 (quoting FED. R. CIV. P. 26(b)(1)). Additionally, "the Court may ... permit for 'good cause' discovery of matters that are 'relevant to the subject matter involved in the action.'" *Id.* "'Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.'" *Id.*; *see also Nestle Foods Corp. v. Aetna Cas. & Sur. Co.,* 135 F.R.D. 101, 104 (D.N.J. 1990) ("[I]t is important to distinguish the right to obtain information by discovery from the right to use it at trial."). Thus, "relevancy is more liberally and broadly construed at the discovery stage than at trial." *Hite,* 2009 WL 1748860, at *3 (citing *Nestle,* 135 F.R.D. at 104). Courts construe relevancy "broadly to encompass any matter that bears on, or that could reasonably lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). More, cases involving putative class action claims—such as here—significantly broaden the scope of permissible discovery since a plaintiff is "entitled to the opportunity to explore and obtain information relevant to the Rule 23 requirements—numerosity, commonality, typicality." *Medina v. Enhanced Recovery Company, LLC*, 2017 WL 5196093, at *4 (S.D. Fla. Nov. 9, 2017) (citing *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2009)); *see also, Bell v. Lockheed Martin Corp.,* 270 F.R.D. 186, 193 (D.N.J. 2010), *aff'd,* No. 08-6292, 2010 WL 3724271 (D.N.J. Sept. 15, 2010) (plaintiff could obtain broad discovery relating to other individuals and practices because "the scope of the

**KRANJAC TRIPODI & PARTNERS LLP**
ATTORNEYS AT LAW

April 20, 2022
Page 4 of 12

claims in this case extends beyond the specifics of [the plaintiff's] individual claims, and [the plaintiff] is therefore entitled under Rule 26 to discovery. . . in support of her proposed class claim."); *Loreaux v. ACB Receivables Mgmt., Inc.*, No. 14-710, 2015 WL 5032052, at *4 (D.N.J. Aug. 25, 2015); *Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC*, No. 11-00011, 2013 WL 663301, at *5 (D.N.J. Feb. 21, 2013).

Here, despite the fact that discovery has not been bifurcated in this case (thus class discovery is ongoing), that Plaintiffs have agreed to limit the scope of their Requests, and that the Requests seek information and documents related to the aforementioned claims/issues, Defendants have not amended their Responses thereto, and Plaintiffs intend to move to compel the same.

### III. OUTSTANDING OVERARCHING DISPUTES AS TO THE SCOPE OF DISCOVERY.

In addition, and more importantly, there exist several overarching issues in dispute that the parties have not been able to resolve, which directly affect the scope of discovery that the parties contend is allowed in this case under the Federal Rules of Civil Procedure. These are as follows.

**1. Timeframe of Discovery:** There is a dispute as to the timeframe for Plaintiffs' Requests. As set forth in the Complaint, Plaintiffs' claims reach as far back as 1998, when at least one Plaintiff originally took out loans that were serviced by Defendants. *See, e.g.,* Comp. ¶ 37. As such, Plaintiffs originally requested information and documents beginning in 2000. In response, Defendants objected to that timeframe and argued that Plaintiffs are not entitled to any information or documents dating more than six (6) years from the filing of the Complaint, on the grounds that Plaintiffs' claims are purportedly barred by a six (6) year statute of limitations for fraud. Of course, Plaintiffs disagree with Defendants' position. First Plaintiffs' claims are not barred by the six (6) year statute of limitations due to, among other things, equitable tolling. *See, e.g., In re Community Bank of Northern Va. Mortg. Lending Pract. Litig.*, 795 F.3d 380 (3d Cir, 2015); *In re Effexor Antitrust Litigation*, 357 F.Supp.3d 363 (2018). Second, a statute of limitations is not a de facto cut-off for discovery since facts occurring prior to the cut-off can affect and be relevant to acts occurring during the statute of limitations period. *See, e.g., Fassett v. Sears Holdings Corp.*, 319 F.R.D. 143, 157 (M.D. Pa. 2017) (permitting discovery five years prior to date of manufacture of product and approximately thirteen years prior to alleged injury, because discovery relating to the creation of a product is important when a plaintiff claims that the product is deficient); *Assured Guar. Mun. Corp. v. UBS Real Estate Sec. Inc.*, 2012 WL 5927379, at *2 (S.D.N.Y. Nov. 21, 2012) (ordering production of documents postdating the transactions at issue, because retrospective assessments of the transactions could have occurred and would be relevant).

That said, in an effort to compromise, Plaintiffs have agreed, without prejudice and reserving all rights, that Defendants shall first produce documents for the time period of June 24, 2014 to the present. At that time, Plaintiffs can determine whether and for which categories documents from a longer time frame may be necessary.

**KRANJAC TRIPODI & PARTNERS LLP**
ATTORNEYS AT LAW

April 20, 2022
Page 5 of 12

    **2.**     **Request for "Any and All Documents":** Defendants have objected to Plaintiffs' requests for "any and all" documents in their Requests. However, Plaintiffs have specified that they do not seek "any and all" documents but rather, and subject to all of these other limitations, the categories of documents identified in the definitions of the Request (as modified by added/specified categories in certain of the Requests). Certainly, Plaintiffs do not seek documents and information unrelated to those issues set forth in Plaintiff's Complaint (set forth above). However, they are entitled to all those documents that are relevant to Plaintiffs' claims.

    **3.**     **Discovery Related to Private Loans:** Plaintiffs' Complaint involves claims related to Defendants' servicing of both federal and private loans. This is made clear in the Complaint itself, which specifically alleges that at least one of the Plaintiffs took out private loans from Defendants (*see* Compl., ¶ 43) and, more importantly, identifies a nationwide class (and sub-classes) as:

> All individuals . . . who have ever had any loans with Defendants and/or had any loans (***private or federal***) serviced by Defendants at any time.

*See* Compl. ¶¶ 205-209 (emphasis added). Defendants moved to strike Plaintiffs' class allegations and limit the proposed class; however the Court denied that request and upheld, at this point, the proposed class definitions, which expressly include private loans. *See* Opinion, ECF No. 33 at 13-14. More, in Defendants' own Motion to Dismiss, they attached a Promissory Note of one of the Plaintiffs, which was signed in connection with a private loan. *See* ECF No. 20-3. Finally, in their responses to Defendants' document demands, Plaintiffs further produced documents related to the private loans of at least two named plaintiffs.

    Despite the fact that it is abundantly clear that this case involves both federal and private loans, Defendants have made the unilateral decision that the case involves only federal loans, and have withheld without any valid basis all documents in their possession related to private loans.[1] However, none of the claims concerning the totality of Plaintiffs' private loans, nor the proposed class, have been dismissed or stricken. *See* Opinion, ECF No. 33. As such, Plaintiffs are entitled to discovery on them.

    **4.**     **Discovery Related to Private Information of Unnamed Borrowers:** As this Complaint involves a systematic and widespread fraud of a nationwide class of student loan borrowers, Plaintiffs are entitled to and have sought documents related to Defendants' servicing of all borrowers, and not just the named Plaintiffs. Defendants have objected to producing any records related to any unnamed borrower on the grounds of privacy concerns and have limited all production to records of the named Plaintiffs only. However, Defendants have provided no legal

---

[1] Defendants have attempted to argue that they are entitled to withhold these documents on the grounds that the private loans are purportedly subject to arbitration. However, to date, they have not made any effort to compel arbitration as to any private loans, despite that: the Complaint was filed in July 8, 2021, Defendants filed a motion to dismiss and to strike class allegations, and Defendants have participated in discovery and court conferences with Your Honor for months since their motion was largely denied.

**KRANJAC TRIPODI & PARTNERS LLP**
ATTORNEYS AT LAW

April 20, 2022
Page 6 of 12

or other authority supporting that position. More, even if there were protected privacy concerns, any private and/or confidential information of unnamed borrowers can be redacted, which would easily resolve that concern. And, if any privacy concerns were to remain after such redactions, this is the purpose of the Discovery Confidentiality Order entered by the Court on January 20, 2022. *See* ECF No. 52.

     **5.**     **Discovery of Defendants' Computer Programs:** Plaintiffs' claims arise from, among other things, allegations of systematic, continuous, and widespread (i) misallocation of borrower payments disproportionately to interest rather than principal (in order to keep principals artificially high and thus accruing more interest), (ii) misallocation of borrower payments to loans with lower interest rates rather than higher interest rates (in order to keep the higher interest rate balances higher and thus accruing interest at a higher rate), (iii) charging artificially inflated minimum payments, (iv) misapplying capitalized interest (thus improperly inflating outstanding balances due). *See* Compl. ¶¶ 86-135. It goes without saying that, in light of the fact that Defendants service loans for millions of borrowers, these alleged fraudulent allocations, charges, and capitalizations are not done on an individual basis or as to certain borrowers and not others. Rather they are necessarily done via the use of computer programs, which Defendants have created and/or implemented. As such, these computer programs are directly relevant to Plaintiffs' claims, as they will provide the best and most direct evidence of how Defendants service their borrower's loans, and whether the manner they service the loans is fraudulent or not.

     For this reason, Plaintiffs initially sought discovery (via Requests 8-18) of Defendants' computer codes as they relate to the specific servicing and allocation of payments as described in the Complaint. After receiving Defendants' objections to those Requests, Plaintiffs subsequently limited those requests to "computer programs." However, Defendants have continued to object to these Requests for three reasons. First, Defendants have maintained their position that since they believe private loans are not at issue in this matter—which they are—they are not obligated to produce any computer programs as it relates to their servicing of those private loans. As set forth above, this case also involves private loans. Second, as to the federal loans, Defendants have argued that the computer programs are irrelevant – but this argument is based on the false premise that the alleged fraudulent servicing relates to the named Plaintiffs only, and that this case does not involve allegations of systematic fraudulent servicing with respect to all of Defendants' borrowers—which it does. Third, again as to the federal loans, Defendants state that they use a servicing system that contains information that is restricted by the United States Department of Education. However, Defendants have not provided any authority supporting this statement. Moreover, Defendants concede that not all of the federal servicing system is restricted, which thus could and should be produced.

     **IV.**     <u>**LATEST MEET AND CONFER.**</u>

     The parties last conferred on April 12, 2022, during which counsel for Defendants indicated that there were additional documents which Defendants intended to produce. On April 14, 2022, Defendants served Plaintiffs with a supplemental production, consisting of approximately 6,000 pages. While Plaintiffs are currently reviewing those documents, it appears that they are limited to Defendants' policies and procedures regarding capitalization of interest

**K**RANJAC **T**RIPODI **& P**ARTNERS **LLP**
A**TTORNEYS AT** L**AW**

April 20, 2022
Page 7 of 12

and forbearance, and thus do not relate to any of the claims in this action; *e.g.*, misapplication of payments excessively to interest rather than principal and excessively to lower interest loans rather than higher interest loans (*see* Compl., ¶¶ 86-121). It is also unclear whether Defendants intend to revise their responses to Plaintiffs' Requests, or at least identify the Requests for which they have produced these documents subject to the parameters set forth above. It is Plaintiffs' position that Defendants should do so as a matter of judicial economy, so that any motion practice or court intervention can properly be directed to Requests for which Defendants continue to outright object.[2]

Simply put, Plaintiffs have endeavored to collaborate in good faith with Defendants through the discovery process and to avoid unnecessary Court intervention. However, the fact remains that this is a large case concerning a nationwide fraud involving both federal and private loans and, by and large, Plaintiff still have no responsive documents from Defendants other than records concerning the named Plaintiffs' individual federal loan accounts.

## DEFENSE POSITION

From defendants' perspective, very little progress has been made since the conference. The Court directed Plaintiffs to take a targeted approach to discovery, particularly given the impending discovery cutoff – Tuesday, May 31, 2022. Plaintiffs have not done so, and defendants request the opportunity to file a motion for protective order with the necessary supporting evidence as to various, improper discovery requests. Defendants would submit such a motion on an expedited basis due to significant concern about the limited time remaining before the discovery cutoff.

Plaintiffs filed their Complaint on June 24, 2020, but did not serve initial discovery requests until more than a year later, on October 25, 2021. Defendants promptly identified numerous problems with the voluminous discovery – consisting of 125 Requests for Production and 23 Interrogatories to each defendant, for a total of 296 requests – and asked to meet and confer with Plaintiffs prior to serving responses. Notwithstanding defendants' proactive meet and confer effort, and several more efforts between December 2021 and April 2022, including by letter on March 11 and April 8, 2022, Plaintiffs have not meaningfully addressed the issues.[3]

---

[2] As for Plaintiffs' Interrogatories, in Plaintiffs' February 18, 2022 letter, and again in their April 8, 2022 letter, Plaintiffs identified certain deficiencies in Defendant Navient Solutions, Inc.'s answers. Defendant Navient Solutions, Inc. did not respond to these deficiencies, but it seems this was an oversight. Obviously, Plaintiffs will limit, without prejudice, their interrogatories in the same manner as they did their Document Requests.

[3] Meanwhile, Plaintiffs committed to a deposition schedule only after the last

**KRANJAC TRIPODI & PARTNERS LLP**
ATTORNEYS AT LAW

April 20, 2022
Page 8 of 12

  For instance, at the most fundamental level, the parties are unable to concur on the scope of the claims in the Complaint. On April 5, NSL confirmed in writing that Plaintiffs had agreed to core allegations outlined by NSL in an effort to narrow the discovery disputes, as follows:

> The parties previously agreed that the Plaintiffs' core allegations are as follows: Plaintiffs allege that defendant [NSL] systematically: (1) misapplies payments towards interest instead of principal; (2) misdirects payments towards loans with lower interest rates; (3) charges artificially inflated minimum interest payments; and/or (4) improperly imposes capitalized interest. According to plaintiffs, NSL engages in this conduct to collect greater amounts of interest on student loans, thus increasing its profits.

  NSL also confirmed certain, general allegations, even though they are not tied to any prayer for relief in the Complaint or to any specific claim asserted by any of Plaintiffs:

> In addition, plaintiffs allege that NSL's servicing of student loans otherwise is inappropriate in certain respects. Plaintiffs allege that: (1) NSL's repayment system is confusing, and online Help Center customer service resources do not provide clarity; (2) NSL promotes the use of cosigners and then hinders their ability to be released from the repayment obligation by failing to disclose the requirements for release; and (3) NSL has established a loyalty incentive program, Upromise, that only allows reward payments to apply to interest. (*See also* Docket 33 (Opinion filed on July 8, 2021), pp. 2-3 (summarizing allegations for purpose of motion to dismiss/strike)).

  However, Plaintiffs then backtracked, adding multiple, vague elements to again expand the scope of the claims: (1) NSL "conceals information regarding Plaintiffs' loans"; (2) NSL "issues monthly statements that are deceptive and misleading"; and (3) NSL's "Office of the Customer Advocate is an imitation of its customer service." According to Plaintiffs, "[w]hile the latter claims are not 'core,' *per se* they are relevant in this case to, among other things, Plaintiffs'

---

conference (when the Court made clear that the discovery cutoff would not be extended). NSL had to notice the depositions three times, beginning in December 2021; Plaintiffs repeatedly "rescheduled" due to unavailability. The first deposition, of plaintiff Harvey Minano, took place on Friday, April 15, 2022. Based on the testimony, his claim is utterly frivolous.

ability to discover and/or mitigate [NSL's] fraud."

At this point, as to NSL, 67 Requests remain at issue, many of which are extremely broad and seek obviously irrelevant information.4  In this regard, plaintiffs agreed to "narrow" their Requests to seek information related to the claims and defenses in the action.  However, this is obviously not a significant concession.  As a matter of law, discovery is always so limited.  *See, e.g.*, Fed Rules Civ Proc R 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…"); *Disability Rights N.J. v. N.J. Dep't of Educ.*, 2011 U.S. Dist. LEXIS 109665, at *24 (D.N.J. Sep. 26, 2011) (stating that Rule 26 delineates the scope and limitations of discovery in federal court).5  Also, setting aside the core allegations, Plaintiffs simply cannot articulate what information would be relevant. Thus, aside from the information and documents that NSL has already provided on those allegations, it is not at all clear what Plaintiffs seek.

Further, the form of many of the Requests is still inappropriate.  As previously noted, "[c]ourts have long held that requests for 'any and all' documents are generally improper." *See Agerbrink v. Model Serv. LLC,* 2017 WL 933095, at *2 (S.D.N.Y. Mar. 8, 2017) (citing *Gropper v. David Ellis Real Estate, L.P.*, 2014 WL 518234, at *4 (S.D.N.Y. Feb. 10, 2014).  On April 12, Plaintiffs "agreed" to replace their numerous demands for "any and all documents" in Plaintiffs' First Set of Requests for Documents ("First Request") with the Definition section set forth therein.  But that Definition, *on its face*, *still* requires the production of any and all documents:

> The definition of "Documents" . . . "means *all writings of any kind*, including the originals and all nonidentical copies, whether different from the originals by reason of any notation made on such copies or otherwise,

---

4 As discussed with Plaintiffs, Navient Corp. is a holding company, which does not engage in the loan servicing activity at issue in the Complaint.  Navient Corp. provided Responses generally indicating that it does not hold responsive information or information.

5 For the Court's convenience, NSL attempted to categorize the Requests at issue in the attached Exhibit B to this letter.  Also, Plaintiffs did agree to one limitation in the Requests for the moment.  The timeframe referenced in the Requests for production will be June 24, 2014 to the present, *but* subject to their seeking permission from the Court for a longer period.

**K**RANJAC **T**RIPODI **& P**ARTNERS **LLP**
A T T O R N E Y S  A T  L A W

April 20, 2022
Page 10 of 12

> including without limitation correspondence, memoranda, electronic mail messages ("e-mail"), text messages, notes, diaries, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, statements, receipts, returns, summaries, pamphlets, books, prospectuses, annual reports, trade papers, journals, applications, certificates, drawings, plans, interoffice and intra-office communications or offers, notations in any form made of conversations, telephone calls, meetings or other communications, bulletins, printed matter (including, without limitation, newspapers, magazines, press releases and other publications, and articles and clippings therefrom), press releases, computer printouts, computer software and programs, teletypes, telecopies, invoices, ledgers, worksheets, all drafts, alterations, modifications, changes and amendments of any of the foregoing, graphic or aural records or representations of any kind (including, without limitation, photographs, charts, graphs, and microfiche, microfilm, videotape, or film recordings) and electronic, mechanical or electrical records or representations of any kind (including, without limitation, tapes, cassettes, discs, recordings), or transcripts thereof, including metadata."

The Definition also expressly includes all electronically stored information. *See* First Request, p. 3 (emphasis added).

Meanwhile, illustrations of specific, improper Requests at issue include:

- Plaintiffs continue to demand documents and information about *every* aspect of NSL's student loan servicing operation. For example, Plaintiffs have not withdrawn Request for Production ("Request") No. 42, which seeks: "All documents that refer or relate to [d]efendants' loan servicing processes for the years 2000 through the present." Even if this somehow were limited by Plaintiffs' offered limitation to "claims and defenses," Request No. 2 remains grossly overbroad. Request No. 42, like others that Plaintiffs pursue, should have been withdrawn.

- Plaintiffs continue to demand NSL's production of computer code from its loan servicing system, CLASS. *See* Ex. B, Request Nos. 8-18. To be clear, Plaintiffs do not ask for information or data compiled or stored in the system. Plaintiffs literally seek computer code, source codes, application codes, programs, scripts, algorithms, etc. from the servicing system. It is difficult to conceive how such material could be relevant or even useful here. This is not, for instance, an intellectual property or patent matter, and

**K**RANJAC **T**RIPODI **& P**ARTNERS **LLP**
A TTORNEYS AT L AW

April 20, 2022
Page 11 of 12

> Plaintiffs have not articulated any legitimate basis for seeking such material. *See, e.g.*, *In Congoo, LLC v. Revcontent LLC*, 2017 U.S. Dist. LEXIS 130731, at *7 (D.N.J. Aug. 10, 2017) ("Courts have held that when source code is requested not only must it be relevant and necessary to the prosecution or defense of the case but when alternatives are available, a court will not be justified in ordering disclosure.") (internal citations omitted); *Brand Energy & Infrastructure Servs., Inc. v. Irex Corp.*, 2018 WL 806341 (E.D. Pa. Feb. 9, 2018) (holding discovery requests about the servers that defendants used to access and store digital information were impermissible). Moreover, NSL does not own CLASS at this point; it is licensed from a third-party vendor. NSL therefore probably could not produce this material, even if the Request were proper.

- Plaintiffs continue to demand documents and information related to private student loans. *See* Ex. B, Request Nos. 92, 94. Private student loans are subject to arbitration on an individual basis pursuant to borrowers' promissory notes. The Complaint contains no legal claim related to a private loan and, if it did, NSL would move to compel arbitration. Nonetheless, private student loans cannot be the proper subject of discovery here.

- Plaintiffs continue to demand documents about Upromise (Request No. 78), a loyalty program, which have no apparent bearing on any claim asserted in the Complaint. *See* Ex. B, Request No. 78. Indeed, on April 12, Plaintiffs committed to identify or describe documents regarding Upromise that might be pertinent, but have not done so. Also, at this time, a third party, Sallie Mae Bank, owns Upromise.

- Plaintiffs continue to demand documents relating to other borrowers' loans, unrelated litigation and investigations, audits, maintenance of collected data relating to student loans, call centers and many other extraneous topics. *See,* Ex. B, Category No. I.

In sum, Plaintiffs have not applied a thoughtful, targeted approach to discovery at all. NSL has produced approximately 30,000 pages of documents, consisting of Plaintiffs' loan account records and call recordings, policies and procedures, including regarding payment allocation and capitalization of interest, and loan servicing contracts. These documents were called for and produced, without incident. In contrast, the current situation, which is of Plaintiffs' creation, is highly problematic. There are many disputed Requests, and little time remaining before

**KRANJAC TRIPODI & PARTNERS LLP**
ATTORNEYS AT LAW

April 20, 2022
Page 12 of 12

the discovery cutoff.

Notably, during the meet and confer process, Plaintiffs suggested that their Requests are appropriate because they "cannot know" what documents NSL possesses. This is not so. Plaintiffs have always been entitled to serve a deposition notice under Federal Rule of Civil Procedure 30(b)(6) to make those inquiries, and NSL also responded to Interrogatory No. 1 with the name of the employee having relevant knowledge of the issues, John Zemetro, Senior Director, Core Processing. In any event, the rules of discovery do not permit untargeted requests on the ground that the party seeking discovery does not know what he or she is seeking. Very simply, NSL should not be prejudiced by Plaintiffs' belated, overbroad and improper Requests, and asks for leave to file an expedited motion for protective order or other relief from the Court.

Respectfully submitted,

s/ Xavier M. Bailliard

Xavier M. Bailliard

cc. All counsel of record (via ECF)