# EXHIBIT A

**KRANJAC TRIPODI & PARTNERS LLP**
Xavier M. Bailliard
James Van Splinter
30 Wall Street, 12th Floor
New York, New York 10005
Tel: (646) 216-2400
Fax: (646) 216-2373
xbailliard@ktpllp.com
jvansplinter@ktpllp.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRIAN MANETTA, SERGIO PEREIRA, ESTHER SYGAL-PEREIRA, MATTHEW MARKOSIAN, NAIMISH BAXI, HARVEY MINANO, SYDNEY PECK, MAHMUD IBRAHIM, and GEORGE AMORES, individually and on behalf of all others similarly situated, | CIVIL ACTION<br><br>No. 2:20-cv-07712-SDW-LDW |
| Plaintiffs, | **PLAINTIFFS' FIRST SET OF REQUESTS FOR DOCUMENTS** |
| v. | |
| NAVIENT CORPORATION, NAVIENT SOLUTIONS, LLC f/k/a NAVIENT SOLUTIONS, INC. f/k/a SALLIE MAE, INC., and SLM CORPORATION, | |
| Defendants. | |

**TO:**   GREENBERG TRAURIG, LLP
Rebecca G. Zisek
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932

**PLEASE TAKE NOTICE** that pursuant to Federal Rule of Civil Procedure 34, Plaintiffs

BRIAN   MANETTA,   SERGIO   PEREIRA,   ESTHER   SYGAL-PEREIRA,   MATTHEW

MARKOSIAN,   NAIMISH   BAXI,   HARVEY   MINANO,   SYDNEY   PECK,   MAHMUD

IBRAHIM, and GEORGE AMORES (collectively, "Plaintiffs"), through their counsel, Kranjac

Tripodi & Partners LLP, hereby request that Defendants NAVIENT CORPORATION and NAVIENT SOLUTIONS, LLC f/k/a NAVIENT SOLUTIONS, INC. f/k/a SALLIE MAE, INC. (collectively, "Defendants") produce the following documents and information, in accordance with the definitions and instructions set forth below, within thirty (30) days from service of this notice.

**PLEASE TAKE FURTHER NOTICE** that these Requests are deemed continuing so as to require supplemental responses and documents if Defendants obtain further or supplemental information or documents between the time that their responses are served and the time of the first notice of trial.

Dated: October 25, 2021                          **KRANJAC TRIPODI & PARTNERS LLP**

                                                 By: s/Xavier M. Bailliard
                                                      Xavier M. Bailliard
                                                      30 Wall Street, 12th Floor
                                                      New York, NY 10005
                                                      Tel: (646) 216-2400
                                                      Fax: (646) 216-2373
                                                      xbailliard@ktpllp.com

                                                 *Attorneys for Plaintiffs*

## DEFINITIONS AND INSTRUCTIONS

1.      "Documents" means all writings of any kind, including the originals and all nonidentical copies, whether different from the originals by reason of any notation made on such copies or otherwise, including without limitation correspondence, memoranda, electronic mail messages ("e-mail"), text messages, notes, diaries, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, statements, receipts, returns, summaries, pamphlets, books, prospectuses, annual reports, trade papers, journals, applications, certificates, drawings, plans, interoffice and intra-office communications or offers, notations in any form made of conversations, telephone calls, meetings or other communications, bulletins, printed matter (including, without limitation, newspapers, magazines, press releases and other publications, and articles and clippings therefrom), press releases, computer printouts, computer software and programs, teletypes, telecopies, invoices, ledgers, worksheets, all drafts, alterations, modifications, changes and amendments of any of the foregoing, graphic or aural records or representations of any kind (including, without limitation, photographs, charts, graphs, and microfiche, microfilm, videotape, or film recordings) and electronic, mechanical or electrical records or representations of any kind (including, without limitation, tapes, cassettes, discs, recordings), or transcripts thereof, including metadata.

The term Documents shall include all electronically stored information ("ESI") which includes, but is not limited to, originals and all copies of e-mail; activity listings of e-mail receipts and/or transmittals; voice-mail; audio or video recordings of any kind; computer programs (whether private, commercial, or a work-in progress); programming notes or instructions; output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs, and outlines; operating systems; source code of all types; image files including JPG or JPEG, TIFF, PICT, and BMP; PDF files, batch files in any format, including ASCII, XML or CSV format; and all miscellaneous electronic files and/or file fragments, regardless of the media on which they are stored and regardless of whether the data resides in an active file, deleted file, or file fragments.  ESI includes any and all information stored in or on hard disks, floppy disks, CD and DVD disks, external hard drives or their equivalent, portable storage devices including USB or FireWire drives; magnetic tapes of all kinds, and computer chips (including EPROM, PROM and ROM).  ESI also includes the file, folder tabs, containers or labels appended to any storage device containing electronic data.

2.      "Any Documents," "all Documents," or "each Document" means every document, as defined in paragraph 1 above, that can be located, discovered or obtained by reasonably diligent efforts, including without limitation all Documents possessed by:  (a) you or your counsel; (b) any other person or entity from whom you can obtain such documents by request or that you have a legal right to bring within your possession by demand.

3.      "Communications" is used here in the broad sense and includes, but is not limited to, any and all conversations, meetings, discussions and other occasions for verbal exchange, whether in person or by telephone, as well as all letters, memoranda, telegrams, cables and other writings or documents.

4.      "Identify," "identification," and "identity" as used herein mean:

(a)     With respect to a document:
        (i)     the type of document, whether a letter, memorandum, report, agreement, recording, notation, etc.;
        (ii)    any caption, heading and/or date shown on the face of the document; and
        (iii)   if applicable, by whom and to whom it is written and any person to whom it was distributed;

(b)     With respect to a natural person, the person's:
        (i)     full name;
        (ii)    occupation and employer, if any;
        (iii)   business and home address;
        (iv)    business and home telephone numbers;
        (v)     present or last known position, job description, and the identity of his or her business affiliation;
        (vi)    if different from (v), his or her position, job description, and the identity of his or her business affiliation at the time and in the context in which he or she is identified; and
        (vii)   the relationship, business or otherwise, between such person and the person answering these Requests.

(c)     With respect to an entity:
        (i)     its full name;
        (ii)    the jurisdiction under whose laws it was organized;
        (iii)   its principal office address and telephone number;
        (iv)    its principal officer or member known to you;
        (v)     a description of the type of organization or entity; and
        (vi)    the date of its incorporation or organization.

(d)     With respect to an oral communication:
        (i)     the date and time when it occurred;
        (ii)    the place where it occurred;
        (iii)   the complete substance of the communication;
        (iv)    the identity of each person;
                a. to whom such communication was made;
                b. by whom such communication was made;
                c. who was present when such communication was made;
        (v)     if by telephone:
                a. the identity of each person:
                        i. who made each telephone call; and
                        ii. who participated in each call;
                b. The place where each person identified was located.

4

(vi)     the identity of all documents memorializing, referring, or relating to, in any way, the communication or its subject matter.

5.     "Person" means any natural person in any capacity whatsoever, or any public or private corporation, partnership, limited liability company, joint venture, voluntary unincorporated association, organization, proprietorship, trust, state or federal government agency, commission, bureau, department, or any other business association and/or legal entity, including any member, officer, employee, agent, representative, attorney, successor, predecessor, assign, division, affiliate and subsidiary.

6.     Each request for production calls for the production of the original document and all copies and preliminary drafts of Documents which, as to content, differ in any respect from the original or final draft or from each other (e.g., by reason of handwritten notes or comments having been added to one copy of a document but not on the original or other copies).

7.     If any request for Documents is deemed to call for the production of privileged or work product materials and such privilege or work product is asserted, provide the following information:

(a)     The reason for withholding the document;

(b)     A statement of the basis for the claim of privilege, work product or other ground of nondisclosure;

(c)     A brief description of the document, including:

(i)     the date of the document;
(ii)     the number of pages, attachments, and appendices;
(iii)     the names of its author, authors or preparers and identification by employment and title of each such person;
(iv)     the name of each person who was sent, shown or blind or carbon copied the document, or has had access to or custody of the document, together with an identification of each such person;
(v)     the present custodian; and
(vi)     the subject matter of the document, and in the case of any document relating or referring to a meeting or conversation, identification of such meeting or conversation.

8.     If any document requested herein was at one time in existence, but has been lost, discarded or destroyed, identify each such document and provide the following information:

(a)     the date or approximate date it was lost, discarded or destroyed;

(b)     the circumstances and manner in which it was lost, discarded or destroyed;

       (c)      the reason or reasons for disposing of the document (if discarded or destroyed);

       (d)      the identity of all persons authorizing or having knowledge of the circumstances surrounding the disposal of the document;

       (e)      the identity of the person(s) who lost, discarded or destroyed the document; and

       (f)      the identity of all persons having knowledge of the contents thereof.

9.     "Reflect," "Refer" or "Relate to" (including any variant thereof), includes referring to, alluding to, responding to, concerning, connected with, commenting on or in respect of, analyzing, touching upon, comprising, consulting, containing, dealing with, discussing, evidencing, pertaining to, preparing for, relating to, mentioning and showing, adducing, bringing up, calling attention to, citing, directing attention to, invoking, giving as an example, hinting at, indicating, making mention of, making note of, mentioning, naming, pointing out, quoting, speaking, specifying, constituting and being, and is not limited to contemporaneous events, actions, communications or documents, and/or having any and all factual or logical connection with the matter discussed in these requests.

10.    "And" and "or" shall be construed either disjunctively or conjunctively, as necessary to bring within the scope of the request all responses which might otherwise be construed to be outside its scope.

11.    "Including, without limitation" (including any variant thereof) means including, without in any way qualifying, limiting or restricting the foregoing.

12.    The use of the singular shall include the plural and the use of the plural shall include the singular.

13.    "Action" means the lawsuit pending in the United States District Court, District of New Jersey, Civil Action No. 2:20-cv-07712-SDW-LDW, and any claims, allegations, and/or defenses asserted by any present or future party.

14.    "Complaint" means the Complaint filed by Plaintiffs against Defendants in this Action.

15.    "Plaintiffs" means Brian Manetta, Sergio Pereira, Esther Sygal-Pereira, Matthew Markosian, Naimish Baxi, Harvey Minano, Sydney Peck, Mahmud Ibrahim, and/or George Amores.

16.    "Navient Corp." means Navient Corporation, its affiliates, subsidiaries, predecessors, servants, representatives, officers, directors, employees, and/or agents.

17.     "Navient Solutions" means Navient Solutions, LLC, its affiliates, subsidiaries, predecessors, servants, representatives, officers, directors, employees, and/or agents.

18.     "Defendants" means Navient Corp. and/or Navient Solutions.

19.     "Plaintiffs' Loans" shall mean any and all loans of Plaintiffs that are or have been held and/or serviced by Defendants and all previously consolidated loans by Defendants' predecessors that were used to generate the initial principal balances of all such loans associated with Plaintiffs that are or have been held and/or serviced by Defendants.

20.     "You" or "your" means Defendants Navient Corporation and Navient Solutions, Inc., formerly known as Sallie Mae, Inc. (also known as Navient Solutions, LLC), as well as all independent contractors, attorneys, accountants, parents, subsidiaries, affiliated companies, predecessors, successors and/or assigns, partners, officers, directors, employees, agents, representatives, insurance carriers, and other persons acting (or who acted) or purporting to act (or who purported to act) on that person's or entity's or your behalf.

21.     "Defendants' Board" shall include the executive Board(s) of Directors, and all respective corporate governance committees and/or boards of Navient Corporation, Navient Solutions, Inc. formerly known as Sallie Mae, Inc. (also known as Navient Solutions, LLC) and its officers, directors, parent, subsidiaries, affiliated companies, predecessors, successors and/or assigns.

22.     The use of the singular shall include the plural and the use of the plural shall include the singular.

23.     The timeframe for responses relates to the period of January 1, 2000 through the present, unless otherwise specified or as further defined herein.

24.     "Oral communication" means any verbal conversation or other statement from one person to another, including but not limited to any interview conference, meeting, or telephone conversation.

25.     "Online Portal" means Defendants' public website(s) and Internet presence, Customer Service Website, mobile applications, and Defendants' secured (i.e., customer login required for access) website and mobile applications, used to provide information to the public and customers.

26.     "Payments" means any manner and method of payment made by student loan debtors to Defendants in an effort to reduce their respective student loan balances with Defendants, including, without limitation, regular payments and extra (over payments) payments made via Online Portal, automatic debit (auto-debit), check, cash, electronic check, wire, mail, and the like.

## DOCUMENTS REQUESTED

1.      All intra-company organizational charts of Defendants, and any parents, subsidiaries, affiliates, predecessors or successors.

2.      All inter-company organizational charts of Defendants, and any parents, subsidiaries, affiliates, predecessors or successors.

3.      All promissory notes and drafts of promissory notes (whether consummated or not) of any kind between any of Plaintiffs and any of Defendants, including, without limitation, all promissory notes of consolidated loans now held and/or serviced by Defendants.

4.      Copies of all forms and/or templates of promissory notes entered into by any borrower in connection with any and all loans ever held and/or serviced by Defendants.

5.      All communications and drafts of communications (whether transmitted or not) of any kind between any of Defendants and any of Plaintiffs, including, without limitation, communications between Defendants' Customer Service Representatives, underwriting department, marketing department, Office of the Customer Advocate, and any of Plaintiffs.

6.      All records, documents, and electronically stored information that Defendants maintain or control, including, but not limited to, any documents originated by Sallie Mae, that refer or relate to any of Plaintiffs.

7.      All audio recordings that refer, relate to or feature any of Plaintiffs and transcripts thereof.

8.      All computer codes, application codes, binary codes, programs, scripts, models, methods, algorithms, and/or other system for Defendants' payment application system in effect from 2000 to the present. If different versions were used and/or implemented during this period, provide each and every version of computer code, application code, binary code, program, script, model, method, algorithm, and/or other system used.

9.      All computer codes, application codes, binary codes, programs, scripts, models, methods, and/or algorithms, for Defendants' Online portal system in effect from 2000 to the present. If different versions were used and/or implemented during this period, provide each and every version of computer code, application code, binary code, program, script, model, method, algorithm, and/or other system used.

10.      All computer codes, application codes, binary codes, programs, scripts, models, methods, and/or algorithms used and/or implemented by Defendants, from 2000 to the present, in connection with the processing of any and all payments received from or on behalf of any student loan borrower.  If different versions were used and/or implemented during this period, provide each and every version of computer code, application code, binary code, program, script, model, method, algorithm, and/or other system used.

11.      All computer codes, application codes, binary codes, programs, scripts, models, methods, and/or algorithms used and/or implemented by Defendants, from 2000 to the present,

in connection with the allocation to principal and interest (whether past, current, or future) of any and all payments received from or on behalf of any student loan borrower.  If different versions were used and/or implemented during this period, provide each and every version of computer code, application code, binary code, program, script, model, method, algorithm, and/or other system used.

12.     All computer codes, application codes, binary codes, programs, scripts, models, methods, and/or algorithms used and/or implemented by Defendants, from 2000 to the present, in connection with the allocation of any and all payments received from or on behalf of any student loan borrower to different types of loans.  If different versions were used and/or implemented during this period, provide each and every version of computer code, application code, binary code, program, script, model, method, algorithm, and/or other system used.

13.     All computer codes, application codes, binary codes, programs, scripts, models, methods, and/or algorithms used and/or implemented by Defendants, from 2000 to the present, in connection with the allocation of any and all payments received from or on behalf of any student loan borrower to loans with higher (versus lower) interest rates.  If different versions were used and/or implemented during this period, provide each and every version of computer code, application code, binary code, program, script, model, method, algorithm, and/or other system used.

14.     All computer codes, application codes, binary codes, programs, scripts, models, methods, and/or algorithms used and/or implemented by Defendants, from 2000 to the present, in connection with the allocation of any and all payments received from or on behalf of any student loan borrower to loans with variable interest rates.  If different versions were used and/or implemented during this period, provide each and every version of computer code, application code, binary code, program, script, model, method, algorithm, and/or other system used.

15.     All computer codes, application codes, binary codes, programs, scripts, models, methods, and/or algorithms used and/or implemented by Defendants, from 2000 to the present, in connection with the allocation of any and all payments received from or on behalf of any student loan borrower to loans with fixed interest rates.  If different versions were used and/or implemented during this period, provide each and every version of computer code, application code, binary code, program, script, model, method, algorithm, and/or other system used.

16.     All computer codes, application codes, binary codes,  programs, scripts, models, methods, and/or algorithms used and/or implemented by Defendants, from 2000 to the present, in connection with the allocation of any and all payments received from or on behalf of any student loan borrower to future interest owed.  If different versions were used and/or implemented during this period, provide each and every version of computer code, application code, binary code, program, script, model, method, algorithm, and/or other system used.

17.     All computer codes, application codes, binary codes, programs, scripts, models, methods, and/or algorithms used and/or implemented by Defendants, from 2000 to the present, in connection with the assessment of any late fees and/or other penalties on loans serviced by Defendants. If different versions were used and/or implemented during this period, provide each and every version of computer code, application code, binary code, program, script, model,

method, algorithm, and/or other system used.

18.    All computer codes, application codes, binary codes, programs, scripts, models, methods, and/or algorithms used and/or implemented by Defendants, from 2000 to the present, in connection with the capitalization of interest on loans serviced by Defendants.  If different versions were used and/or implemented during this period, provide each and every version of computer code, application code, binary code, program, script, model, method, algorithm, and/or other system used.

19.    All documents, including correspondence, regarding Defendants' compliance with the terms of any promissory note entered into by any student loan borrower relating to the capitalization of interest.

20.    All documents, including correspondence, regarding Defendants' compliance with the terms of any promissory note entered into by any student loan borrower relating to the issuance of late and/or other fees.

21.    All documents, including correspondence, regarding Defendants' compliance with the terms of any promissory note entered into by any student loan borrower relating to the allocation of payments.

22.    All documents, including correspondence, regarding any analysis, determination, investigation, strategy, policy, directive, and/or decision by Defendants concerning the manner by which payments by a student loan borrower are allocated by Defendants towards principal versus interest (whether past, present, or future).

23.    All documents, including correspondence, regarding any analysis, determination, investigation, strategy, policy, directive, and/or decision by Defendants concerning the manner by which payments by a student loan borrower are allocated by Defendants to different types and/or programs of loans.

24.    All documents, including correspondence, regarding any analysis, determination, investigation, strategy, policy, directive, and/or decision by Defendants concerning the manner by which payments by a student loan borrower are allocated by Defendants to loans with higher versus lower interest rates.

25.    All documents, including correspondence, regarding any analysis, determination, investigation, strategy, policy, directive, and/or decision by Defendants concerning the manner by which interest on student loans is capitalized.

26.    All documents, records, and electronically stored information, from 2000 to the present, that refer or relate to complaints/grievances filed by student loan debtors or cosigners concerning:

(a)    Payments being applied incorrectly;
(b)    Payments being applied incorrectly across multiple loans;
(c)    Payments being improperly apportioned between loan interest and loan principal;

(d)     Improper denial of release of cosigners;
(e)     Improper application of late fees; and
(f)     Deceptive billing statements.

27.     Any and all call center and customer service training manuals and materials, call scripts, decision trees, and the like (including e-mail and memoranda) used by Defendants from 2000 to the present.

28.     Any and all documents used to determine/calculate payment schedules for , Plaintiffs' Loans and all other loans serviced by Defendants, including, without limitation, amortization schedules.

29.     Any and all documents related to the process for the creation of monthly billing statements (e.g., templates, information chosen to be included or excluded, layout, font size, etc.) for all loans held and/or serviced by Defendants.

30.     All documents related to the process for Defendants' creation of Defendants' website/Online portal layout and individual webpage information (e.g., correspondence, help, transaction history, login page, etc. contained therein) created for borrowers of private and federal loans held and/or serviced by Defendants.

31.     Any and all schedules, guides, prompts, decision trees, flow charts, call scripts or other materials that are used by Defendants' customer service/call center/Customer Advocate employees that have been used from 2000 to the present to guide the customer service/call center/Customer Advocate employees' responses to student loan debtors complaints/grievances or questions.

32.     All promotional materials related to adding a cosigner to loans offered by Defendants.

33.     All promotional materials related to consolidation loans made or offered by Defendants.

34.     Full and complete payment histories for Plaintiffs.

35.     Full and complete payment confirmations issued to Plaintiffs.

36.     Full and complete transaction histories for Plaintiffs, including, without limitation, disbursements, capitalized interest, fees, consolidated loan payoffs, and payments.

37.     All documents regarding, related to or concerning, the consolidated loans used to support the initial principal of Plaintiffs' current consolidated loans held/serviced by Defendants.

38.     All correspondence, e-mail, memoranda, (handwritten or otherwise) of conversations or other communications regarding Plaintiffs.

39.     All agreements, including, without limitation, any separation and distribution agreement, and drafts thereof, related to the consummation of the 2014 corporate spinoff between

11

Sallie Mae and any of Defendants.

40.    All documents that refer or relate to Defendants' documents and data retention policies and protocols, including, but not limited to, policies for storing and/or discarding electronic files and hardcopy documents relating to loan servicing, customer service interactions and communications, marketing documents, internal memoranda, emails, and documents, and litigation holds.

41.    All documents that refer or relate to any of Defendants' private and federal loan servicing processes, including, but not limited to, all SOC-1 Reports (also known as Service Organization Control or System and Organization Control) (or substantially similar report in the event that the Statement on Standards for Attestation Engagements No. 16 (SSAE 16) auditing standard, SOC- 1 Type 2 report, was not the industry standard for the requested time period) for the years 2000 through the present, as referenced in Exhibit 10.4 <u>Amended and Restated Loan Servicing and Administration Agreement</u> between Sallie Mae Bank and Navient  Solutions, Inc. to Form 8-K of SLM Corporation dated May 2, 2014 as filed with the United States Securities and Exchange Commission available at:
https://www.sec.gov/Archives/edgar/data/1032033/000119312514180442/d719399dex104.htm

42.    All documents that refer or relate to Defendants' investigation of inquiries made by any of student loan borrower regarding or concerning the allocation of regular payments to principal versus interest.

43.    All documents that refer or relate to Defendants' investigation of inquiries made by any of student loan borrower regarding or concerning the allocation of advance payments to principal versus interest.

44.    All documents that refer or relate to Defendants' investigation of inquiries made by any of student loan borrower regarding or concerning the allocation of regular payments to specific types of loans.

45.    All documents that refer or relate to t Defendants' investigation of inquiries made by any of student loan borrower regarding or concerning the allocation of advance payments to specific types of loans.

46.    All documents that refer or relate to Defendants' investigation of inquiries made by any of student loan borrower regarding or concerning the allocation of regular payments to loans of higher versus lower interest rates.

47.    All documents that refer or relate to Defendants' investigation of inquiries made by any student loan borrower regarding or concerning the allocation of advance payments to loans of higher versus lower interest rates.

48.    All internal audit reports conducted by Defendants related to loan servicing processes for the years 2000 through the present.

49.    All audit reports conducted by a third-party related to Defendants' loan servicing processes for the years 2000 through the present.

50.     All documents that refer or relate to Defendants' loan servicing processes for the years 2000 through the present.

51.     All documents, including communications, that refer or relate to Defendants' internal audit reports related to loan servicing processes for the years 2000 through the present.

52.     All documents that refer or relate to Defendants' enterprise-wide risk assessments, including, but not limited to, all related reports, memoranda, and communications for the years 2000 through the present.

53.     All documents that refer or relate to Defendants' internal, preventative, directive, corrective controls, or any and all similar controls put into effect by Defendants, for the years 2000 through the present.

54.     All documents that refer or relate to Defendants' processes and/or policies for implementing automatic debit and/or automatic payment of monthly loan payments.

55.     All documents that refer or relate to Defendants' internal policies related to the creation of borrower incentives for private and federal loans for interest rate deductions and/or credits, and the implementation and application thereof.

56.     All documents that refer or relate to the creation and implementation of Defendants' internal policies and guidelines for the years 2000 through the present.

57.     All of Defendants' Board committee and sub-committee meeting minutes for the years 2000 through the present relating to policies and procedures concerning:

(a)     loan servicing;
(b)     federal and state law and regulatory compliance;
(c)     disclosures;
(d)     underwriting;
(e)     procuring student loan borrowers;
(f)     procuring cosigners;
(g)     cosigner release;
(h)     marketing and promotional materials;
(i)     regulatory compliance practice;
(j)     customer service representative training; and
(k)     establishment of Defendants' Office of the Customer Advocate.

58.     All documents that refer or relate to Defendants' Board committee and sub-committee meeting minutes for the years 2000 through the present relating to policies and procedures concerning:

(a)     loan servicing;
(b)     federal and state law and regulatory compliance;
(c)     disclosures;

(d)      underwriting;

(e)      procuring student loan borrowers;

(f)      procuring cosigners;

(g)      cosigner release;

(h)      marketing and promotional materials;

(i)      regulatory compliance practice;

(j)      customer service representative training; and

(k)      establishment of Defendants' Office of the Customer Advocate.

59.      All insurance policies, including, but not limited it to, fidelity and/or surety policies, that refer or relate to acts concerning Defendants' lending and loan servicing and compliance practices for the years 2000 through the present.

60.      All communications that refer or relate to Defendants' insurance policies' coverage of acts concerning Defendants' lending and loan servicing practices for the years 2000 through the present.

61.      All contracts and agreements between Defendants and any third-party vendors relating to the implementation and/or facilitation of Defendants' loan servicing for the years 2000 through the present.

62.      All communications that refer or relate to Defendants and any third-party vendors relating to the implementation and/or facilitation of Defendants' loan servicing for the years 2000 through the present.

63.      All loan servicing contracts and agreements between Defendants and the United States Department of Education for the years 2000 through the present.

64.      All documents that refer or relate to loan servicing contracts and agreements between Defendants and the United States Department of Education for the years 2000 through the present.

65.      All documents that refer or relate to Defendants' response to the audit conducted by the United States Department of Education, Office of the Inspector General for Federal Student Aid and report titled: <u>Federal Student Aid: Additional Actions Needed to Mitigate the Risk of Servicer Noncompliance with Requirements for Servicing Federally Held Student Loans </u>, dated February 12, 2019, and available at: <u>https://www2.ed.gov/about/offices/list/oig/auditreports/fy2019/a05q0008.pdf.</u>

66.      All documents that refer or relate to Defendants' compliance with the audit conducted by Federal Student Aid for the FSA Business Operations and report titled: <u>Navient Use of Forbearance Site Review</u>, dated May 18, 2017.

67.      All documents that refer or relate to Defendants' response to the August 13, 2019 U.S. Congressional letter from Elijah E. Cummings (Chairman of the Committee on Oversight and Reform), Robert C. Scott (Chairman of the Committee on Education and Labor), and Maxine

Waters (Chairwoman of the Committee on Financial Services) to John Remondi, President and Chief Executive       Officer of       Navient       Solutions, LLC.

68.    All documents, including, but not limited to, Defendants' Board committee minutes and sub-committee minutes, memoranda, and emails, that refer or relate to the creation and implementation of Defendants' 2018 Code of Business Conduct located at: https://about.navient .com/Images/Navient-CodeOfBusinessConduct_tcm7-3205.pdf.

69.    All documents, including, but not limited to, Defendants' Board(s) committee and sub-committee minutes, memoranda, and emails, that refer or relate to the creation and implementation of any previous Code of Business Conduct, or similar internal policy and conduct guidelines, for the years 2000 through the present.

70.    All communications that refer or relate to the creation and implementation of any previous Code of Business Conduct, or similar internal policy and conduct guidelines, for the years 2000 through the present.

71.    All documents that refer or relate to the training of customer service representatives, including, but not limited to, borrower inquiries through telephone and/or the Online Portal, including those related to intake, processes, and discussions regarding allocation of regular and advance/extra payments to principal versus interest (whether past, current, or future), the allocation of regular and advance/extra payments to different types of loans, the allocation of regular and advance/extra payments to loans with higher versus lower interest rates, capitalization of interest, and late fees.

72.    All documents that refer or relate to Defendants' Upromise program, including, but not limited to, any terms, conditions, disclosures, marketing materials, credit applications surrounding Defendants' Upromise program for the years 2000 through the present.

73.    All documents and communications that refer or relate to Defendants' sale/divestiture of the Upromise program in or around 2020, including, but not limited to, any decision processes to sell, terms, conditions, ongoing liability exposure, and/or indemnifications to the acquiring entity surrounding Defendants' Upromise program for the years 2000 through the present.

74.    All documents and communications that refer or relate to Defendants' internal policies and procedures concerning any requisite information necessary for a borrower to provide to Defendants in order to access that borrower's records through Defendants' website, Online Portal, telephone, chat, and/or all other available options (e.g., log-in information, system requirements, and biometric authentication requirements to gain access to/through the smartphone application developed and copyrighted by Defendants titled "Navient" for iOS (Apple based systems), Android OS, and/or Windows Mobile OS), including, without limitation, Defendants' decision(s) to implement or not to implement the same, e.g., Face ID, Touch ID, facial recognition, fingerprint recognition, etc., for the years 2000 through the present.

75.     All documents that refer or relate to data entry of transactions that populate the consumer-facing Transaction History on Defendants' Online Portal, including, but not limited to, daily, monthly, annual entries, and corrective entries, and changes to entries after entries have been made.

76.     All documents that refer or relate to Defendants' use of any notice or notice equivalents filed or transmitted by Defendants to demonstrate a borrower's indebtedness, including without limitation, notices to credit reporting bureaus/agencies, e.g., TransUnion, Experian, Equifax, and/or financing statements, or other notice equivalent, filed by Defendants with any state or federal entity to demonstrate the amount of a borrower's indebtedness.

77.     All documents that refer or relate to Defendants' internal policy decision(s) to alter a previously-entered transaction entry in the consumer-facing Account History section on Defendants' Online Portal.

78.     All documents that refer or relate to Defendants' internal policy decision(s) to begin to add the transaction entry in Account History on Defendants' Online Portal stating: "Disbursement," "Late Fee," "Capitalization," "Adjustment," "Repayment Fee," "Payment," "Payment – Upromise," "School Refund," "Resale," and/or "Loan Sale" on previously-entered Account Histories in connection to any loans serviced by Defendants.

79.     All documents that refer or relate to Defendants' addition of the transaction entries in the Account History on Defendants' Online Portal stating: "Loan Sale" and "Resale" in connection to any loans serviced by Defendants.

80.     All documents that refer or relate to the internal policy decision(s) to change a due date on any particular loan.

81.     All documents that refer or relate to the due date change associated with any loans serviced by Defendants.

82.     All documents that refer or relate to the internal policy decision(s) to change the "Unpaid Principal" amount on monthly billing statements for any loans serviced by Defendants.

83.     All documents that refer or relate to the creation and implementation of, and information within, www.navient.com/allocation.

84.     All documents that refer or relate to the internal policy decision(s) to add the transaction entry in Account History on Defendants' Online Portal stating: "When your loan was transferred to Navient, we received the following historical transactions. However, we do not have the full details of these transactions from your prior servicer."

85.     All documents that refer or relate to any policies Defendants have implemented, amended, and/or changed as a result of any litigation.

86.     All documents that refer or relate to any policies Defendants have implemented, amended, and/or changed as a result of any federal action, including without limitation, compliance audits, regulatory servicing reviews, and the like.

16

87.     All documents that refer or relate to any policies Defendants have implemented, amended, and/or changed as a result of any state action, including without limitation, compliance audits, servicing reviews, and the like.

88.     All documents reflecting the provision, issuance, or communication of any instruction, requirement, command, directive, advice, guidance, suggestion, recommendation, or critique from Defendants (including any business plans, strategic plans, policies, or procedures created or issued by Defendants) relating to the servicing of student loans.

89.     All documents containing, discussing, or reflecting any requirements, instructions, policies, procedures, guidance, or training provided to employees, agents, or subcontractors of Defendants relating to communications with borrowers.

90.     All documents discussing, describing, or recording any infraction, error, non-compliance, or violation by any employee, agent, or subcontractor of Defendants relating to communications with borrowers about the servicing on any loans.

91.     All documents relating to the number, percentage, or rate of borrowers with federal loans serviced by Defendants from 2000 to the present.

92.     All documents relating to the number, percentage, or rate of borrowers with private loans serviced by Defendants from 2000 to the present.

93.     All documents reflecting any discussion, evaluation, or analysis of errors or problems in the processing, application, or allocation of payments for student loans that were happening on a repeated, recurring, or non-isolated basis or that had been the subject of complaints/grievances from more than one consumer, including any discussion, evaluation, or analysis of the adequacy, inadequacy, effectiveness, ineffectiveness, appropriateness, or inappropriateness of any policies, procedures, practices of Defendants to prevent or reduce such errors or problems.

94.     All documents containing, discussing, or reflecting any requirements, instructions, policies, procedures, guidance, or training provided to employees, agents, or subcontractors of Defendants relating to any requirement that a borrower demonstrate a certain payment history (such as making a certain number of consecutive, on-time payments) to become eligible for cosigner release for student loans.

95.     All documents used to monitor, track, or record criteria or factors relating to eligibility for monetary incentive awards or bonuses, including spreadsheets and charts documenting average call handling time, for employees or agents of Defendants whose primary responsibility at any time during the applicable time period was answering phone calls from student loan borrowers.

96.     All documents relating to any potential policies, procedures, practices, systems, tools, or methodologies to identify recurring payment processing errors and prevent or minimize their recurrence (whether for a single borrower or multiple borrowers) that Defendants discussed

or considered but did not adopt or implement, such as systems or tools to systematically search and/or aggregate non-escalated inquiries about payment processing errors.

97.    All documents relating to the entity relationship diagram, relational database schema, or similar diagram showing all data collected, archived, maintained, or used by Defendants relating to the servicing of student loans, including but not limited to documents showing all entities, attributes, and interrelationships for relevant flat-file and relational databases, and documents showing definitions of all elements.

98.    All documents relating to any evaluation, auditing, monitoring, oversight, due diligence, quality assurance, or compliance review (including those conducted by or on behalf of an investor or trustee of a loan securitization trust) relating to communications with or enrollment of borrowers in forbearance or any type of income-driven repayment plan, including any audit or compliance reports, any risk management analyses, all communications relating to any such audit or compliance reports or risk management analyses, and any action plans in response to any audit or compliance reports or risk management analyses.

99.    All documents reflecting any discussion, evaluation, or analysis of errors or problems in the processing, application, or allocation of payments for student loans that were happening on a repeated, recurring, or non-isolated basis or that had been the subject of complaints from more than one consumer, including any discussion, evaluation, or analysis of the adequacy, inadequacy, effectiveness, ineffectiveness, appropriateness, or inappropriateness of any policies, procedures, practices of Defendants to prevent or reduce such errors or problems.

100.    All documents that refer or relate to Defendants' process and system by which Defendants intake calls to its customer service call center, including, without limitation, creation of any automated prompts, decision trees, flow charts, and call routing system.

101.    All documents that refer or relate to the manner by which Defendants' customer service representatives (including, without limitation, call center operators, Online Portal operators, and Customer Advocate representatives) are compensated, including, without limitation, performance goals, commissions, bonuses and/or similar incentive compensation programs.

102.    All documents that refer or relate to the manner by which Defendants' reviewers of loan applications (including, without limitation, underwriters and loan officers) are compensated including, without limitation performance goals, commissions, bonuses and/or similar incentive compensation programs.

103.    All documents that refer or relate to the manner by which Defendants' reviewers of applications to release cosigners are compensated including, without limitation, performance goals, commissions, bonuses and/or similar incentive compensation programs.

104.    All documents that refer or relate to the manner by which Defendants' executives whose roles relate to loan acquisitions/disbursements and loan programs (including, without limitation, heads of departments referenced above) are compensated including, without limitation, performance goals, commissions, bonuses and/or similar incentive compensation programs.

105.     All documents reflecting any discussion, evaluation, or analysis of the adequacy, inadequacy, effectiveness, ineffectiveness, appropriateness, or inappropriateness of any requirements, instructions, policies, procedures, guidance, or training relating to Defendants' student loan servicing practices, including, without limitation: (a) all communications or analyses concerning any deficiencies or problems in such requirements, instructions, policies, procedures, guidance, or training; (b) any analysis of the impact on borrowers of such requirements, instructions, policies, procedures, guidance, or training; and (c) all communications or analyses regarding potential improvements – whether implemented or not – in such requirements, instructions, policies, procedures, guidance, or training.  Such information should include, but not be limited to, the following subject matters concerning Defendants':

(a)     loan servicing;
(b)     federal and state law and regulatory compliance;
(c)     disclosures;
(d)     underwriting;
(e)     procuring student loan borrowers;
(f)     procuring cosigners;
(g)     cosigner release;
(h)     marketing and promotional materials;
(i)     regulatory compliance practice;
(j)     customer service representative training; and
(k)     establishment of Defendants' Office of the Customer Advocate.

106.     All documents relating to the termination of Defendants' contract with the United States Department of Education relating to Defendants' servicing of federal loans.

107.     All documents regarding, related to, concerning, or supporting Navient Corp.'s First Affirmative Defense in its Answer.

108.     All documents regarding, related to, concerning, or supporting Navient Corp.'s Second Affirmative Defense in its Answer.

109.     All documents regarding, related to, concerning, or supporting Navient Corp.'s Third Affirmative Defense in its Answer.

110.     All documents regarding, related to, concerning, or supporting Navient Solutions' First Affirmative Defense in its Answer.

111.     All documents regarding, related to, concerning, or supporting Navient Solutions' Second Affirmative Defense in its Answer.

112.     All documents regarding, related to, concerning, or supporting Navient Solutions' Third Affirmative Defense in its Answer.

113.     All documents regarding, related to, concerning, or supporting Navient Solutions' Fourth Affirmative Defense in its Answer.

114.    All documents regarding, related to, concerning, or supporting Navient Solutions' Fifth Affirmative Defense in its Answer.

115.    All documents regarding, related to, concerning, or supporting Navient Solutions' Sixth Affirmative Defense in its Answer.

116.    All documents regarding, related to, concerning, or supporting Navient Solutions' Seventh Affirmative Defense in its Answer.

117.    All documents regarding, related to, concerning, or supporting Navient Solutions' Eighth Affirmative Defense in its Answer.

118.    Statements of parties and/or non-parties to this Action that relate in any way to the subject matter of this Action.

119.    Declarations against interest of parties and/or non-parties to this Action that relate in any way to the subject matter of this Action.

120.    All documents, recordings or things to be relied upon, or intended to be relied upon, by Defendants at trial.

121.    Copies of the following for each proposed expert witnesses Defendants intend to call at trial:

a.      the qualifications of each expert;

b.      a summary of the grounds for each opinion;

c.      the substance of all oral reports; and

d.      true copies of all written reports provided to you by any such expert.

122.    Copies of all documents and information relied upon by the expert(s) identified in response to Request 121 above to support their opinions.

123.    Copies of the following for each expert retained by Defendants in anticipation of litigation or preparation for trial who is not expected to be called as a witness at trial:

a.      the qualifications of each expert;

b.      a summary of the grounds for each opinion;

c.      the substance of all oral reports; and

d.      true copies of all written reports provided to you by any such expert.

124.    Copies of all documents and information relied upon by the expert(s) identified in response to Request 123 above to support their opinions.

125.    All documents relating to the underlying subject matter of this Action that have not otherwise been provided in response to the above requests.