**GT GreenbergTraurig**

Rebecca Zisek, Esq.
Tel 973.443.3242
Fax 973.301.8410
zisekr@gtlaw.com

Lisa Simonetti, Esq.
Tel 310.586.7824
Fax 310.586.7800
simonettil@gtlaw.com

May 25, 2022

**VIA ECF**
The Honorable Leda Dunn Wettre, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07102

      Re: Case No. 2:20-cv-07712,
      *Manetta, et al. v. Navient Corporation, et al.*

Dear Judge Wettre:

    Pursuant to the Text Order (Dkts 63, 65) dated April 55, 2022 and May 11, 2022, defendants Navient Corporation ("Navient Corp.") and Navient Solutions, LLC ("NSL") and plaintiffs Brian Manetta, Sergio Pereira, Esther Sygal-Pererira, Matthew Markosian, Naimish Baxi, Harvey Minano, Sydney Peck, Mahmud Ibrahim, and George Amores (collectively, "Plaintiffs") submit this correspondence on the discovery dispute discussed during the conference conducted by the Court on April 25, 2022.

## **PLAINTIFFS' POSITION**

    This firm represents Plaintiffs in the referenced matter. Pursuant to Your Honor's April 5, 2022 Order [ECF No. 61], we hereby submit this joint letter setting forth the parties' respective positions regarding outstanding discovery disputes. As Your Honor directed, the parties have limited their discovery disputes to five (5) overarching issues.

**Greenberg Traurig, LLP | Attorneys at Law**

1840 Century Park East | Suite 1900 | Los Angeles, California 90067-2121 | T +1 310.586.7700 | F +1 310.586.7800

Albany. Amsterdam. Atlanta. Austin. Berlin. Boston. Chicago. Dallas. Delaware. Denver. Fort Lauderdale. Houston. Las Vegas. London. Los Angeles. Mexico City. Miami. Milan. Minneapolis. New Jersey. New York. Northern Virginia. Orange County. Orlando. Philadelphia. Phoenix. Sacramento. Salt Lake City. San Francisco. Seoul. Shanghai. Silicon Valley. Tallahassee. Tampa. Tel Aviv. Tokyo. Warsaw. Washington, D.C. West Palm Beach. Westchester County.

Operates as: ¬Greenberg Traurig Germany, LLP; *A separate UK registered legal entity; †Greenberg Traurig, S.C.; ªGreenberg Traurig Santa Maria; ∞Greenberg Traurig LLP Foreign Legal Consultant Office; ^A branch of Greenberg Traurig, P.A., Florida, USA; ¤GT Tokyo Horitsu Jimusho and Greenberg Traurig Gaikokuhojimubegoshi Jimusho; ~Greenberg Traurig Nowakowska-Zimoch Wysokiński sp.k.

www.gtlaw.com

Hon. Leda Dunn Wettre, U.S.M.J.
May 25, 2022
Page 2

## I. THE SUBJECT MATTER OF DISCOVERY SOUGHT BY PLAINTIFFS.

The main thrust of Plaintiffs' claims arise from Defendants' fraudulent servicing of both federal and private loans of all student loan borrowers as defined by the proposed class, i.e. "[a]ll individuals in the United States and its territories who have ever had any loans with Defendants and/or had any loans (private or federal) serviced by Defendants at any time". *See* Complaint ("Compl."), ECF No. 1, ¶ 205.  More specifically, Plaintiffs allege with particularity in their Complaint how Defendants fraudulently service student loans by:

(i) systematically misallocating payments disproportionately to interest instead of principal (*see* Compl. ¶¶ 86-110);

(ii) systematically allocating monthly payments to loans with lower interest rates as opposed to loans with higher interest rates (*see id.* ¶¶ 111-121);

(iii) systematically charging artificially inflated minimum interest payments (*see id.* ¶¶122-125); and

(iv) deliberately misapplying capitalized interest (*see id.* ¶¶ 126-135).

Plaintiffs further allege that Defendants conceal their fraud by:

(i) employing a repayment system and customer service designed to hinder repayment and impede discovery of errors (*see id.* ¶¶ 136-143);
(ii) concealing information regarding Plaintiffs' loans (*see id.* ¶¶ 144-149);
(iii) issuing monthly statements that are deceptive and misleading (*see id.* ¶¶ 150-168);
(iv) promoting the use of cosigners, but deliberately hindering their release as promised (*see id.* ¶¶169-190);
(v) promoting a "Loyalty Incentive Program," which did little or nothing to lower student loans (*see id.* ¶¶ 191-197); and
(vi) offering a purported Office of the Customer Advocate, which is in fact an imitation of its customer service (*see id.* ¶¶ 198-204).

In her Opinion, dated July 8, 2021, denying Defendants' motion to dismiss Plaintiffs' common law fraud and New Jersey, Florida, Delaware, and New York consumer fraud claims (*see* Compl. Counts I-V)), the Honorable Susan D. Wigenton, U.S.D.J. held that these specific allegations, which were supported by specific examples, sufficiently set forth each of the common law and statutory fraud claims.  *See* Opinion [ECF No. 33] at 2-3, 7-8, 10.

Specifically, Judge Wigenton first summarized in detail Plaintiffs' allegations as they related to Plaintiffs' claims:

Plaintiffs allege that Defendants "have developed a repayment system intended, by design, to maximize a borrower's indebtedness through a scheme that inflates interest and thwarts repayment of principal to increase their own interest income . . ." (*Id.* ¶ 13.) To

Hon. Leda Dunn Wettre, U.S.M.J.
May 25, 2022
Page 3

> do so, Defendants allegedly "routinely engage in unfair, deceptive, and illegal practices by implementing a scheme to misallocate student loan payments toward interest" rather than toward paying off the loan principal, misdirect payments towards loans with lower interest rates, and improperly impose capitalized interest. (*Id.* ¶¶ 13-14, 93, 111-15, 126-29.) Plaintiffs provide specific examples as to each named plaintiff's accounts which include dates and amounts allegedly misapplied or improperly directed. (*See id.* ¶¶ 95-110, 116-121, 130-135.) In addition, in order to effectuate their repayment system, Plaintiffs contend that Defendants: intentionally misinform borrowers, conceal information regarding amortization; withhold "the breakdown of payment allocations toward principal and interest on its monthly statements in order to conceal or, at least delay, discovery of any errors or misapplication of payments;" fail to respond to borrower inquiries; impede the release of co-signers; "promote a bogus loyalty incentive program;" and mislead borrowers in order to "inhibit the payment of principal and to prolong the life of indebtedness." (*See id.* ¶¶ 136-204.).

*See* Opinion at 2-3.

Based on these specifically identified allegations, Judge Wigenton then denied Defendants' motion to dismiss Plaintiffs' common law and statutory fraud claims because:

> Here, Plaintiffs allege that Defendants made a variety of misrepresentations to Plaintiffs regarding the allocation of their payments and the calculation and capitalization of interest, knowing they were false, in order to gain greater profits. Plaintiffs do so with particularity, providing specific examples of Defendants' mishandling of payments and interest as to each named plaintiff and including the date the wrongful conduct occurred as well as the amounts allegedly mishandled. (*See* D.E. 1 ¶¶ 95-110, 116-121, 130-135.) In addition to overt misrepresentations, Plaintiffs also plead that Defendants concealed and withheld information regarding amortization and payment allocations and failed to respond to borrower inquiries in an attempt to deceive consumer borrowers in order to "inhibit the payment of principal and to prolong the life of indebtedness." (*See id.* ¶¶ 136-204.) Plaintiffs further plead that they relied on those statements/omissions/concealment and were damaged because Defendants' actions resulted in Plaintiffs paying more in interest over the life of the loan than was contractually required.
>
> . . .
>
> Here, as discussed above, Plaintiffs allege with particularity that Defendants made a variety of misrepresentations to Plaintiffs who are consumer borrowers knowing they were false in order to gain greater profits. (*See* D.E. 1 ¶¶ 95-110, 116-121, 130-135.) Plaintiffs further plead that they were damaged because those misrepresentations and/or omissions led to Plaintiffs paying more in interest over the life of the loan than was contractually required.

*See* Opinion at 8 and 10.

Hon. Leda Dunn Wettre, U.S.M.J.
May 25, 2022
Page 4

In short, Judge Wigenton has already held that the facts set forth above in Plaintiffs' Complaint (*see* Compl. ¶¶ 86-204) are all relevant, alleged with particularity, and sufficiently set forth Plaintiffs' fraud claims. As such, there is no question that Plaintiffs are entitled to discovery related to these very same allegations and claims. As this Court set forth in *Hite v. Peters,* No. Civ. A. 07–4492, 2009 WL 1748860, at *3 (D.N.J. Jun. 19, 2009), "parties may 'obtain discovery regarding any nonprivileged matter that is relevant to any party' claim or defense[.] ...'" *Hite,* 2009 WL 1748860, at *3 (quoting FED. R. CIV. P. 26(b)(1)). Additionally, "the Court may ... permit for 'good cause' discovery of matters that are 'relevant to the subject matter involved in the action.'" *Id.* "'Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.'" *Id.*; *see also Nestle Foods Corp. v. Aetna Cas. & Sur. Co.,* 135 F.R.D. 101, 104 (D.N.J. 1990) ("[I]t is important to distinguish the right to obtain information by discovery from the right to use it at trial."). Thus, "relevancy is more liberally and broadly construed at the discovery stage than at trial." *Hite,* 2009 WL 1748860, at *3 (citing *Nestle,* 135 F.R.D. at 104). Courts construe relevancy "broadly to encompass any matter that bears on, or that could reasonably lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). More, cases involving putative class action claims—such as here—significantly broaden the scope of permissible discovery since a plaintiff is "entitled to the opportunity to explore and obtain information relevant to the Rule 23 requirements—numerosity, commonality, typicality." *Medina v. Enhanced Recovery Company, LLC*, 2017 WL 5196093, at *4 (S.D. Fla. Nov. 9, 2017) (citing *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2009)); *see also, Bell v. Lockheed Martin Corp.,* 270 F.R.D. 186, 193 (D.N.J. 2010), *aff'd,* No. 08-6292, 2010 WL 3724271 (D.N.J. Sept. 15, 2010) (plaintiff could obtain broad discovery relating to other individuals and practices because "the scope of the claims in this case extends beyond the specifics of [the plaintiff's] individual claims, and [the plaintiff] is therefore entitled under Rule 26 to discovery. . . in support of her proposed class claim."); *Loreaux v. ACB Receivables Mgmt., Inc.*, 2015 WL 5032052, at *4 (D.N.J. Aug. 25, 2015); *Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC*, 2013 WL 663301, at *5 (D.N.J. Feb. 21, 2013).

Despite the undeniable relevancy of the above identified facts—and the fact that Judge Wigenton has held that they sufficiently set forth Plaintiffs' claims of systematic and rampant fraud by Defendants in connection with a nationwide class (and not just the named plaintiffs)—Defendants have essentially taken the position that they have no obligation to provide any documents related to their practice of loan servicing, and that they are only required to produce the individual named plaintiffs' account records – almost nothing more.[1] To support this position, they have feigned confusion as to the nature and extent of Plaintiffs' allegations and claims, and apparently cannot comprehend how this case could conceivably involve fraud claims or require the production of anything other than the limited account records of the named Plaintiffs.

---

[1] Defendants have argued that they have produced thousands of documents in response to Plaintiffs' demands, but what they omit is that those documents are nearly exclusively limited to account statements/invoices and promissory notes for the named plaintiffs only. However, the fact that they have produced thousands of pages of documents is irrelevant to the fact that they have refused to produce documents that are relevant and responsive to Plaintiffs' demands.

Hon. Leda Dunn Wettre, U.S.M.J.
May 25, 2022
Page 5

Plaintiffs have repeatedly attempted to explain that this action in fraud includes issues beyond just Plaintiffs' loans *per se*, and that Defendants' fraud is perpetrated through the combination of its websites and advertising, customer service representatives, billing statements, allocation of payments, business practices, and the like, designed from the top down. This has fallen on deaf ears and Defendants have produced essentially no documents responsive to Plaintiffs' demands which seek information regarding the manner in which Defendants service loans.[2] For example, Defendants have refused to produce any documents showing how, why, when or in what manner Defendants (i) allocate payments to principal and interest, (ii) allocate payments among differing loans, (iii) calculate minimum payments, or (iv) capitalize interest – all of which Judge Wigenton has held is not only relevant to but supports Plaintiffs' fraud claims. *See* Compl. ¶¶ 86-135, 219-294 *and* Opinion at 2-3, 7-8, 10. The same holds true for the allegations in the Complaint which set forth how Defendants conceal their fraudulent servicing. *See* Compl. ¶¶ 136-204 *and* Opinion at 2-3, 7-8, 10.

Defendants should be compelled to produce documents responsive to Plaintiffs' requests which seek the information identified above (and in Plaintiffs' Complaint and in the Court's Order denying Defendants' motion to dismiss).[3]

---

[2] Defendants have produced some documents seemingly consisting of policies concerning certain aspects of loan servicing (the vast majority of which were various iterations of their "Forbearance Eligibility Overview and Procedures," deferment policies, and bankruptcy policies which do not concern the main allegations of this case). These documents do nothing to demonstrate whether (for example) loan interest was in fact misallocated on the class's loans (or even whether these policies were followed). Indeed, despite the apparent existence of reams of "Forbearance Eligibility Overview and Procedures", Navient nonetheless recently entered into a $1.85 billion Multi-State settlement based on claims that "despite representing that it would help borrowers find the best repayment options for them, Navient steered struggling student loan borrowers into costly long-term forbearances instead of counseling them about the benefits of more affordable income-driven repayment plans." *See* https://www.navientagsettlement.com/Home/portalid/0. In short, the policies Navient produced are largely inapposite, and in all events the mere existence of a piece of paper claiming to be a "policy" is not indicative of Navient' "practice." Defendants also recently produced a set of documents entitled "CRS Collections - Repayment Options Overview for Eligibility, Modeling, & Processing" which appear to be charts/scripts/instructions for use by Navient employees when discussing certain repayment options with borrowers. Like with the "Forbearance" documents, these documents provide no information regarding the actual manner in which Defendants service/allocate payments.

[3] Defendants also complain about Plaintiffs' requests for "any and all documents" and the fact that Plaintiffs purportedly seek documents related to every aspect of Defendants' student loan servicing operation, which purportedly creates an undue burden on Defendants by obligating it to produce excessive amounts of irrelevant documents. But, that is not true – Plaintiffs have already (i) withdrawn 37 requests and (ii) limited the scope of each of their remaining requests to those specific servicing issues outlined above. This is a very large and complex fraud matter asserting fraud claims involving certain identified aspects of Defendants' loan servicing. Plaintiffs' fraud claims have survived Defendants' motion to dismiss. Defendants have produced no documents related to the particular servicing issues/claims addressed in the Complaint, and

Hon. Leda Dunn Wettre, U.S.M.J.
May 25, 2022
Page 6

## II. **TIMEFRAME OF DISCOVERY SOUGHT BY PLAINTIFFS**.

As set forth in the Complaint, Plaintiffs' claims reach as far back as 1998, when at least one Plaintiff originally took out loans that were serviced by Defendants. *See, e.g.,* Compl. ¶ 37. As such, Plaintiffs originally requested information and documents beginning in 2000. In response, Defendants objected to that timeframe and argued that Plaintiffs are not entitled to any information or documents dating more than six (6) years from the filing of the Complaint, on the grounds that Plaintiffs' claims are purportedly barred by a six (6) year statute of limitations for fraud. Of course, Plaintiffs disagree with Defendants' position.

First, Plaintiffs' claims are not barred by the six (6) year statute of limitations. As set forth above, the allegations set forth in the Complaint demonstrate how Defendants have engaged in a coordinated and deliberate fraud by surreptitiously (i) misapplying payments excessively to interest rather than principal, (ii) misapplying payments to loans with higher interest rates, (iii) charging inflated minimum payments, and (iv) improperly capitalizing interest. *See* Compl. ¶¶ 86-135 As if those clandestine and undisclosed fraudulent acts/transactions were not enough, Plaintiffs also allege how Defendants then engage in deliberate further fraudulent efforts to conceal those acts/transactions by, among other things, (i) employing a repayment system designed to hinder repayment (*see id.* ¶¶ 136-143), (ii) concealing information regarding Plaintiffs' loans (*see id.* ¶¶ 144-149); (iii) issuing deceptive and misleading monthly statements (*see id.* ¶¶ 150-168); and offering a purported Office of the Customer Advocate, which is in fact an imitation of its customer service (*see id.* ¶¶ 198-204).

These continuing acts of concealment in furtherance of Defendants' fraud, as alleged in the Complaint, preclude Defendants from asserting a statute of limitations defense as respects to Plaintiffs' claims pursuant to the equitable doctrines of fraudulent concealment and "the continuing fraud doctrine". *See In re Community Bank of Northern Va. Mortg. Lending Pract. Litig.*, 795 F.3d 380, 400-01 (3d Cir, 2015) ("Equitable tolling permits a plaintiff to sue after the statutory time period for filing a complaint has expired . . . if the defendant has actively misled the plaintiff respecting the plaintiff's cause of action. [ ] The fraudulent concealment doctrine operates to stop the statute of limitations from running in circumstances when the accrual date of a claim has passed but the "plaintiff's cause of action has been obscured by the defendant's conduct.") (citing *In re Linerboard Antitrust Litig.,* 305 F.3d 145, 160 (3d Cir.2002)); *In re Effexor Antitrust Litigation*, 357 F.Supp.3d 363, 384 (2018) ("Under the continuing-violation doctrine, when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period."). More, the Third Circuit has ruled that equitable tolling can apply on class-wide claims in lending disputes. *See In re Community Bank of Northern Va. Mortg. Lending Pract. Litig.*, 795 F.3d at 402 ("The Plaintiffs counter that no independent act of concealment is necessary where the wrong is "self-concealing." . . . Plaintiffs have advanced a sufficiently credible argument that [defendant] did commit an affirmative act of concealment . . . [moreover] we do not dispute that reasonable diligence is generally a fact specific inquiry. But when the wrongful scheme is perpetrated through the use of common documentation, such as the documents employed to memorialize each putative class member's mortgage loan, full participation in the loan process is alone

---

Plaintiffs are entitled to all documents in Defendants' possession relevant to those allegations and claims (*see* Compl. ¶¶ 86-204, 219-294).

Greenberg Traurig, LLP | Attorneys at Law

www.gtlaw.com

sufficient to establish the due diligence element . . . Due diligence does not mean that borrowers must presume their bank is lying or dissembling and therefore that further investigation is needed. Reading the blizzard of paper that sweeps before them is ample diligence in itself . . . . Indeed, [certain mortgagor protection acts] were passed, in large part, because Congress recognized that the average borrower is incapable of detecting many unfair banking practices, including fraud.").

Here, as set forth above, Plaintiffs have alleged how Defendants have actively concealed since as far back as 1998, via numerous ways, their surreptitious fraudulent servicing of their borrowers' loans. As such, Defendants are now estopped from arguing that Plaintiffs' claims can not go back further than six (6) years from the filing of the Complaint. *See In re Community Bank of Northern Va. Mortg. Lending Pract. Litig.*, 795 F.3d at 400-01. Moreover, since they have engaged in continuing acts since at least 1998 in furtherance of their scheme to defraud their borrowers, those continuing acts also preclude any statute of limitations defense. *See In re Effexor Antitrust Litigation*, 357 F.Supp.3d at 384.

Second, even if there existed a valid statute of limitations argument, such a defense is not a de facto cut-off for discovery since facts occurring prior to the cut-off can affect and be relevant to acts occurring during the statute of limitations period. *See, e.g., Fassett v. Sears Holdings Corp.*, 319 F.R.D. 143, 157 (M.D. Pa. 2017) (permitting discovery five years prior to date of manufacture of product and approximately thirteen years prior to alleged injury, because discovery relating to the creation of a product is important when a plaintiff claims that the product is deficient); *Yarus v. Walgreen Company*, 2015 WL 1021282, FN 2 (E.D.Pa. Mar. 4, 2015) ("Even if 2009 and 2010 are beyond the scope of the statute of limitations . . . it is not uncommon to have discovery for a time preceding the statutory limitations period.") (quoting *Kane v. United Independent Union Welfare Fund*, 1997 WL 611584, at *3 (E.D.Pa. 1997)); *Assured Guar. Mun. Corp. v. UBS Real Estate Sec. Inc.*, 2012 WL 5927379, at *2 (S.D.N.Y. Nov. 21, 2012) (ordering production of documents postdating the transactions at issue, because retrospective assessments of the transactions could have occurred and would be relevant); *Kellam Energy, Inc. v. Duncan*, 616 F.Supp. 215, 218 (D. Del. 1985) (holding in context of an antitrust action "the temporal scope of discovery . . . should not be confined to the limitations period[.]"). This is the case here, as Defendants' efforts and scheme to defraud Plaintiffs and other borrowers originated from acts dating decades, which are relevant to their continuing and present fraud, including their deliberate intent and manner in which they propounded it.

That said, in an effort to compromise, Plaintiffs have agreed, without prejudice and reserving all rights, that Defendants shall first produce documents for the time period of June 24, 2014 to the present. At that time, Plaintiffs can determine whether and for which categories documents from a longer time frame may be necessary.

Hon. Leda Dunn Wettre, U.S.M.J.
May 25, 2022
Page 8

### III. DISCOVERY RELATED TO PRIVATE LOANS.

Plaintiffs' Complaint involves claims related to Defendants' servicing of both federal and private loans. This is made clear in the Complaint itself, which specifically alleges that at least one of the Plaintiffs took out private loans from Defendants (*see* Compl., ¶ 43) and, more importantly, identifies a nationwide class (and sub-classes) as:

> All individuals . . . who have ever had any loans with Defendants and/or had any loans (***private or federal***) serviced by Defendants at any time.

*See* Compl. ¶¶ 205-209 (emphasis added). Defendants moved to strike Plaintiffs' class allegations and limit the proposed class; however the Court denied that request and upheld, at this point, the proposed class definitions, which expressly include private loans. *See* Opinion, at 13-14. More, in Defendants' own Motion to Dismiss, they attached a Promissory Note of one of the Plaintiffs, which was signed in connection with a private loan. *See* ECF No. 20-3. In addition, in partial response to Plaintiffs' document demands, Defendants produced copies of promissory notes related to private loans. Finally, in their responses to Defendants' document demands, Plaintiffs produced documents related to the private loans of at least two named plaintiffs.

Despite the fact that it is abundantly clear that this case involves both federal and private loans, Defendants have made the unilateral decision that the case involves only federal loans, and have withheld without any valid basis all documents in their possession related to private loans.[4] However, none of the claims concerning the totality of Plaintiffs' private loans, nor the proposed class, have been dismissed or stricken. *See* Opinion, ECF No. 33.

In an effort to justify their improper refusal to provide any discovery as to private loans, Defendants have taken the post hac position that from the face of the Complaint, they somehow cannot be sure that the allegations and claims involve private loans. As set forth above, this position is preposterous: the class definition expressly states that they involve both federal and private loans, the Complaint expressly alleges that at least one named Plaintiff took out private loans, Defendants attached a promissory note for a private loan in their motion to dismiss, and Defendants produced promissory notes for the named Plaintiffs related to private loans.

In conjunction with this preposterous position, Defendants now argue that, if the claims, in fact, involve private loans, then those claims (as they relate to the private loans) must be arbitrated because the promissory notes for the private loans of certain of the named Plaintiffs contain arbitration provisions. While it may be true that there exist arbitration provisions in the produced private loan promissory notes, Defendants have waived their right to compel

---

[4] As set forth below, Defendants are now attempting to argue that they are entitled to withhold these documents on the grounds that the private loans are purportedly subject to arbitration. However, to date, they have not made any effort to compel arbitration as to any private loans, despite that: the Complaint was filed in July 8, 2021, Defendants filed a motion to dismiss and to strike class allegations, and Defendants have participated in discovery and court conferences with Your Honor for months since their motion was largely denied.

Greenberg Traurig, LLP | Attorneys at Law

www.gtlaw.com

arbitration due to their conduct in having actively participated and defended the merits of this case for a year and a half. *See, e.g., Hahn v. RealReal, Inc.,* 2021 WL 4260908 (D.N.J. Sept. 17, 2021) (finding waiver where defendant waited almost two years to file motion to compel, filed a dispositive motion, informally informed plaintiff of the potential for arbitration, acquiesced to pretrial orders, and had exchanged written discovery and participated in four depositions); *Maher v. Northland Group, Inc.*, 2019 WL 3245083 (finding waiver where defendant waited 22 months to move to compel, participated in discovery, attended conferences, submitted status reports, and participated in discovery); *In re Pharmacy Ben. Managers Antitrust Litigation*, 700 F.3d 109 (3d Cir. 2012) (finding waiver where defendant filed motion to compel ten months after the complaint was filed, filed a motion to dismiss, participated in hearings and followed court orders); *South Broward Hosp. Dist. V. Medquist, Inc.*, 258 Fed. App'x 466, *1 (3rd Cir. 2007) (finding waiver where defendant waited 16 months to move to compel and previously filed motions to dismiss).

In fact, Judge Wigenton, applying the six factors[5] set forth in *Hoxworth v. Binder, Robinson & Co.,* 980 F.2d 912 (3d Cir. 1992) to assess whether a waiver exists, denied a defendant's request for leave to file a motion to compel arbitration in very similar circumstances as here. *See Nepomuceno v. Midland Credit Management*, Inc., 2017 WL2267261 (D.N.J. May 24, 2017). In *Nepomuceno*, the defendant (i) waited almost two years to seek leave to file a motion to compel arbitration, (ii) had not filed a dispositive motion prior to seeking leave, (iii) had raised the possibility of arbitration as an affirmative defense in its answer, (iv) had not engaged in non-merits motion practice, (v) had acquiesced to pretrial orders, including orders scheduling pretrial conferences and managing discovery, and (vi) engaged in written discovery, produced documents, participated in depositions, and made several submissions to the court regarding discovery disputes. *See* 2017 WL2267261 at *4-6. Even after finding that only three of the six factors weighed in favor of waiver (i.e. factors (i), (iv), (vi)), Judge Wigenton still denied the defendant's request to move to compel. *See id.* at *6.

Here, at least four of the six factors weigh in favor of waiver. As for the first factor, Defendants have not yet moved to compel arbitration, despite having been served with the Complaint on September 16, 2020 (over 18 months ago). As for the second factor, Defendants filed a Motion to Dismiss on December 14, 2020, in which they sought dismissal of all of Plaintiffs' claims pursuant to Fed. R Civ. P. 12(b)(6), but did not move to compel arbitration. As for the fourth factor, Defendants have participated in several scheduling conferences (*see* ECF Nos. 39, 47, 48, 56, and 61), have complied with at least three Scheduling Orders (*see* ECF Nos. 43, 58, and 63), have agreed to a Discovery Confidentiality Order (*see* ECF No. 51, 52), and have made several submissions to the Court regarding discovery (*see* ECF Nos. 46, 59, and 62). As for the sixth factor, Defendants have served discovery demands, responded to Plaintiffs' written discovery demands, produced documents (including documents related to private loans),

---

[5] The factors are: (i) the timeliness of defendant's motion to compel, (ii) the degree to which the party seeking arbitration has contested the merits of the opponent's claims, (iii) whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to seeking to move to compel, (iv) the extent to which the defendant engaged in non-merits motion practice, (v) the defendant's assent to pretrial orders, and (vi) the extent to which the parties have engaged in discovery. *See Nepomuceno*, 2017 WL 2267261, at *4-6 (citing *Hoxworth,* 980 F.2d 912).

Hon. Leda Dunn Wettre, U.S.M.J.
May 25, 2022
Page 10

received Plaintiffs' production (which also includes documents related to private loans), and have completed several of Plaintiffs' depositions.[6]

Accordingly, because Defendants were well aware that Plaintiff's Complaint included allegations and claims related to Defendants' fraudulent servicing of private loans from the very outset of this matter, and because they have yet to file a motion to compel despite actively participating in this matter for a year and a half, they should be ordered to provide documents responsive to Plaintiffs' demands as they relate to private loans, as well as federal loans. *See Nepomuceno*, 2017 WL 2267261, at *4-6

### IV. Discovery Related to Private Information of Unnamed Borrowers.

As this Complaint involves a systematic and widespread fraud of a nationwide class of student loan borrowers, Plaintiffs are entitled to and have sought documents related to Defendants' servicing of all borrowers, and not just the named Plaintiffs. Defendants have objected to producing any records related to any unnamed borrower on the grounds of privacy concerns and have limited all production to records of the named Plaintiffs only. However, Defendants have provided no legal or other authority supporting that position. More, even if there were protected privacy concerns, any private and/or confidential information of unnamed borrowers can be redacted, which would easily resolve that concern. And, if any privacy concerns were to remain after such redactions, this is the purpose of the Discovery Confidentiality Order entered by the Court on January 20, 2022. *See* ECF No. 52. That said, should Defendants set forth any legal basis for their position, Plaintiffs will respond accordingly.

Presumably, Defendants will argue, at some point, that the fact that all of the Plaintiffs' loans were subjected to malfeasance identified with particularity in the Complaint was some "happy accident," which did not impact the class as a whole. Should Defendants intend to stipulate that the mistreatment of Plaintiffs' loans was, in fact, in accord with the treatment of the rest of the class, then no discovery on this topic is needed. Otherwise, the discovery is necessary. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 430 n. 20 (1978) ("[T]here is a distinction in principle between requests for identification of class members that are made to enable a party to send notice and **requests that are made for true discovery purposes**.") Again, and to be clear, Plaintiffs do not seek personal identifying information of any unnamed class member.

### V. Discovery of Defendants' Computer Programs.

Plaintiffs' claims arise from, among other things, allegations of systematic, continuous, and widespread (i) misallocation of borrower payments disproportionately to interest rather than principal (in order to keep principals artificially high and thus accruing more interest), (ii) misallocation of borrower payments to loans with lower interest rates rather than higher interest

---

[6] As for the fourth factor, although the Defendants asserted an affirmative defense regarding arbitration in their Answers filed on August 26, 2021, they have made no formal request to move to compel arbitration since then, almost nine months later. As such, while it may weigh somewhat in favor of Defendants, it is certainly not heavily enough to outweigh the other factors and prevent a waiver. *See, e.g., Nepomuceno,* 2017 WL2267261.

Hon. Leda Dunn Wettre, U.S.M.J.
May 25, 2022
Page 11

rates (in order to keep the higher interest rate balances higher and thus accruing interest at a higher rate), (iii) charging artificially inflated minimum payments, (iv) misapplying capitalized interest (thus improperly inflating outstanding balances due). *See* Compl. ¶¶ 86-135. It goes without saying that, in light of the fact that Defendants service loans for millions of borrowers, these alleged fraudulent allocations, charges, and capitalizations are not done on an individual basis or as to certain borrowers and not others. Rather they are necessarily done via the use of computer programs on a wide-spread basis, which Defendants have either created and/or implemented. The information contained in these computer programs is thus directly relevant to Plaintiffs' allegations and claims, as it will provide the only direct evidence of the exact manner and process by which Defendants service the particular aspects of borrowers' loans at issue in this case (specifically, how they (i) allocate payments to principal and interest, (ii) allocate payments among differing loans, (iii) determine minimum payments due, and (iv) capitalize interest on loans), the intent and knowledge of Defendants as respects to the manner in which they service loans (e.g. if the program is written and/or implemented to deliberately misallocate payments), and thus whether the manner Defendants service the loans is fraudulent or not. In short, as the processing/servicing is done via computer programs, then any evidence of the fraudulent processing (as alleged in the Complaint) would be found within those programs.[7]

For this reason, Plaintiffs initially sought discovery (via Requests 8-18) of Defendants' computer codes as they relate to the specific servicing and allocation of payments as described in the Complaint. After receiving Defendants' objections to those Requests, Plaintiffs subsequently limited those requests to "computer programs." However, Defendants have continued to object to these Requests for several reasons. First, Defendants argue that computer code discovery is only available in cases involving intellectual property. However, while Plaintiffs recognize that program discovery is usually at issue in the context of intellectual property matters, that does not preclude the ability of a party in a non-intellectual property matter to obtain that information in unique cases where, as here, it is directly relevant to Plaintiffs' claims of widespread systematic fraudulent processing of loans and is proportional to the needs of the case (as it is a very large and complex putative class action that involves potentially millions of class members and billions of dollars' worth of loans). *See* Fed. R. Civ. P. 26(b)(1). Second, Defendants have maintained their position that since they believe private loans are not at issue in this matter—which they are—they are not obligated to produce any computer programs as it relates to their servicing of those private loans. As set forth above, this case also involves private loans. Third, as to the federal loans, Defendants have argued that the computer programs are irrelevant – but this argument is based on the false premise that the alleged fraudulent servicing relates to the named Plaintiffs only, and that this case does not involve allegations of systematic fraudulent servicing with respect to all of Defendants' borrowers—which it does. Fourth, again as to the federal loans, Defendants state that they use a servicing system that contains information that is restricted by the United States Department of Education. However, Defendants have not provided any authority supporting this statement. Moreover, Defendants concede that not all of the federal servicing system is restricted, which thus could and should be produced.

---

[7] Of course, should there be portions of Defendants' computer program that relate to aspects of the processing of loans that are not at issue in this case (set forth at Section I), then those portions would not need to be produced.

Hon. Leda Dunn Wettre, U.S.M.J.
May 25, 2022
Page 12

As such, because Defendants' computer programs are directly relevant to the allegations and claims asserted in this case, and because discovery thereof will provide unique information that is unavailable by other means, Defendants should be compelled to respond to Plaintiffs' requests related to the same.

\* \* \*

### DEFENDANTS' POSITIONS

No progress whatsoever has been made with this letter. Plaintiffs have failed to comply with the Court's clear instruction at the April 25, 2022 conference -- *i.e.*, to identify "no more than 5 discovery disputes requiring resolution" in this letter. *See also* Dkt. Nos. 63, 65. The Court issued this instruction so as to narrow the disputes and focus Plaintiffs on their true discovery needs in this action. However, Plaintiffs *resubmit* in this letter the *same* broad areas of dispute arising from the 67 discovery requests pending against NSL (the Court noted at the last conference that this submission was not helpful). Further, Plaintiffs have ignored the Court's repeated suggestions that depositions would assist in formulating targeted discovery. Plaintiffs have known of a witness with relevant knowledge, John Zemetro, Senior Director, Core Processing, since NSL responded to Interrogatory No. 1 on January 28, 2021. Plaintiffs also presumably would be capable of framing topics for a deposition under Federal Rule of Civil Procedure 30(b)(6), but have not served a notice.

Accordingly, notwithstanding NSL's extensive meet and confer efforts over many months, and the Court's involvement, very significant issues remain with Plaintiffs' discovery requests. As previously expressed, NSL is quite concerned about the potential for prejudice by the imposition of an unreasonable discovery burden at this point. The Court has made clear that additional, but not unlimited, time to complete discovery will be allowed. NSL asks that, given the circumstances here, the Court permit any additional discovery only on a targeted basis and within a reasonable timeframe.

I. **THE SCOPE OF DISCOVERY SOUGHT BY PLAINTIFFS IS OVERLY BROAD AND NOT TAILORED TO THEIR OWN CLAIMS.**

   A. **Plaintiffs Cannot Seek Discovery of NSL's Entire Servicing Operation.**

Plaintiffs' own claims obviously define the scope of discovery in this proposed class action. As a matter of settled law, "[i]t is plaintiff's burden to show that a class action is a proper vehicle for [a] lawsuit." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 354 (3d Cir. 2013); *see Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013) ("The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. To come within the exception, a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23."). Rule 23 requires, among other things, that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Thus, a fundamental element in a supposed class case is a *claim* belonging to named plaintiff and supposedly others. Here, read fairly, Plaintiffs' allegations relate to some supposed "fraud" by NSL in processing payments and assessing capitalized interest.

Hon. Leda Dunn Wettre, U.S.M.J.
May 25, 2022
Page 13

However, in their discovery requests, Plaintiffs insist that they are entitled to discovery of *every* aspect of NSL's loan servicing operation, without connection to any asserted claim or their own loans. Indeed, Plaintiffs state above: "Plaintiffs have repeatedly attempted to explain that this action in fraud includes issues beyond just Plaintiffs' loans *per se*, and that [NSL's] fraud is perpetrated through the combination of its websites and advertising, customer service representatives, billing statements, allocation of payments, business practices, and the like, designed from the top down." In other words, according to Plaintiffs, the scope of this action somehow exceeds any *claim* related to their loans; the scope includes any and all of NSL's servicing practices -- even if those practices did not impact Plaintiffs -- and any and all of its personnel. This proposed scope is contrary to the well-settled law describing typicality, as well as the threshold issue of Article III standing. *See Cottrell v. Alcon Labs.*, 874 F.3d 162-63 (3d Cir. 2017) ("To allege injury in fact sufficiently, a plaintiff must claim 'that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical.'") (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).[8]

Moreover, setting aside the grossly overreaching position in the letter, it should be noted that Plaintiffs' testimony does not at all support the proposed scope of the action (much less the merits of the alleged claims). In fact, Plaintiffs themselves *cannot* describe *any* "fraud" perpetrated against them or *any* harm suffered from NSL's servicing of their loans. NSL has deposed: (1) George Michael Amores, who holds a master's degree from New York University and works as a high school English teacher; (2) Naimish Baxi, a doctor specializing in physiatry, physical medicine and rehabilitation; (3) Harvey Minano, a physical therapist; (4) Sydney Peck ("Peck"), an attorney who works as a public defender; (5) Sergio Flavio Pereira, an attending emergency physician; (6) Esther Sygal-Pereira, a regional manager for a group purchasing organization, who holds a master's degree in business administration; (6) Mahmud Ibrahim ("Ibrahim"), a doctor practicing sports medicine; and (7) Brian Manetta, a lawyer practicing in the labor and employment area.

In these depositions, each of Plaintiffs tells a consistent story. Through friendship or work relationships, Plaintiffs are acquainted with Maulik Sanghavi ("Sanghavi") and his wife, Michelle Robalino-Sanghavi. Sanghavi (and, to some extent, his wife) told Plaintiffs that there are "issues" with their student loans serviced by NSL. Sanghavi referred Plaintiffs to their legal counsel, who retained an unidentified "expert." Plaintiffs testified almost uniformly that they: (1) do not review the monthly account statements provided by NSL, which contain detailed information about their loans, including precise allocation of payments and capitalized interest on a monthly and life-life of loan basis, initial loan terms, current balances, etc.; (2) have not read the disclosures included with those monthly account statements on various subjects, including payment application and allocation; (3) do not regularly review other types of

---

[8] Moreover, Plaintiffs' attempt to expand the scope of this action beyond all bounds is not supported by Judge Wiginton's decision on the motion to dismiss. That decision, which describes allegations fundamentally centered around "fraud" in payment allocation and assessment of capitalized interest, cannot be understood to encompass "fraud" in *each and every* aspect of NSL's servicing operations. *See* Opinion [ECF No. 33] at 2-3, 7-8, 10. Further, Plaintiffs have never explained how their discovery requests should be viewed or limited by Judge Wiginton's decision. On their face, the requests go well beyond the decision.

Hon. Leda Dunn Wettre, U.S.M.J.
May 25, 2022
Page 14

correspondence or disclosures sent by NSL and, thus, do not know what they could have learned about the servicing of their loans; and (4) may have glanced at their promissory notes at the time of loan origination, but did not read the substantive provisions. Further, even though their monthly account statements reflect the amount of every payment made, along with its allocation between principal and interest, capitalized interest and fees, these highly educated persons disavow the ability to review those statements and identify any improper transaction. Plaintiffs also disavow any ability to do so based on other information NSL provides on its website (including the thousands of pages of payment histories that have been downloaded and produced as evidence in support of their claims). Instead, according to all but one of Plaintiffs, Ibrahim, only the "expert" (described as a forensic accountant or mathematician, for example) could possibly detect the "fraud" from these documents.[9] Ibrahim was not aware of a retained expert.

Against this background, NSL must be subjected to discovery within an intelligible framework of Plaintiffs' allegations and own testimony. NSL has produced policies and procedures for its processing of payments, payment allocation, capitalization of interest and payment plan options. This is based on a reasonable approach to the action, and consistent with applicable law. The Court should decline to accept Plaintiffs' expansive and improper discovery demands which remain untethered to the core allegations in this action.

### B. Plaintiffs Cannot Seek "Any And All" Documents Related To NSL's Servicing.

Compounding the problem created by Plaintiffs in seeking to put at issue all of NSL's servicing practices, they also continue to frame their requests around "any and all" documents. Thus, on their face, the requests seek any and all documents about NSL's entire loan service operation (which is the entirety of its business). For example, Plaintiffs have not withdrawn Request for Production ("Request") No. 42, which seeks: "All documents that refer or relate to [d]efendants' loan servicing processes for the years 2000 through the present." The Court has already found that a request for "all" documents is improperly framed. *See also Agerbrink v. Model Serv. LLC*, 2017 WL 933095, at *2 (S.D.N.Y. Mar. 8, 2017) (citing *Gropper v. David Ellis Real Estate, L.P.*, 2014 WL 518234, at *4 (S.D.N.Y. Feb. 10, 2014)) ("Courts have long held that requests for 'any and all' documents are generally improper."). Indeed, the impropriety of such requests is clear.

During the relevant time period, NSL has been one of the largest student loan servicers in the United States. For instance, as of December 31, 2021, NSL serviced a federal loan portfolio of over $50 billion. NSL employs thousands of persons in offices located in Wilmington, Delaware, Fishers, Indiana and Wilkes-Barre, Pennsylvania. Moreover, NSL's servicing portfolio has consisted of tens of millions of federal student loan borrowers, and its servicing activity has covered the full range of issues pertaining to borrowers, including much that is not, and could not be, at issue here -- *e.g.*, offering and processing requests for payment relief, such as deferment, forbearance, Income Driven Repayment, Public Service Loan Forgiveness, etc., including through programs created and authorized by the United States Department of

---

[9] Similarly, Plaintiffs are unfamiliar with the other, supposed "wrongs" at issue here. For instance, most have not heard of a former loyalty program, Upromise, or NSL's Office of Consumer Advocate. Plaintiffs also have not voiced any particular complaints about NSL's customer service in general, except that the website was allegedly hard to navigate.

Education ("ED"); processing special forbearances at ED's direction, such as those for borrowers impacted by natural disasters; devising and sending communications regarding borrowers' loans as their status changes over lengthy repayment periods; contacting borrowers regarding delinquencies and offering options to avoid default; sending accounts for collection, when necessary; and answering borrower questions on a myriad of topics, etc. Thus, taking just Request No. 42 as an example, Plaintiffs' demand for "any and all" documents must be rejected. Plaintiffs seek the production of *all* of the documents and records relating to the overall servicing of these tens of millions of borrowers, including those borrowers' loan records, which contain personally identifying information such as social security number, name and address ("PII"), along with financial information in many instances (provided when borrowers apply for certain repayment programs).[10] The burden of this production would be crushing, using significant resources and spanning many months.

In support of this overbroad and improper approach, Plaintiffs rely on a discussion of general discovery principles rules in dissimilar cases. *See* Sections I, IV, V *infra*. For example, Plaintiffs rely on *Hite v. Peters*, 2009 WL 1748860, at *3 (D.N.J. Jun. 19, 2009) to argue their entitlement to broad ranging discovery. However, *Hite* is inapposite. The court denied plaintiff's request for a protective order precluding his employer from obtaining his employment records from his subsequent employer, where plaintiff had filed suit alleging that he was terminated on the basis of race and sex. The employer sought the records to demonstrate the extent to which plaintiff mitigated his damages following termination. *Hite* therefore does nothing to support Plaintiffs' demand here – *i.e.*, vast and sweeping discovery of NSL's entire servicing operation, including borrowers' personal records and information.

## II. PLAINTIFFS SHOULD NOT BE ENTITLED TO THE PRODUCTION OF DOCUMENTS FROM 1998 TO THE PRESENT.

In the letter, Plaintiffs agree that production will be limited to the time period of June 24, 2014 to the present, but nevertheless proceed to address potential, future application of a longer timer period. If advanced, the Court should easily reject Plaintiffs' argument. As an initial matter, Plaintiffs *do not allege* tolling based on the doctrines of continuing fraud or fraudulent concealment in their Complaint. *See Stallworth v. Reheis Co.*, 2007 U.S. Dist. LEXIS 46469, at *13 (D.N.J. June 27, 2007) ("A court need not entertain claims that are not pled in the [c]omplaint."). But, even if they had, Plaintiffs would not succeed with such arguments because the challenged payment allocation and interest assessments were reflected -- month after month in precise detail -- on their monthly account statements. They also were reflected in additional information on NSL's website and other disclosures. Plaintiffs did not review these statements and other information, by their own admission, but no fact was "concealed" by NSL. Plaintiffs therefore will fail with their tolling argument. *See In re Community Bank of Northern Va. Mortg. Lending Pract. Litig.*, 795 F.3d 380, 400-01 (3rd Cir. 2015) ("Equitable tolling permits a plaintiff to sue after the statutory time period for filing a complaint has expired…if the defendant has actively misled the plaintiff respecting the plaintiff's cause of action. [ ] The fraudulent

---

[10] Other requests also serve as examples. *See* Request Nos. 4, 22-25, 28-29, 31, 34-35, 37-38, 40-41, 43, 45-47, 50-51, 53-54, 57, 61-62, 65, 67, 71, 74-75, 77-88, 91-94, 96-97, 99, 105-106 (seeking, among other things, any and all documents regarding servicing processes, unrelated investigations, unrelated litigation, audits).

Hon. Leda Dunn Wettre, U.S.M.J.
May 25, 2022
Page 16

concealment doctrine operates to stop the statute of limitations from running in circumstances when the accrual date of a claim has passed but the "plaintiff's cause of action has been obscured by the defendant's conduct.") (citing *In re Linerboard Antitrust Litig.,* 305 F.3d 145, 160 (3rd Cir. 2002)).

### III. PLAINTIFFS ARE NOT ENTITLED TO DISCOVERY RELATING TO PRIVATE LOANS.

Plaintiffs continue to miss the point on this issue. Private student loans are subject to arbitration on an individual basis pursuant to borrowers' promissory notes. Here, the Complaint contains no legal claim related to a private loan for a particular Plaintiff. Thus, NSL *cannot* move to compel arbitration as it could not meet the applicable standard: Proving the existence of a claim on a private loan within the scope of the arbitration provision. NSL has repeatedly noted this reality, including in the motion to dismiss. Further, plaintiff Peck, who has private loans, did not have knowledge of any claim asserted on those loans. Meanwhile, plaintiff Ibrahim was a co-signer on his brother's now paid-off Bar Study loan, and has no quarrel on that loan. In any event, Plaintiffs cannot take discovery on loans that are not subject to class action litigation.

### IV. PLAINTIFFS ARE NOT ENTITLED TO DISCOVERY RELATED TO NON-PARTY BORROWERS.

Plaintiffs improperly seek the account records for the tens of millions of non-party borrowers encompassed by their class definition. There are multiple problems with this. *First*, as Plaintiffs should know from a review of their own records, an account file consists of: (1) promissory notes containing PII and other loan origination materials; (2) notes from NSL's servicing system, CLASS, which contain PII, but also an entry for every transaction on an account and free-form notes that agents enter, often documenting borrowers' loan status or financial information; (3) extensive correspondence, including monthly account statements and periodic disclosures; and (4) call recordings between borrowers and agents, addressing various concerns, including delinquencies and repayment options. In the context of this action, Plaintiffs do not even attempt to justify their proposed violation of these non-parties' privacy rights by their discovery requests. *Second*, the sheer volume of the requested production, again, would be staggering. The production of Plaintiffs' own records spans 11,999 pages of documents and call recordings. It would be virtually impossible for NSL to collect those records for potentially millions of borrowers within any reasonable timeframe and without enormous resources dedicated to the task (especially call recordings, which must be searched manually). If the documents were collected, and NSL undertook to redact PII and financial information, as Plaintiffs suggest, the time period to respond would stretch out even further. *Third*, given Plaintiffs' testimony here -- that they did not review the account statements or other information provided by NSL and, even if they did, could not detect the "fraud," it is difficult to conceive any purpose behind producing a mountain of such material. *See In re Motion to Compel Compliance With Rule 45 Subpoena Issued to Ethicare Advisors, Inc.*, Civ. A. No. 20-1886 (WJM), at *8 (D.N.J. Aug. 12, 2020) ("a court may limit or deny discovery -- even if otherwise relevant (which has not been shown here) -- if it is not proportional to the needs of the case and is otherwise burdensome.").

Hon. Leda Dunn Wettre, U.S.M.J.
May 25, 2022
Page 17

### V. PLAINTIFFS ARE NOT ENTITLED TO PRODUCTION OF THE COMPUTER PROGRAMS FOR CLASS.

Plaintiffs continue to demand NSL's production of computer code from CLASS. *See* Ex. A, Request Nos. 8-18. To be clear, Plaintiffs do not ask for information or data compiled or stored in the system. Plaintiffs literally seek computer code, source codes, application codes, programs, scripts, algorithms, etc. from the servicing system. The Court should reject these requests. Even accepting Plaintiffs' premise that some aspect of CLASS would explain the application of payments and assessment of interest, other sources of information would do the same – *e.g.*, NSL's policies and procedures and witness testimony. *See, e.g.*, *In Congoo, LLC v. Revcontent LLC*, 2017 U.S. Dist. LEXIS 130731, at *7 (D.N.J. Aug. 10, 2017) ("Courts have held that when source code is requested not only must it be relevant and necessary to the prosecution or defense of the case but when alternatives are available, a court will not be justified in ordering disclosure.") (internal citations omitted); *Brand Energy & Infrastructure Servs., Inc. v. Irex Corp.*, 2018 WL 806341 (E.D. Pa. Feb. 9, 2018) (holding discovery requests about the servers that defendants used to access and store digital information were impermissible). Further, to the extent that CLASS coding was relevant at this point, Plaintiffs are not justified in demanding the code that runs the entire system. As noted above, Plaintiffs do not have claims that encompass the entirety of NSL's servicing operation. Moreover, as also previously stated, NSL does not own CLASS; it is licensed from a third-party vendor. Any requests for code from CLASS is thus not properly directed at NSL.

\*       \*       \*

We thank the Court for assisting with this matter.

Respectfully submitted,

　　 */s/ Lisa Simonetti*
　　　 Lisa Simonetti

cc:  All counsel of record (via ECF)