**GT GreenbergTraurig**

Rebecca Zisek, Esq.
Tel 973.443.3242
Fax 973.301.8410
zisekr@gtlaw.com

Lisa Simonetti, Esq.
Tel 310.586.7824
Fax 310.586.7800
simonettil@gtlaw.com

September 23, 2022

**VIA ECF**
The Honorable Leda Dunn Wettre, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07102

    Re: Case No. 2:20-cv-07712,
    *Manetta, et al. v. Navient Corporation, et al.*

Dear Judge Wettre:

    Defendant Navient Solutions, LLC ("NSL") respectfully submits this letter in accordance with LR 16.1 and 13.7 to address disputes relating to the depositions of third-parties Maulik Sanghavi ("Sanghavi") and his wife, Michelle Robalino-Sanghavi ("Robalino-Sanghavi"). During his deposition on September 12, 2022, Sanghavi improperly refused to answer questions based on blanket, unsupported claims of spousal privilege, attorney-client privilege, common interest privilege and work product.

    Sanghavi is licensed as an attorney in New Jersey; he works in the areas of real estate, land use and corporate transactions. Robalino-Sanghavi is a physician.

**Greenberg Traurig, LLP | Attorneys at Law**

1840 Century Park East | Suite 1900 | Los Angeles, California 90067-2121 | T +1 310.586.7700 | F +1 310.586.7800

Albany. Amsterdam. Atlanta. Austin. Berlin. Boston. Chicago. Dallas. Delaware. Denver. Fort Lauderdale. Houston. Las Vegas. London. Los Angeles. Mexico City. Miami. Milan. Minneapolis. New Jersey. New York. Northern Virginia. Orange County. Orlando. Philadelphia. Phoenix. Sacramento. Salt Lake City. San Francisco. Seoul. Shanghai. Silicon Valley. Tallahassee. Tampa. Tel Aviv. Tokyo. Warsaw. Washington, D.C. West Palm Beach. Westchester County.

Operates as: Greenberg Traurig Germany, LLP; A separate UK registered legal entity; Greenberg Traurig, S.C.; Greenberg Traurig Santa Maria; Greenberg Traurig LLP Foreign Legal Consultant Office; A branch of Greenberg Traurig, P.A., Florida, USA; GT Tokyo Horitsu Jimusho and Greenberg Traurig Gaikokuhojimubegoshi Jimusho; Greenberg Traurig Nowakowska-Zimoch Wysokiński sp.k.

www.gtlaw.com

Hon. Leda Dunn Wettre, U.S.M.J.
September 23, 2022
Page 2

At this time, Sanghavi and Robalino-Sanghavi are pursuing "fraud" claims against NSL that, by his own description, are similar to those asserted by Plaintiffs here. All of the claims arise from NSL's servicing of their student loans. *See Sanghavi v. Navient Corporation, et al.*, United States District Court, District of New Jersey, Case No. 2:18-cv-00233 ("*Sanghavi*"). Sanghavi is *pro se* and represents his wife in *Sanghavi*.

Based on Plaintiffs' deposition testimony, Sanghavi and Robalino-Sanghavi have information that is directly relevant to this litigation. In fact, at this point, they appear to be the only student loan borrowers who have even attempted to provide any factual support for the "fraud" claims brought by Plaintiffs for themselves and a proposed class. As detailed in correspondence filed by NSL on September 21, 2022 (Dkt. 79), Plaintiffs themselves *cannot* describe *any* "fraud" perpetrated against them or *any* harm allegedly suffered from NSL's servicing of their student loans. Rather, according to Plaintiffs: (1) Sanghavi told them that there are "issues" with the Sanghavi/Sanghavi-Robalino student loans serviced by NSL; (2) Sanghavi assisted Plaintiffs with retrieving statements and payment histories from NSL; (3) Sanghavi may have reviewed some of those records; and (4) Sanghavi referred Plaintiffs to their counsel, who is a friend of Sanghavi's from law school. Further, while Plaintiffs' counsel does not represent Sanghavi in any capacity and Sanghavi has no role in this matter (including as a class member), Sanghavi reviewed the draft complaint in this case, which contains Plaintiffs' factual allegations.[1]

During the short session of the deposition taken on September 12, 2022, Sanghavi claimed to have identified alleged improper transactions on his and Robalino-Sanghavi's loans.[2] He then retained an unnamed "consultant," who also purportedly sought to identify supposed improper transactions. Thus, he is apparently capable of using NSL account records for this purpose, (which he must be if he has any hope of prevailing on his own claims), but has refused to answer questions regarding account records and many other topics. As an initial matter, Sanghavi asserted that the questioning was improper because he has not yet been deposed in his own case. This is irrelevant to the timing and propriety of third-party discovery in this matter (and particularly because NSL is subject to the

---

[1] Sanghavi does not believe that the *Manetta* class definition covers him, although he is not excluded.

[2] NSL suspended the deposition when it became clear that the Court's guidance was necessary. NLS also continued Robalino-Sanghavi's deposition, which had been set for September 13, 2022. Sanghavi stated that his positions on questioning of her would be the same.

Hon. Leda Dunn Wettre, U.S.M.J.
September 23, 2022
Page 3

Court's Scheduling Order here, while there is no current Scheduling Order in *Sanghavi*). Moreover, throughout the deposition, Sanghavi asserted blanket, unsupported privilege objections to fundamental questioning, and Plaintiffs joined in a supposed common interest privilege. This is improper and prevented NSL from obtaining essential discovery.

**Discussion**

As a matter of settled law, blanket assertions of privilege are *"extremely disfavored."* Clark v. American Commerce Nat. Bank, 974 F.2d 127, 129 (9th Cir. 1992) (emphasis added). Moreover, Sanghavi bears the burden of supporting objections to specific questions. *See, e.g., In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 126 (3d Cir. 1986); *Grand Jury Empanelled February 14, 1978*, 603 F.2d 469, 474 (3d Cir. 1979). As relevant here, the asserted privileges are governed by the following standards:

> **Spousal privilege**: "[T]he marital communications privilege prevents a testifying spouse from disclosing confidential communications between the spouses. It 'reaches only those communications made in confidence and intended to be confidential.'" *Rehberger v. Honeywell Int'l, Inc. (In re Rehberger),* 2013 U.S. Dist. LEXIS 71453 at *9 (D.N.J. May 21, 2013) (quoting *United States v. Ammar*, 714 F.2d 238 (3d Cir. 1983), quoting *Trammel v. United States*, 445 U.S. 40, 53 (1980)). However, the privilege does not apply to underlying facts. "The marital communications privilege is not a fig leaf covering all subjects conceivably related to a marriage." *Nordetek Envtl., Inc. v. RDP Techs., Inc.*, 2011 U.S. Dist. LEXIS 165473, at *20 (E.D. Pa. Nov. 28, 2011).

> **Common interest privilege**: The existence of a common interest or purpose "must be evaluated as of the time that the confidential information is disclosed." *Travelers Prop. Cas. Co. of Am. v. USA Container Co.,* 2012 U.S. Dist. LEXIS 196119 at *22 (D.N.J. Oct. 25, 2012). "The party invoking the protection of the common interest doctrine must establish: (1) the communication was made by separate parties in the course of a matter of common interest, (2) the communication was designed to further that effort, and (3) the privilege has not otherwise been waived." *In re Leslie Controls, Inc.*, 437 B.R. 493, 496 (Bankr. D. Del. 2010).

**Work product**: "Federal Rule of Civil Procedure 26(b)(3) provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Work product is defined as *"materials an attorney prepares* in anticipation of litigation, including mental impressions of the case and the parties, legal theories, opinions, conclusions, litigation strategy, *and other similar materials*." *Mercury Indem. Co. of Am. v. Great N. Ins. Co.*, 2022 U.S. Dist. LEXIS 50747, at *23 (D.N.J. Mar. 22, 2022) (citing Fed. R. Civ. P. 26(b)(3)(B); Fed. R. Evid. 502(g)(2)) (emphasis added).

Courts use a two-part test to determine whether the materials in dispute should be protected under the work product doctrine. *See Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 306 (D.N.J. 2008). First, courts consider whether the document was prepared in anticipation of litigation. Next, courts look at whether the documents were prepared for the primary purpose of litigation. If the materials were not prepared for the primary purpose of anticipated or actual litigation − in other words if they were prepared in the ordinary course of business − they are not protected work product. *See id.* at 306-07.

**Attorney-Client Privilege**. The attorney-client privilege requires both an attorney and a client communicating with one another. "The privilege bars discovery of confidential communications made by the client during the course of representation, although it does not apply to the "disclosure of the underlying facts by those who communicated with the attorney." *See Upjohn Co. v. United States,* 449 U.S. 383, 396–396 (1981) ("protection of the [attorney-client] privilege extends only to communications and not to facts"); *United States Fidelity & Guaranty Co. v. Barron Industries, Inc.,* 809 F.Supp. 355, 364 (M.D. Pa. 1992) ( "The [attorney-client] privilege simply does not attach to a discussion of the facts, no matter how extensive or involved the discussion may become.).

Hon. Leda Dunn Wettre, U.S.M.J.
September 23, 2022
Page 5

In his deposition, and during the subsequent meet and confer conducted on September 19, 2022, Sanghavi did not so much as even attempt to justify the application of these privileges to NSL's questioning. He simply recited the objections. The following excerpts illustrate the unspecific and unsupported nature of the objections:

> Q. So in order to identify improper capitalized interest what do you look at?
> […]
> A. No, I'm not answering those specific questions based on attorney-client privilege, spousal privilege, work product.
> (27:17-29:16)
>
> Q. So tell me how they do it improperly? What's wrong with it?
> A. I'm not -- other than what's outlined in my complaint I'm not going to answer that.
> Q. Why not?
> A. Attorney-client privilege, work product, spousal privilege.
> (33:6-12)
>
> Q. So are you going to refuse to testify as to any of the information that appears in this document [a form account statement] and the disclosures at the back?
> A. I'm going to say that there's an issue of attorney-client. I'm refusing to testify based on attorney-client privilege, work product, spousal privilege. Other than what's in my complaint, in our public pleadings, and certainly what's in your case and the pleadings, yeah, I'm not going to testify as to beyond what I have already said about what my understanding of certain issues with this particular billing statement are -- is.
> (44:10-23)
>
> Q. Is there any other type of servicing error that you think occurred on your loans that you did not allege in your complaint?
> A. At the time, no.
> Q. Do you believe there's anything in addition now?

Hon. Leda Dunn Wettre, U.S.M.J.
September 23, 2022
Page 6

> A. Yes.
> Q. Okay. What's additional?
> A. Attorney-client, work product. I'm not going to answer. Attorney-client work product, spousal privilege. That's, again, ongoing discovery. I'm just not going to answer that.
> (52:16-25, 53:1-3.)

Notably, Plaintiffs also interposed an unsupported, overbroad common interest privilege, as follows:

> Q. Did you speak with anyone in preparation for this deposition?
> A. Yes.
> Q. Who did you speak with?
> A. My wife and Xavier [Bailliard, Plaintiffs' counsel].
> Q. Okay. What did you speak with Xavier about?
> A. Just the general nature of the lawsuit and then just the general nature of the deposition process. I've never been deposed.
> Q. What did he tell you about the nature of the lawsuit?
> A. I mean, other than -- well, can you rephrase? I'm not sure what you mean by the question.
> Q. What did Xavier tell you about the nature of the pending lawsuit?
> MR. BAILLIARD: Objection, Lisa. I want to let you know that in connection with questions related to specifics related to either his lawsuit or our lawsuit after we have been retained we're going to assert the common interest privilege as there is definitely a common interest, similar defendant. And so any communications between Maulik and myself during the course of this particular class action we will be asserting the common interest privilege. (9:22-25, 10:1-24)

Through these objections, Sanghavi refused to answer basic, factual questions regarding the "fraud" claims that he and Plaintiffs supposedly share, including: (a) his understanding of the role that Navient Corporation (a defendant in both cases) plays, if any, with respect to his loans; (b) who his consultant is; (c) how NSL (in his view) improperly allocates payments between principal and interest

Hon. Leda Dunn Wettre, U.S.M.J.
September 23, 2022
Page 7

(the core issue in dispute); and (d) what he knows about what the named Plaintiffs believe occurred with the servicing of their loans.

Put simply, NSL is entitled to question Sanghavi about his claims and Plaintiffs' claims, which are, and were designed to be, similar. Sanghavi may have legitimate issues of attorney-client privilege and marital privilege with respect to the representation of his wife – on a reasonable and supported basis within the scope of the governing standards – but he cannot refuse all discovery obligations based on *Sanghavi*. Further, and importantly, Sanghavi cannot have it both ways. Either he possesses information and knowledge that supports his claims (and Plaintiffs'), and he uses such to pursue the litigation. Or, his information and knowledge is privileged and he cannot use it in litigation; thus, his claims are not subject to proof. "No published opinion of any judge of this court has expressly extended the work product privilege to confer a 'qualified immunity from discovery' upon material prepared by a *pro se* plaintiff…No party may invoke a privilege to shield material from discovery by an opposing party, and simultaneously offer the same material at depositions and state the intention to do so at trial." *Harrison v. Spellings*, 2005 U.S. Dist. LEXIS 56440, at **2-3 (D.D.C. May 25, 2005); *see also Hurst v. City of Rehoboth Beach*, 2006 U.S. Dist. LEXIS 84901, at *10 (D. Del. Nov. 21, 2006) (party cannot invoke attorney-client privilege "to cloak factual information about his alleged injuries").

\*     \*     \*

We respectfully request a telephone conference to address these issues, especially in light of the upcoming fact discovery deadline of September 30, 2022. We thank the Court for assisting with this matter.

Respectfully submitted,

*/s/ Lisa Simonetti*
Lisa Simonetti

cc:   All counsel of record (via ECF)
      Maulik Sanghavi, Esq. (via e-mail and UPS Overnight Delivery)